**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES L. BROWN and ALICE BROWN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACCESS MIDSTREAM PARTNERS, L.P., *et al.*,<br><br>Defendants. | No. 3:14-cv-0591-MEM |
| THE SUESSENBACH FAMILY LIMITED PARTNERSHIP, JAMES S. SUESSENBACH, and GINA M. SUESSENBACH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACCESS MIDSTREAM PARTNERS, L.P., *et al.*,<br><br>Defendants. | No. 3:14-cv-01197-MEM |

**MEMORANDUM IN SUPPORT OF DEFENDANT
<u>CHESAPEAKE ENERGY CORPORATION'S MOTION FOR A STAY</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

I.    INTRODUCTION AND BACKGROUND ................................................. 1

II.   ARGUMENT ............................................................................................. 4

    A.    The Court Has Discretion to Issue a Stay Under the Colorado
        River Doctrine ................................................................................... 4

    B.    The Attorney General's Action Is Parallel to These Actions ............... 6

    C.    Upon Balancing the Colorado River Factors, the Court Should
        Issue a Stay ....................................................................................... 9

        1.    Desirability of Avoiding Piecemeal Litigation ......................... 10

        2.    Presence of State Law Issues and Interests .............................. 14

        3.    Whether State Forum Protects Interests .................................... 16

        4.    Relative Convenience and Progress in Each Forum .................. 18

III.  CONCLUSION ......................................................................................... 20

# TABLE OF AUTHORITIES

CASES                                                                    Page(s)

*Active Disposal Serv., Inc. v. Cty. of Somerset,*
    Nos. 07-3210 (MLC) and 07-3239 (MLC), 2009 WL 78149
    (D.N.J. Jan. 9, 2009) ................................................................ 7

*Aetna Cas. & Sur. Co. v. Sterner,*
    700 F. Supp. 252 (E.D. Pa. 1988) ........................................... 9

*Airgas, Inc. v. Cravath, Swaine & Moore LLP,*
    No. 10-612, 2010 WL 624955 (E.D. Pa. Feb. 22, 2010) .................... 13

*Allied Nut & Bolt, Inc. v. NSS Indus., Inc.,*
    920 F. Supp. 626 (E.D. Pa. 1996) ........................................... 9

*Barrett v. Atl. Richfield Co.,*
    444 F.2d 38 (5th Cir. 1971) .................................................... 15

*Barron v. Caterpillar, Inc.,*
    No. 95-5149, 1996 WL 368335 (E.D. Pa. June 26, 1996) ................ 8

*BIL Mgmt. Corp. v. N.J. Econ. Dev. Auth.,*
    310 F. App'x 490 (3d Cir. 2008) ............................................. 5, 6, 18

*Chartener v. Provident Mut. Life Ins. Co.,*
    No. 02-8045, 2003 WL 22518526 (E.D. Pa. Oct. 22, 2003) ............... 5

*Colorado River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976) ............................................................ 5, 6, 10

*Feige v. Sechrest,*
    90 F.3d 846 (3d Cir. 1996) ................................................... 18

*GGNSC Equity Holdings, LLC v. Breslin,*
    No. 1:14-MC-00450, 2014 WL 5463856, slip op.
    (M.D. Pa. Oct. 27, 2014) ...................................................... 7

*Hood ex rel. Mississippi v. Bristol Myers Squibb Co.,*
    No. 13-5910, MDL No. 2418, 2014 U.S. Dist. LEXIS 114000
    (D.N.J. July 22, 2014) ........................................................ 12

*IFC Interconsult, AG v. Safeguard Int'l Partners, LLC,*
   438 F.3d 298 (3d Cir. 2006) ................................................................6

*Ingersoll-Rand Fin. Corp. v. Callison,*
   844 F.2d 133 (3d Cir. 1988) ..............................................................10

*Kilmer v. Elexco Land Servs., Inc.,*
   990 A.2d 1147 (Pa. 2010)...................................................................14

*La. Power & Light Co. v. City of Thibodaux,*
   360 U.S. 25 (1959)..............................................................................18

*Landis v. No. Am. Co.,*
   299 U.S. 248 (1936)............................................................................13

*Lane v. Record Keepers, L.L.C.,*
   No. 00-3036, 2001 WL 913835 (E.D. La. Aug. 14, 2001) ...................12, 13, 16

*Lumen Constr., Inc. v. Brant Constr. Co.,*
   780 F.2d 691 (7th Cir. 1985) ...........................................................8-9

*McGuire v. Int'l Paper Co.,*
   No. 1:92-CV-593BRR, 1994 WL 261360 (S.D. Miss. Feb. 18, 1994).............17

*Miss. ex rel. Hood v. AU Optronics Corp.,*
   134 S. Ct. 736 (2014).........................................................................11

*Morgan Stanley Dean Witter Reynolds, Inc. v. Gekas,*
   309 F. Supp. 2d 652 (M.D. Pa. 2004)................................................18

*Peerless Heater Co. v. Chevron Chem. Co.,*
   No. 97-CV-3128, 1998 WL 195706 (E.D. Pa. March 27, 1998) ........................7

*Pennsylvania v. Budget Fuel Co.,*
   122 F.R.D. 184 (E.D. Pa. 1988) ........................................................12

*Quackenbush v. Allstate Ins. Co.,*
   517 U.S. 706 (1996)............................................................................5

*Rhodes v. Indep. Blue Cross,*
   No. 11-1881, 2012 WL 447544 (E.D. Pa. Feb. 9, 2012)....................................13

*Robinson Twp. v. Pennsylvania*,
  83 A.3d 901 (Pa. 2013)..................................................................................15

*Ryan v. Johnson*,
  115 F.3d 193 (3d Cir. 1997) ....................................................................10, 11

*Se. Pa. Transp. Auth. v. Board of Revision of Taxes*,
  49 F. Supp. 2d 778 (E.D. Pa. 1999)................................................................8

*Trent v. Dial Med. of Fla., Inc.*,
  No. 92-4493, 1992 WL 365625 (E.D. Pa. Nov. 30, 1992),
  *aff'd* 33 F.3d 217 (3d Cir. 1994)..............................................................4, 17

*W. Va. ex rel. McGraw v. Bristol Myers Squibb Co.*,
  No. 13-1603 (FLW), 2014 WL 793569, slip op. (D.N.J. Feb. 26, 2014)..... 11-12

*Will v. Calvert Fire Ins. Co.*,
  437 U.S. 655 (1978)................................................................................... 4-5

## STATUTES, RULES & REGULATIONS

Class Action Fairness Act of 2005, 28 U.S.C. 1332(d), 1453, 1711-1715 .........3,11

15 U.S.C. § 77v.............................................................................................10

43 U.S.C. 666................................................................................................10

58 P.S. § 33 .............................................................................................14, 15

58 P.S. § 35 ..................................................................................................15

58 Pa. C.S. § 3201..........................................................................................15

58 Pa. C.S. § 3202..........................................................................................15

## LEGISLATIVE AUTHORITIES

151 Cong. Rec. S1157 (daily ed. Feb. 9, 2005)........................................11

I.      INTRODUCTION AND BACKGROUND

On December 9, 2015, the Pennsylvania Attorney General brought a purported *parens patriae* action against Chesapeake Energy Corporation ("Chesapeake"), other Chesapeake-affiliated entities, and Williams Partners, L.P. (formerly Access Midstream Partners L.P. ("Access")).  After the defendants filed preliminary objections, the Attorney General filed an amended complaint against the Chesapeake entities, Anadarko Petroleum Corporation, and Anadarko E&P Onshore, LLC.  *See* Exhibit A hereto.  Among the many claims asserted in that broadly pleaded complaint, the Attorney General purports to bring a claim on behalf of the same Pennsylvania lessors, alleging the same purported misconduct during the same time period, and seeking the same restitution remedy as in these *Brown* and *Suessenbach* actions.

Though the Attorney General's amended complaint is substantially broader in scope than the operative complaints here, both the Attorney General and Plaintiffs parrot many of the same erroneous allegations from an inaccurate March 2014 *ProPublica* report.  That is, they both contend that, in connection with an alleged asset sale in December 2012, Chesapeake and Access allegedly engaged in a non-arm's length financing arrangement purportedly aimed at defrauding Pennsylvania landowners.  Brown Am. Compl. ¶¶ 2-5, 28-39; Suessenbach Compl. ¶¶ 28-50; AG Am. Compl. ¶¶ 102-121, 126a-d.  They assert that, as part of that

alleged arrangement, Chesapeake agreed to pay Access inflated gathering rates and then purportedly passed on the inflated costs to Pennsylvania lessors in the form of inflated royalty deductions.  Brown Am. Compl. ¶¶ 2-5, 28-39; Suessenbach Compl. ¶¶ 28-50; AG Am. Compl. ¶¶ 102-121, 126a-d.

Despite a nearly two-year investigation, the Attorney General, like Plaintiffs, simply got its facts wrong.  The December 2012 corporate transaction and gathering agreement challenged by both Plaintiffs and the Attorney General did not reduce Pennsylvania landowner royalties.  To the contrary, the gathering rates applicable to Plaintiffs in this action *decreased*.  In fact, the governing gas gathering agreement between Chesapeake and Access has financially benefitted an overwhelming number of lessors in Northern Pennsylvania – including the Browns and Suessenbachs – by saving them millions of dollars in gathering costs that Chesapeake otherwise would have incurred under the prior prevailing gathering rate and would have been entitled to deduct under the leases and Pennsylvania law.

Undeterred by the facts, the Attorney General has also filed an objection to the pending settlement in *Demchak Partners Limited Partnership v. Chesapeake Appalachia, L.L.C.*  No. 3:13-cv-02289-MEM (M.D. Pa.), D.E. 109, attached hereto as Exhibit B.  By doing so, the Attorney General has jeopardized a preliminarily-approved civil settlement that would, in the near term, provide many millions of dollars and forward-looking benefits to thousands of Pennsylvania

lessors.  And, more to the point, the Attorney General's objection impedes

independent resolution of *Brown* and *Suessenbach*, as the Attorney General posits

that its *parens patriae* power trumps the claims presented and the bargains reached

by the very landowners it purports to represent.  *See* Ex. B at 10-11.  The Attorney

General's attempts to obstruct settlement agreements between civil litigants so that

it can seek the same restitution remedy, on behalf of the same plaintiffs, based

upon the same alleged misconduct, makes individually-negotiated resolutions of

these civil cases economically unviable.

Moreover, permitting both these actions and the Attorney General's action to

proceed on different tracks at the same time would risk inconsistent rulings,

impermissible double recovery of the same purported restitution, waste of judicial

resources, piecemeal litigation, and inexpedient or duplicative discovery and pre-

trial processes.  It would be impractical to proceed with federal class actions and a

competing *parens patriae* action on the same subjects and alleged facts, in light of

these issues and the state's interest in regulating its oil and gas regime, including

royalty payment practices within its borders.  Indeed, even if the parties would

have preferred to resolve their disputes through these federal actions, the Attorney

General's action is not removable as a "mass action" under the Class Action

Fairness Act of 2005 ("CAFA").  Thus, the congressional decision to preclude

such a removal of the purported *parens patriae* lawsuit, combined with the state's

interest in the underlying subject matter and the Attorney General's conduct to date, forces prioritization of the Bradford County lawsuit.

Accordingly, Chesapeake respectfully requests that this Court exercise its discretion to stay the *Brown* and *Suessenbach* actions pending resolution of the Attorney General's action, or at least until resolution of the defendants' preliminary objections to the Attorney General's amended complaint, at which point, the parties will know whether the Attorney General's action will proceed, and if so, on what grounds. With a stay, Plaintiffs and all allegedly affected Pennsylvania lessors continue to have their day in court on an overly broad and sweeping set of claims – including the alleged misconduct asserted in *Brown* and *Suessenbach* – without the thorny legal and practical problems attendant to concurrent litigation. As one court aptly noted, staying the federal action in favor of a pending state court action with a broader but overlapping scope creates the potential for "a greater peace" that serves the interests of all involved. *Trent v. Dial Med. of Fla., Inc.*, No. 92-4493, 1992 WL 365625, at *3 (E.D. Pa. Nov. 30, 1992), *aff'd* 33 F.3d 217 (3d Cir. 1994).

## II.    ARGUMENT

### A.    The Court Has Discretion to Issue a Stay Under the *Colorado River* Doctrine.

Given the Court's inherent authority to manage its case dockets, a decision to stay a case is squarely within the district court's discretion. *See Will v. Calvert*

*Fire Ins. Co.*, 437 U.S. 655, 663-67 (1978).  Unlike outright dismissal, a stay

pending resolution of a pending state court action has a number of practical

benefits, as it simply facilitates "postponement of decision for its best fruition,"

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996) (citation omitted), and

enables the parties to return to this Court, if necessary, to address any lingering

issues unresolved by the state court, *see Chartener v. Provident Mut. Life Ins. Co.*,

No. 02-8045, 2003 WL 22518526, at *3 (E.D. Pa. Oct. 22, 2003).

Such practical considerations of judicial economy and efficiency inform a

court's decision-making under the *Colorado River* doctrine, which empowers the

Court to stay a federal case during the pendency of a parallel state court action to

"avoid duplicative litigation."  *Colorado River Water Conservation Dist. v. United*

*States*, 424 U.S. 800, 817 (1976).  As the Supreme Court explained, the doctrine

"rest[s] on considerations of '[w]ise judicial administration, giving regard to

conservation of judicial resources and comprehensive disposition of litigation.'"

*Id.* (citation omitted).

In the Third Circuit, a threshold question under the *Colorado River* doctrine

is whether the two cases are parallel.  *See BIL Mgmt. Corp. v. N.J. Econ. Dev.*

*Auth.*, 310 F. App'x 490, 491 (3d Cir. 2008).  For a federal court to exercise its

discretion to dismiss or stay an action under *Colorado River*, there must be a

pending state court proceeding with substantially the same parties and allegations.

*See IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 306 (3d Cir. 2006).

Once it is determined the actions are parallel, courts in the Third Circuit balance factors to inform the decision of whether to issue a stay. These factors include considerations of the relative convenience and progress in the respective state and federal fora; the desirability of avoiding piecemeal litigation, particularly where there is a congressional policy to prefer or favor a state court forum; whether federal or state law controls or the controversy presents important questions of state law; and whether the state forum adequately protects the parties' interests. *See BIL Mgmt. Corp.*, 310 F. App'x at 492. "No one factor is determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Id.* (quoting *Colorado River*, 424 U.S. at 818-19).

**B.      The Attorney General's Action Is Parallel to These Actions.**

The Attorney General's action and these actions are parallel for purposes of the *Colorado River* doctrine because they involve the same transaction or occurrence and rely upon the same allegations of misconduct. As explained *supra*, both the Attorney General and Plaintiffs allege Chesapeake unlawfully withheld royalty payments from landowners based on the same alleged scheme involving

complex corporate transactions and a supposedly disguised "loan" that purportedly inflated gathering rates.  Although the counts pleaded have different labels (UTPCPL versus RICO, unjust enrichment, and conversion), the underlying allegations are sufficiently similar to warrant a finding of parallelism.  *See Peerless Heater Co. v. Chevron Chem. Co.*, No. 97-CV-3128, 1998 WL 195706, at *3 (E.D. Pa. March 27, 1998) (finding the cases parallel in that they "address[ ] substantially the same claims" where "[t]he actual, substantive claims are not meaningfully different, each positing the same issue: which party is ultimately liable for the defective HTPV pipes"); *Active Disposal Serv., Inc. v. Cty. of Somerset*, Nos. 07-3210 (MLC) and 07-3239 (MLC), 2009 WL 78149, at *6 (D.N.J. Jan. 9, 2009) (finding actions parallel where the state and federal actions involved differently named claims, but "[b]oth the federal and state action concern constitutionality and enforceability of the same state statutes, regulations, and NJDEP permits for vehicles disposing of solid waste" and "[a] declaration by this Court could invalidate such regulations, and a final decision in either action will resolve whether the routes are enforceable").

The cases are also parallel because both the Attorney General's action and these actions involve the same requested remedies.  *See GGNSC Equity Holdings, LLC v. Breslin*, No. 1:14-MC-00450, 2014 WL 5463856, slip op. at *5 (M.D. Pa. Oct. 27, 2014) (noting parallelism exists when the cases seek the same remedies).

Both Plaintiffs and the Attorney General seek restitution of the same royalty deductions.  Brown Am. Compl. ¶ 83; Suessenbach Compl. ¶ 124 and Prayer for Relief at F; AG Am. Compl. Count I, Prayer for Relief at C and Count II, Prayer for Relief at C.

The cases here also involve substantially overlapping parties.  The Attorney General's suit is brought on behalf of Pennsylvania lessors—indeed, the Attorney General was required to plead her amended complaint in that manner to avoid this Court's jurisdiction under CAFA.  AG Am. Compl. ¶ 1.  Plaintiffs here are a subset of that class and therefore are covered by the Attorney General's suit.   The defendants in all three actions are also overlapping, as Chesapeake is named as a defendant in each.  Those facts weigh in favor of a parallel case finding.  *See Se. Pa. Transp. Auth. v. Board of Revision of Taxes*, 49 F. Supp. 2d 778, 782 (E.D. Pa. 1999) (parallel finding only requires "essentially identical" parties (citation omitted)).

Indeed, even with a slight difference in parties, courts apply the *Colorado River* balancing where the state action has the potential to produce a more comprehensive resolution.  *See, e.g.*, *Barron v. Caterpillar, Inc.*, No. 95-5149, 1996 WL 368335, at *3 (E.D. Pa. June 26, 1996) ("[T]he fact that the parties in the two suits are not identical also does not preclude a *Colorado River* stay." (citation omitted)); *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 695 (7th Cir.

1985) (finding actions parallel where "the state case is a good deal more comprehensive than the federal case"); *Aetna Cas. & Sur. Co. v. Sterner*, 700 F. Supp. 252, 256 (E.D. Pa. 1988) (finding parallel where "the state court allows for the more comprehensive resolution of this litigation").

Finally, a finding of parallelism can be based, in part, on recognition of the need for judicial efficiency.  Where, as here, maintaining separate proceedings with overlapping parties, issues, and discovery would not promote judicial economy, courts have found the actions parallel.  *See Allied Nut & Bolt, Inc. v. NSS Indus., Inc.*, 920 F. Supp. 626, 630-31 (E.D. Pa. 1996) ("When, as is the case here, two actions arise from the same transaction and occurrence, involve the same parties, entail consideration of the same factual and legal issues, and seek essentially the same relief, there is a sufficient risk that judicial resources will be consumed needlessly to warrant conducting the remainder of the *Colorado River* analysis.").  This Court should do the same and proceed with the rest of the *Colorado River* analysis.

**C.    Upon Balancing the *Colorado River* Factors, the Court Should Issue a Stay.**

On balance, the *Colorado River* factors warrant issuance of a stay pending resolution of the Attorney General's action, or at least pending resolution of the defendants' preliminary objections to the Attorney General's amended complaint.

Though no single factor is dispositive, and the balancing is not a mechanical or mathematical analysis, we address each of the relevant considerations below.

      1.    <u>Desirability of Avoiding Piecemeal Litigation</u>

The *Colorado River* factor regarding the desirability of avoiding piecemeal litigation weighs in favor of a stay of the *Brown* and *Suessenbach* actions. The Court of Appeals signaled the importance of this factor and its contours in *Ryan v. Johnson*, 115 F.3d 193 (3d Cir. 1997). There, the Court reiterated that a stay is appropriate under *Colorado River*, when there is a congressional policy to favor adjudication of claims in a state court proceeding. *Id.* at 197-98.[1]

In reaching that conclusion, the *Ryan* court also relied upon its prior analysis in *Ingersoll-Rand Financial Corp. v. Callison*, 844 F.2d 133 (3d Cir. 1988). In *Callison*, a securities fraud action was pending in Texas state court. The governing substantive statute, 15 U.S.C. § 77v, provided that the securities action was not removable, even though it could have been brought originally in federal court

---

[1] The *Ryan* court also noted that *Colorado River* itself involved a different kind of congressional policy against piecemeal litigation. In *Colorado River*, the United States sued a large group of water users in federal court, seeking a declaratory judgment of its water rights in that area. Thereafter, one of the defendants filed suit in state court and sought to join the United States as a party under the McCarran Amendment, 43 U.S.C. 666, which allowed such joinder in water rights cases. When the federal court was asked to abstain, the request was granted and upheld on appeal because the McCarran Amendment "was evidence of a clear federal policy that the state court systems were the preferred means for avoiding the piecemeal adjudication of water disputes." *Ryan*, 115 F.3d at 196-97 (citing *Colorado River*, 424 U.S. at 819).

based upon diversity jurisdiction.  In turn, the defendant, who was a holder of a note, filed a diversity action against the plaintiff based upon the same underlying dispute.  Though there was nothing procedurally improper about that lawsuit, the statutory bar to removal of the state court action was "evidence of a strong federal policy against piecemeal litigation" that warranted the exercise of *Colorado River* abstention in the related federal action.  *Ryan*, 115 F.3d at 197.

Congressional policy here likewise favors state resolution.  The Attorney General's purported *parens patriae* action here is not removable as a "mass action" under the Class Action Fairness Act of 2005, 28 U.S.C. 1332(d), 1453, 1711-1715 ("CAFA"), and that statute's legislative history makes clear the congressional intent to preclude such a removal in this context.  *See*, *e.g.*, Cong. Rec. S1157 at 1158-65 (daily ed. Feb. 9, 2005); *see also Miss. ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736 (2014) (holding that CAFA does not allow removal of state attorney general actions as mass actions).[2]  In particular, when questions arose regarding whether CAFA would apply to permit removal of a *parens patriae* claim like the one at issue here, the legislature reiterated on the congressional floor that the statute neither covered nor permitted removal of any such claims by the Attorney General.  *See* 151 Cong. Rec. at S1160-61 (Statement of Sen. Specter).  Courts have since followed suit.  *See*, *e.g.*, *W. Va. ex rel. McGraw v. Bristol Myers*

---

[2] An action brought by the Attorney General may nevertheless be removable on other grounds based upon the specific allegations made and claims asserted.

*Squibb Co.*, No. 13-1603 (FLW), 2014 WL 793569, slip op. (D.N.J. Feb. 26, 2014)

(no jurisdiction over Attorney General suit under CAFA); *Hood ex rel. Mississippi*

*v. Bristol Myers Squibb Co.*, No. 13-5910, MDL No. 2418, 2014 U.S. Dist. LEXIS

114000 (D.N.J. July 22, 2014) (same).  Because of this congressional intent to

preclude removal of the Attorney General's *parens patriae* action under CAFA

(and thereby to favor adjudication in state court absent a federal question), this

Court can and should exercise its discretion under *Ryan* to avoid piecemeal

litigation of the parallel claims asserted in these federal actions.

Indeed, as between federal class actions and overlapping *parens patriae*

claims, courts have favored the state court proceeding as a "superior" method of

adjudication.  *See Pennsylvania v. Budget Fuel Co.*, 122 F.R.D. 184, 185-86 (E.D.

Pa. 1988) ("A *parens patriae* action is superior to a class action as a means for

adjudication of collective claims.")  This is true even where the federal action

raises federal RICO claims and the *parens patriae* claim does not.  *See Lane v.*

*Record Keepers, L.L.C.*, No. 00-3036, 2001 WL 913835 (E.D. La. Aug. 14, 2001).

In *Lane*, the plaintiffs brought a class action in federal court alleging RICO

violations in connection with a pyramid promotional scheme.  *See id.* at *1.  The

Louisiana Attorney General brought a representative suit based upon the same

alleged misconduct for violation of a state statute against pyramid schemes.  *See id.*

at *4.  In staying the federal action under the *Colorado River* doctrine, the court

was not concerned that the plaintiffs' RICO claims were not present in the state court action. *See id.* ("Although plaintiffs' RICO claims may not be brought to the state court, a stay of these proceedings until the conclusion of the state case allows for a forum for plaintiffs' RICO claims, while exercising wise judicial administration and conservation of judicial resources."). To the contrary, the court saw it as a factor in favor of the stay, noting that "the conclusion of the state court proceeding will allow for the issues concerning plaintiffs' RICO claims to be materially narrowed." *Id.* The same conclusion applies here, as the outcome of the Attorney General's action will, at a minimum, narrow the overlapping issues presented by *Brown* and *Suessenbach*.[3]

In fact and substance, the claims here duplicate claims raised by the Attorney General, on behalf of the same plaintiffs, seeking the same restitution remedies, in what purports to be a more comprehensive lawsuit that must be

---

[3] The same conclusion results under the analysis set forth in *Landis v. North American Co.,* 299 U.S. 248, 254-55 (1936). Since *Ryan*, some courts in this circuit have issued stays in deference to related state court cases under *Landis* without conducting a *Colorado River* analysis. Like those cases, a stay here makes good practical sense – even without regard to a congressional policy against piecemeal litigation – because a stay allows Plaintiffs their day in court, but it does so in an efficient matter that avoids duplication, inconsistency, and unfairness to either side. *See, e.g., Rhodes v. Indep. Blue Cross*, No. 11-1881, 2012 WL 447544, at *3 n.4 (E.D. Pa. Feb. 9, 2012) (court chose to stay the pending state court case under inherent power and not *Colorado River*); *Airgas, Inc. v. Cravath, Swaine & Moore LLP*, No. 10-612, 2010 WL 624955, at *2-4 (E.D. Pa. Feb. 22, 2010) (staying federal action under court's inherent authority and not *Colorado River* pending outcome of state court case).

adjudicated in a state forum.  In these circumstances, wise judicial administration

and the desirability of avoiding piecemeal litigation counsel in favor of a stay of

these federal actions pending resolution of the Attorney General's lawsuit, at

which time this Court can resolve remaining issues, if any, pertinent to Plaintiffs'

purported claims.

### 2.    Presence of State Law Issues and Interests

Both the Attorney General's action and the *Brown* and *Suessenbach* actions

challenge royalty payment practices in Pennsylvania, as well as corporate

transactions and agreements related to development of the Marcellus shale and gas

gathering in the Commonwealth.  According to the Attorney General's amended

complaint itself, resolution of those issues implicates state laws/regulation and

state interests.

The calculation and payment of oil and gas royalties and the related rights of

lessors are subject to state legislation and common law, and have been for years.

In 1979, Pennsylvania enacted the Guaranteed Minimum Royalty Act ("GMRA"),

which governs the payment of royalties to landowner lessors.  *See* 58 P.S. § 33.3.

In 2010, the Pennsylvania Supreme Court exercised extraordinary jurisdiction to

hear a case interpreting the state's mandatory one-eighth royalty provision, holding

the post-production costs were deductible under the netback method of calculating

royalties.  *See Kilmer v. Elexco Land Servs., Inc.*, 990 A.2d 1147, 1149 (Pa. 2010).

And, in 2013, Governor Corbett signed the Oil and Gas Lease Act, which reconstructed (but did not change the content of) the GMRA and added new provisions (including one regarding required royalty payment information). *See* 58 P.S. § 33, *et seq.*; *see also id.* § 35.2.

Likewise, the production of natural resources like oil and gas is subject to state regulation and oversight. To that end, Pennsylvania has established an Office of Oil and Gas Management under its Department of Environmental Protection and it has enacted governing statutes, like the Oil and Gas Act, 58 Pa. C.S. § 3201, et seq., which aims to achieve "optimal development of oil and gas resources" by operators in the Commonwealth. *See* 58 Pa. C.S. § 3202; *see also Robinson Twp. v. Pennsylvania*, 83 A.3d 901, 978 (Pa. 2013) ("In regulating the oil and gas industry, the General Assembly exercises its constitutional police powers (to promote general welfare, convenience, and prosperity) but it must also exercise its discretion as trustee of the public natural resources (to 'conserve and maintain' public natural resources for the benefit of the people), permitting changes to the corpus of the trust to encourage sustainable development where appropriate."); *Barrett v. Atl. Richfield Co.*, 444 F.2d 38, 44 (5th Cir. 1971) (noting the importance of mineral production to the Texas economy in abstaining from deciding a case about Texas oil and gas leases).

All of which is to say, even though the Attorney General's lawsuit is based upon erroneous allegations and purports to extend the Office's enforcement power beyond that which is allowable under the Commonwealth's Unfair Trade Practices and Consumer Protection Law, the underlying subject matter at issue in all three of these cases implicates state law and state interests.  Indeed, the *Brown* and *Suessenbach* Plaintiffs have pleaded both state and federal claims.  Thus, consistent with other courts, this Court should issue a stay under *Colorado River* because, at a minimum, federal and state law are intertwined in the cases at hand. *See, e.g., Lane*, 2001 WL 913835, at *4 (staying case with RICO claims in favor of suit by Louisiana Attorney General in state court).

### 3.   Whether State Forum Protects Interests

The Attorney General's state court proceeding entails the same erroneous allegations asserted here, but it purports to be broader in substantive scope and seeks a more comprehensive resolution of claims on behalf of a broader group of lessors.[4]  Where, as here, the substantive claims and potential beneficiaries of the

---

[4] *Compare* AG Am. Compl. ¶ 35 (purporting to bring claims on behalf of all Pennsylvania landowners, not limited in time or to those with Chesapeake Appalachia leases), *with Brown* Am. Compl. ¶ 55 (defining the putative class as "[a]ll lessors having oil and gas leases in Pennsylvania with Chesapeake Appalachia, LLC, during the period 2012 through the date of class notice herein, where Chesapeake Appalachia, LLC has subtracted from the lessor's royalty payment gas gathering and transportation costs calculated based on a Gas Gathering Agreement entered into by Chesapeake and Access Midstream"), *and Suessenbach*, Am. Compl. ¶ 77 (defining the class as "[a]ll Pennsylvania lessors

state court action are broader in scope, federal courts have found that the parties'

interests are not impaired by a stay of the competing federal actions. *See, e.g.*,

*Trent*, 1992 WL 365625, at *3 ("We also find the state court would be in a superior

position to adequately protect all the parties' rights. As stated, the state court class

is more comprehensively defined. This indicates that, if it is successful, the

plaintiffs' class will benefit a greater number of claimants."); *see also McGuire v.*

*Int'l Paper Co.*, No. 1:92-CV-593BRR, 1994 WL 261360, at *8 (S.D. Miss. Feb.

18, 1994) (denying class certification in federal court to defer to state court action

where "the existing state court litigation is extensive and superior to the proposed

class action").  Put another way, if the defendants "settle the matter or are

successful on the merits" in the Attorney General suit, "they will have procured a

greater peace." *Trent*, 1992 WL 365625, at *3.

In addition, because the Attorney General seeks restitution on behalf of all

Pennsylvania lessors for allegedly wrongful royalty deductions, the remedy sought

in the state action can compensate Plaintiffs for their alleged losses, if that suit is

successful.  To the extent the state lawsuit does not resolve all issues raised in

*Brown* and *Suessenbach*, issuance of a stay permits this court to address any such

issues at a later date without the inefficiency or duplication inherent in concurrent

---

(. . . continued)
having oil and gas leases in which Chesapeake Appalachia, LLC was a party
during the period August 3, 2010 through the present and has made deductions
from the lessor's royalty payments").

litigation.  *See La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 29 (1959)

(noting that upon issuing a stay, "the District Court, having retained complete

control of the litigation" can reassert its power to resolve any outstanding issues);

*Feige v. Sechrest*, 90 F.3d 846, 851 (3d Cir. 1996) ("We think the district court's

stay order was entirely appropriate.  Rather than abdicate its judicial duty to

exercise its jurisdiction, the district court simply postponed the exercise of that

jurisdiction until the proceedings in the Commonwealth Court reach their

conclusion.").

### 4.   Relative Convenience and Progress in Each Forum

Generally, the convenience factor comes into play when the state and federal

actions are geographically remote.  *See Morgan Stanley Dean Witter Reynolds,*

*Inc. v. Gekas*, 309 F. Supp. 2d 652, 657 (M.D. Pa. 2004).  Here, all of the actions

are in Pennsylvania and the identified plaintiffs are in Pennsylvania, so it is equally

convenient for them to litigate in either forum.  Conversely, the Chesapeake

defendants are located in Oklahoma, so it is equally inconvenient for them to

litigate in either court.  Consequently, this factor is neutral in the analysis.  *See BIL*

*Mgmt. Corp.*, 310 F. App'x at 492 ("[T]he equal convenience of the two fora is a

neutral, or non-existent, factor.").

As to the relative progress factor, the Attorney General's office conducted a

multi-year investigation before filing its lawsuit, during which it allegedly

"reviewed reams of documents," and "interviewed scores of witnesses." Ex. B at 4. The parties in that lawsuit are now engaging in a second round of dispositive motion practice. Here, the *Brown* and *Suessenbach* actions are in discovery, though that process is not complete. One deposition has been taken to date (in the *Suessenbach* case only), and the parties have not briefed class certification or summary judgment. Though these federal actions have been pending longer than the Attorney General's action, in many respects, they are not materially ahead of the Attorney General's alleged progress.

Further, these lawsuits proceeded at Plaintiffs' request, even though Plaintiffs knew from the beginning that the Attorney General was conducting an investigation and they sought to piggyback off the government's inquiry. Indeed, Plaintiffs' complaints reference the Governor's request for an investigation, Brown Am. Compl. Ex. C at 3; Suessenbach Compl. ¶ 6, and Plaintiffs requested cloned discovery (and continue to do so) in an attempt to catch up with the broader government investigation here, Brown, D.E. 93; Suessenbach, D.E. 57. As a result, Plaintiffs cannot be heard to complain that they did not anticipate the Attorney General action or its potential effects.

Moreover, as a practical matter, the Attorney General has taken the position that its lawsuit trumps Plaintiffs' civil claims on the same subject matter, such that the Plaintiffs may be unlikely to resolve their claims here, unless or until the

Attorney General permits it. *See* Ex. B at 10-11. In that situation, the only rational thing to do is move forward with the Attorney General action until that Office is willing to abide by the agreements/resolutions reached by the very lessors it purports to represent. Until then, the state court provides the only practical forum to protect the parties' interests, as defendants cannot work toward judgment or resolution in federal court only to have the Attorney General's office turn around and seek to recover a second time on behalf of the same people for the same alleged harm for which defendants obtained a negotiated release in civil litigation.

## III. CONCLUSION

For all of the foregoing reasons, and in the interest of wise judicial administration and economy, Chesapeake respectfully requests a stay of these civil actions pending resolution of the Attorney General's action in Bradford County.

Dated: March 23, 2016.                    Respectfully submitted:

/s/ Daniel T. Brier
Daniel T. Brier
John B. Dempsey
**MYERS BRIER & KELLY, LLP**
425 Spruce Street, Suite 200
Scranton, PA 18503
Tel: (570) 342-6100
Fax: (570) 342-6147
Email: dbrier@mbklaw.com
                jdempsey@mbklaw.com

Seamus C. Duffy (*pro hac vice*)
Kathryn E. Deal (*pro hac vice*)
**DRINKER BIDDLE & REATH LLP**
One Logan Square, Suite 2000
Philadelphia PA 19103
Tel: (215) 988-2700
Fax: (215) 988-2757
Email:  seamus.duffy@dbr.com
         kathryn.deal@dbr.com

Daniel T. Donovan  (*pro hac vice*)
Ragan Naresh (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
655 Fifteenth Street, NW
Washington, DC 20005
Tel: (202) 879-5000
Fax: (202) 879-5200
Email:  daniel.donovan@kirkland.com
         ragan.naresh@kirkland.com

*Counsel for Defendant*
*Chesapeake Energy Corporation*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8**

I, Daniel T. Brier, hereby certify pursuant to Local Rule 7.8(b)(2) that the foregoing Memorandum in Support of Defendant Chesapeake Energy Corporation's Motion for a Stay includes 4,812 words according to Microsoft Word's word-count feature and that the brief thus complies with length requirements of the Middle District of Pennsylvania.

/s/ Daniel T. Brier
Daniel T. Brier

## <u>CERTIFICATE OF NON-CONCURRENCE</u>

I, Daniel T. Brier, hereby certify that, pursuant to Local Rule 7.1, counsel for Defendant Chesapeake Energy Corporation sought concurrence for their Motion for a Stay from counsel for Plaintiffs. Counsel for Plaintiffs do not consent to the motion.

/s/ Daniel T. Brier
Daniel T. Brier

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 23, 2016, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties who have appeared in this action via the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Daniel T. Brier
Daniel T. Brier