# APPENDIX OF UNPUBLISHED OPINIONS

A.   *Active Disposal Serv., Inc. v. Cty. of Somerset*,
        Nos. 07-3210 (MLC) and 07-3239 (MLC), 2009 WL 78149
        (D.N.J. Jan. 9, 2009)

B.   *Airgas, Inc. v. Cravath, Swaine & Moore LLP*,
        No. 10-612, 2010 WL 624955 (E.D. Pa. Feb. 22, 2010)

C.   *Barron v. Caterpillar, Inc.*,
        No. 95-5149, 1996 WL 368335 (E.D. Pa. June 26, 1996)

D.   *Chartener v. Provident Mut. Life Ins. Co.*,
        No. 02-8045, 2003 WL 22518526 (E.D. Pa. Oct. 22, 2003)

E.   *GGNSC Equity Holdings, LLC v. Breslin*,
        No. 1:14-MC-00450, 2014 WL 5463856 (M.D. Pa. Oct. 27, 2014)

F.   *Hood ex rel. Miss. v. Bristol Myers Squibb Co.*,
        No. 13-5910, MDL No. 2418, 2014 U.S. Dist. LEXIS 114000
        (D.N.J. July 22, 2014)

G.   *Lane v. Record Keepers, L.L.C.*,
        No. 00-3036, 2001 WL 913835 (E.D. La. Aug. 14, 2001)

H.   *McGuire v. Int'l Paper Co.*,
        No. 1:92-CV-593BRR, 1994 WL 261360 (S.D. Miss. Feb. 18, 1994)

I.   *Peerless Heater Co. v. Chevron Chem. Co.*,
        No. 97-CV-3128, 1998 WL 195706 (E.D. Pa. March 27, 1998)

J.   *Rhodes v. Indep. Blue Cross*,
        No. 11-1881, 2012 WL 447544 (E.D. Pa. Feb. 9, 2012)

K.   *Trent v. Dial Med. of Fla., Inc.*,
        No. 92-4493, 1992 WL 365625 (E.D. Pa. Nov. 30, 1992)

L.   *W. Va. ex rel. McGraw v. Bristol Myers Squibb Co.*,
        No. 13-1603 (FLW), 2014 WL 793569 (D.N.J. Feb. 26, 2014)



**A**

2009 WL 78149
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
D. New Jersey.

ACTIVE DISPOSAL SERVICE, INC., Plaintiff,
v.
COUNTY OF SOMERSET, et al., Defendants.
County of Somerset, et al., Plaintiffs,
v.
Active Disposal Service, Inc., Defendant.

Civil Action Nos. 07-3210 (MLC), 07-3239(MLC).
|
Jan. 9, 2009.

West KeySummary

1    **Removal of Cases**
     👉 Original jurisdiction of United States court

     **Removal of Cases**
     👉 Allegations in Pleadings

     The County parties' action in state court to
     compel defendant company engaged in the
     collection and disposal of solid waste to
     comply with state statutes and regulations
     concerning the disposal of such waste could
     not be removed to federal court. Defendant
     corporation's argument for removal on the basis
     of a federal defense allegedly due to the
     fact that the statutes and regulations at issue
     violated the Dormant Commerce Clause because
     requiring solid waste vehicles to use designated
     routes was discriminatory and drove up costs,
     was inconsistent with previous Supreme Court
     rulings, and therefore the court did not possess
     original jurisdiction over the case for removal.
     U.S.C.A. Const. Art. 1, § 8, cl. 3; 28 U.S.C.A. §
     1331.

     3 Cases that cite this headnote

**Attorneys and Law Firms**

Joshua H. Raymond, Richard D. Trenk, Trenk, Dipasquale,
Webster, Della Fera & Sodono PC, West Orange, NJ, for
Active Disposal Service.

Scott D. Rodgers, Miller, Robertson and Rodgers, P.C.,
Somerville, NJ, for Defendants.

**MEMORANDUM OPINION**

MARY L. COOPER, District Judge.

**\*1** This matter arises upon the Court's Order to Show Cause
("OTSC") why this Court should not (1) remand the claims
initially asserted under Civil Action No. 07-3239(MLC)
("No.07-3239") to state court for lack of jurisdiction, and
(2) abstain from exercising jurisdiction over the claims
initially asserted under Civil Action No. 07-3210(MLC)
("No.07-3210"). (*See* No. 07-3210, dkt. entry no. 7, OTSC.)
The Somerset County Department of Health ("SCDOH")
and the County of Somerset (collectively, the "County Parties")
support granting the OTSC, and Active Disposal Service, Inc.
("ADS") opposes such a grant. (*See* No. 07-3210, dkt. entry
nos. 8, 11, 12.) For the reasons stated below, the Court will
(1) grant the OTSC, (2) remand the claims asserted under No.
07-3239, and (3) abstain as to the claims asserted under No.
07-3210.

**BACKGROUND**

The County Parties brought an action in state court on June
6, 2007, to compel ADS, which is engaged in the collection
and disposal of solid waste, to, *inter alia,* comply with certain
state statutes and regulations concerning the disposal of such
waste ("County-Initiated Action"). (*See* No. 07-3239, dkt.
entry no. 1, Compl.) Specifically, the County Parties contend,
*inter alia,* that ADS transported solid waste not in accordance
with the designated solid waste routes. (*Id.* at 2-11.) [1] ADS,
which has failed to pay any of the penalties assessed by the
SCDOH, removed the action on July 13, 2007, on the grounds
that the statutes and regulations at issue are unconstitutional
as they violate the Dormant Commerce Clause. (*Id., Rmv.
Not.* at 3.)

[1]    The SCDOH submitted a work plan to the New Jersey
       Department of Environmental Protection ("NJDEP") in

March 1993, pursuant to the County Environmental Health Act, N.J.S.A. § 13:1E-1 *et seq.,* which "authorizes the County's staff and field inspectors to conduct investigations, to enforce orders, to issue notices of violations and penalty assessment letters, and to file and serve summonses and complaints in courts of competent jurisdiction on behalf of the [SCDOH]." (No. 07-3239, Compl. at 1-2.)

ADS, on July 11, 2007, brought a separate action in this Court under 42 U.S.C. § ("Section") 1983 challenging the constitutionality of the enforcement of the statutes and regulations pertaining to the solid waste disposal ("ADS-Initiated Action"). (*See* No. 07-3210, dkt. entry no. 1, Compl.) ADS failed to notify the Court of the existence of the County-Initiated Action, which was pending in state court at that time, even though ADS was aware of it. (*See* No. 07-3210, dkt. entry no. 3, 7-20-07 Order (noting same).)

ADS seeks a declaratory judgment that as applied, such regulation of solid waste vehicles is discriminatory against interstate commerce and, along with the related plans and permits, imposes a burden on interstate commerce that is excessive in relation to the putative local benefits. (*Id.* at 1-2.)

The Court consolidated the actions. (No. 07-3210, dkt. entry no. 3; No. 07-3239, dkt. entry no. 3.) The Court subsequently ordered ADS to show cause why this Court should not (1) remand the claims initially asserted under County-Initiated Action to state court for lack of jurisdiction, and (2) abstain from exercising jurisdiction over the claims initially asserted under the ADS-Initiated Action. (*See* OTSC.)

## DISCUSSION

### I. Remand of the County-Initiated Action is Warranted

ADS removed the County-Initiated Action under 28 U.S.C. § 1331, alleging that the state statutes and regulations at issue violate the Dormant Commerce Clause, U.S. Const. Art. I, § 8, cl. 3. (*See* No. 07-3239, Rmv. Not. at 4.) It alleges that those statutes and regulations are invalid and unconstitutional because requiring solid waste vehicles to use designated routes is "discriminatory and drives up the costs by requiring solid waste vehicles to travel greater distances in order to access and exit solid waste facilities and thus using more fuel and placing more unnecessary wear and tear on the vehicles." (*Id.*)

**\*2** ADS thus asserts that there is jurisdiction over the County-Initiated Action on the basis of a federal defense only.

> [I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.

*Caterpillar v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *see Briones v. Bon Secours Health Sys.,* 69 Fed.Appx. 530, 534 (3d Cir.2003). As such, the Court does not possess original jurisdiction over the County-Initiated Action.

ADS, however, argues that the Court should exercise supplemental jurisdiction over the County-Initiated Action. (No. 07-3210, dkt. entry no. 8, ADS Resp. at 1.) A district court may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). ADS contends that because the Court possesses original jurisdiction over the ADS-Initiated Action and has consolidated the two actions, the Court may exercise supplemental jurisdiction over the County-Initiated Action. (*Id.* at 1-2.)

Supplemental jurisdiction, however, does not provide a basis for removal. *Syngenta Crop Prot. v. Henson,* 537 U.S. 28, 34, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002). An already existing federal action cannot provide a mechanism for removal of a nonremovable state action. *Ditullio v. Universal Underwriters Ins. Co.,* No. 03-0239, 2003 U.S. Dist. LEXIS 12200, 2003 WL 21973324 (E .D. Pa. Jun. 6, 2003) ("State law claims may not be removed to federal court solely because there is a pending federal case that arises out of a common nucleus of operative fact with the state action."); *In re Estate of Tabas,* 879 F.Supp. 464, 467-68 (E.D.Pa.1995) (finding that even if two cases have been consolidated, "[i]n the absence of jurisdiction to proceed in the unremovable action, the court should ... remand[ ] the action"); *see also Fox v. Poole,* No. 06-148, 2007 U.S. Dist. LEXIS 64779, at *35-*36, 2007 WL 2572104 (W.D.N.Y. Aug. 31, 2007).[2] The Court thus finds that subject matter jurisdiction over the

County-Initiated Action does not exist, and remand to state court is warranted. [3]

[2]     The Court declines to follow the dicta in *DeBasio v. LifeUSA Holdings,* No. 98-3346, 1998 WL 546127, at *3 (D.N.J. Aug.27, 1998) stating "[w]hen two actions are consolidated before the same district court, only one of which provides a basis for original federal jurisdiction, there is no reason why the court could not exerc i se supplemental jurisdiction over related state claims asserted in the other action." The Court notes that consolidated cases "are not necessarily merged forever and for all purposes," *Bradgate Assocs. v. Fellows, Read & Assocs.,* 999 F.2d 745, 750 (3d Cir.1993), and finds that jurisdiction should not be based on a separate but related action, regardless if the cases have been consolidated.

[3]     The Court further notes that 28 U.S.C. § 1367(c) provides the Court with the discretion to refuse to exercise supplemental jurisdiction when "values of judicial economy, convenience, fairness, and comity counsel that the district court remand state claims to a state forum." 28 U.S.C. § 1367(c); *see Combs v. Homer-Ctr. Sch. Dist.,* 540 F.3d 231, 253-54 (3d Cir.2008). Thus, even if it were within the Court's power to exercise supplemental jurisdiction over the County-Initiated Action, it is within the Court's discretion to refuse such jurisdiction.

## II. Abstention from ADS-Initiated Action is Warranted

### A. *Younger* Abstention

"The federal courts have a virtually unflagging obligation" to adjudicate claims within their jurisdiction. *Deakins v. Monaghan,* 484 U.S. 193, 203, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988) (internal quotations and citations omitted). An exception to that rule, however, was established in *Younger v. Harris,* 401 U.S. 37 (1971), which held that federal courts should abstain when federal adjudication would disrupt an ongoing state criminal proceeding. 401 U.S. at 43-54. This principle has since been extended to civil proceedings, as well as state administrative proceedings. *See Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979).

 *3     *Younger* abstention "reflects a strong federal policy against federal-court interference with pending state judicial proceedings." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Abstention is appropriate only where: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims. *Id.* at 432. Such a showing, however, does not mandate that the federal court abstain. Where federal proceedings do not interfere with state proceedings, abstention should not be implicated. *Gwynedd Props. v. Lower Gwynedd Twp.,* 970 F.2d 1195, 1201 (3d Cir.1992). The Court, moreover, should not abstain if the federal plaintiff can establish that (1) the state proceedings are being undertaken in bad faith or for purposes of harassment, or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceedings will present a significant and immediate potential for irreparable harm to the federal interests asserted. *Schall v. Nix,* 885 F.2d 101, 106 (3d Cir.1988). The Court will abstain from exercising jurisdiction here under the *Younger* abstention doctrine, as the County-Initiated Action (1) is ongoing, (2) implicates important state interests, and (3) presents an adequate opportunity to raise federal claims therein. *See Middlesex County Ethics Comm.,* 457 U.S. at 435; *Younger,* 401 U.S. at 43-54.

The County-Initiated Action was brought in state court before the ADS-Initiated Action was brought here. (*See* No. 07-3239, Compl.) Accordingly, the first prong of *Younger* is satisfied.

The state proceedings, furthermore, satisfy prong two because important state interests are implicated. The dispute largely centers on the enforceability of state statutes and regulations, focusing on NJDEP permits that allow access to collection and disposal of solid waste. The local routes in which such waste is transported is largely an area of local concern. A final decision in this case (1) will affect counties and solid waste transfer stations throughout the entire state, (2) has the potential to invalidate numerous NJDEP permits, and (3) may disrupt efforts of agencies, such as the SCDOH, acting at the NJDEP's behest. *See Gwynedd Props.,* 970 F.2d at 1201.

"Where abstention is appropriate, there is often a nexus between the claims asserted in the federal action and the defenses or claims asserted or available in the state action." *Id.* "By contrast, where federal proceedings parallel but do not interfere with state proceedings, the principles of comity underlying *Younger* abstention are not implicated." *Id.; see, e.g., Wooley v. Maynard,* 430 U.S. 705, 711, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (holding *Younger* to be inapplicable because the "suit is in no way designed to annul the results of a state trial since the relief sought is wholly prospective") (internal quotations omitted).

**\*4** ADS argues that "the County-Initiated action and the ADS-Initiated action involve different subject matter and ADS's federal claim has not been raised in state court." (No. 07-3210, ADS Resp. at 5.) It further argues that "ADS does not seek from this Court relief with respect to the County-Initiated action. Rather, it merely seeks to pursue a parallel track." (*Id.*)

ADS's argument is without merit. There is certainly a nexus between the defenses asserted by ADS in the state action and the suit brought by ADS in federal court. In both actions, the question will turn on the validity and constitutionality of the same state statutes, regulations, and NJDEP permits. A declaration by this Court could invalidate such statutes, regulations, and permits. *See Addiction Specialists v. Twp. of Hampton,* 411 F.3d 399, 410 (3d Cir.2005). Accordingly, the Court agrees with ADS that the ADS-Initiated Action pursues a parallel track to the County-Initiated Action, but finds that this track will interfere with the state proceedings. [4]

[4]   The Court further notes that ADS's argument that the ADS-Initiated Action involves different subject matter than the County-Initiated Action is contrary to its earlier argument that the Court should exercise supplemental jurisdiction. (See supra I.) 28 U.S.C. § 1367(a) authorizes the exercise of supplemental jurisdiction only when claims are "so related to [other] claims" that "they form part of the same case or controversy." 28 U.S.C. § 1367(a).

ADS, furthermore, has failed to carry its burden of showing it could not present its constitutional claims as a defense in state court, and, therefore, prong three is satisfied. *See Pennzoil Co. v. Texaco,* 481 U.S. 1, 14, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (finding "the burden on this point rests on the federal plaintiff to show that state procedural law barred presentation of its claims"). ADS has offered no reason why its claims could not be fully heard by the state court. No evidence has been brought to this Court's attention suggesting ADS would have difficulty having its claims adjudicated in state court, and, in fact, ADS has already asserted its constitutional claims as an affirmative defense in the County-Initiated Action. (*See* No. 07-3239, Rmv. Not. at 4.)

ADS argues that it is not required to seek relief in state court. (No. 07-3210, ADS Resp. at 5.) The test, however, is not whether ADS is required to seek relief in state court, but whether the state court would be an adequate forum to hear the federal claims, and, as such, this argument fails.

*Cf. Prevost v. Twp. of Hazlet,* 159 Fed.Appx. 396, 398 (3d Cir.2005) (finding that the constitutional claims asserted in a Section 1983 action could not be fully raised in related state administrative proceeding).

ADS further argues that the Court must not abstain because the statutes at issue are "flagrantly unconstitutional." (No. 07-3210, ADS Resp. at 5.) Abstention is not warranted if a statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger,* 401 U.S. at 53-54; *see Schall,* 885 F.2d at 106. The statutes at issue in this case do not meet this standard. Accordingly, the Court finds that, even though a federal constitutional matter is implicated under Section 1983, abstention is warranted under the *Younger* doctrine. [5]

[5]   Abstention may also be appropriate under the doctrine of *Burford* abstention, the purpose of which is to avoid a district court's intrusion into a matter of local concern that is within the special competence of local courts. *See Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Chiropractic Am. v. LaVecchia,* 180 F.3d 99, 104 (3d Cir.1999). Also:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*Id.* (cites and quotes omitted). But *Burford* abstention "appl[ies] without regard to the existence of an ongoing proceeding ." *Stoe v. Flaherty,* 436 F.3d 209, 213 (3d Cir.2006); *see Coles v. Street,* 38 Fed.Appx. 829, 831 (3d Cir.2002) (stating pending state court action not needed, as abstention proper when state review is available). Also, claims seeking damages that are in federal court by way of 28 U.S.C. § 1331 may be barred by *Burford. See Coles,* 38 Fed.Appx. at 832.

There is no dispute that ADS can seek relief in state court. Also, the Court would need to weigh difficult issues of state law bearing on policy problems of substantial public import–*i.e.,* regulation of waste

collection and disposal-the importance of which transcends a result here, and could disrupt New Jersey's statutory and regulatory scheme and frustrate the efforts to have a coherent policy in this area of substantial public concern. See *Berman Enters. v. Jorling,* 3 F.3d 602, 608 (2d Cir.1993) (affirming judgment dismissing claim under *Burford* concerning agency decision barring plaintiff from operating oil and sludge barge in harbor, as "New York, through a combination of statutes and regulations under the Environmental Conservation Law and the Navigation Law, has established a complex, even bewildering, system for regulating ... pollution"). Here, ADS is challenging (1) the constitutionality of state statutes and regulations as applied, and (2) the actions of the County Parties, which are acting at the behest of the NJDEP. See *supra* note 1. (See No. 07-3210, Compl. at 1-2; No. 07-3239, Compl. at 1-11.) ADS's assertion of an as-applied claim does not bar the application of *Burford* abstention. See *Coles,* 38 Fed.Appx. at 831; *LaVecchia,* 180 F.3d at 107-08.

The Court also would be required to examine the motivations and intentions of the County Parties, which would appear to merit abstention. See *Chiropractic,* 180 F.3d at 108 (suggesting same in action concerning insurance regulations).

**B. *Colorado River* Abstention**

**\*5** The *Colorado River* abstention doctrine authorizes a district court to stay a case where a duplicate or parallel state court case is pending. *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817-19, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The mere presence of duplicative state court litigation, however, does not ordinarily justify a federal court's refusal to exercise jurisdiction over an action. See *, e.g., id.* at 817; *Ryan v. Johnson,* 115 F.3d 193, 195 (3d Cir.1997); *Univ. of Md. at Balt. v. Peat Marwick Main & Co.,* 923 F.2d 265, 275-76 (3d Cir.1991).

The Supreme Court's decision in *Colorado River* established an abstention doctrine based, not on principles of proper adjudication of constitutional disputes or federal-state comity, but on "consideration of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " 424 U.S. at 817.[6] Such abstention may be justified "in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Ryan,* 115 F.3d at 196 (quoting *Colo. River,* 424 U.S. at 813.) This doctrine therefore permits, in exceptional circumstances, a district court to

dismiss a complaint or stay an action in the face of parallel state court proceedings. See *, e.g., Ryan,* 115 F.3d at 195; *Motor Club of Am. v. Weatherford,* 841 F.Supp. 610, 626 (D.N.J.1994); *Bradgate Assocs. v. Fellows, Read & Assocs., Inc.,* No. 90-2370, 1990 WL 137208, at \*2 (D.N.J. Sept.17, 1990); *Samaroo v. Samaroo,* 743 F.Supp. 309, 317-18 (D.N.J.1990). But, even though the *Colorado River* standard allows a district court to abstain, circumstances permitting this abstention under the *Younger* doctrine. See *, e.g., Colo. River,* 424 U.S. at 818; *Trent v. Dial Med. of Fla.,* 33 F.3d 217, 223 (3d Cir.1994). Abstention based on the *Colorado River* doctrine therefore is a particularly rare occurrence. See *, e.g., Trent,* 33 F.3d at 223; *Bryant v. N.J. Dep't of Transp.,* 1 F.Supp.2d 426, 436 (D.N.J.1998) (citation omitted).

6    The Court notes that the *Colorado River* Court did not refer to the standard it adopted in cases of duplicative federal and state litigation as an "abstention doctrine," but rather considered "abstention" inappropriate in the particular circumstances involved. See *Colo. River,* 424 U.S. at 813-21; *see also, e.g., N. River Ins. Co. v. Middlesex Assurance Co.,* No. 89-136, 1989 WL 200993, at \*2-\*3 (D.N.J. Aug.7, 1989) (distinguishing between "abstention doctrines" and *Colorado River* standard). The Court, consistent with the general case law and for convenience, will call the approach announced in *Colorado River* a doctrine of abstention. See *, e.g., Ryan,* 115 F.3d at 195-201.

Based upon the Court's full consideration of the balance of the multiple factors established under this doctrine, the Court concludes that the balance of these factors fails to indicate that the necessary circumstances exist to justify the refusal to exercise our constitutionally authorized and congressionally mandated jurisdiction under this specific doctrine.

**1. Parallel Proceedings**

The application of the *Colorado River* doctrine requires a two-step analysis. First, in order to justify abstention, it must be ascertained that the cases pending before the federal court and the state court are truly "parallel." See *, e.g., Ryan,* 115 F.3d at 196; *Trent,* 33 F.3d at 223. Parallel cases are those that "involve the same parties and substantially identical claims, raising nearly identical allegations and issues." *IFC Interconsult v. Safeguard Int'l Partners,* 438 F.3d 298, 306 (3d Cir.2006); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 28, 103 S.Ct. 927, 74 L.Ed.2d 765. "The cases need not be identical, however, there must be a likelihood that the state litigation will dispose of all the claims

presented in the federal case." *Flint v. A.P. DeSanno & Sons, 234 F.Supp.2d 506, 510-11 (E.D.Pa.2002).*

**\*6** The parties to both actions here are identical. They dispute, however, whether the two actions involve substantially identical issues. State and federal claims are parallel when "the state litigation will dispose of all of the claims raised in the federal case." *Spring City Corp. v. Am. Bldg. Co.,* 193 F.3d 165, 171 (3d Cir.1999). Both the federal and state action concern constitutionality and enforceability of the same state statutes, regulations, and NJDEP permits for vehicles disposing of solid waste. A declaration by this Court could invalidate such regulations, and a final decision in either action will resolve whether the routes are enforceable. Accordingly, the Court finds the actions raise nearly identical claims and issues, and a decision by the state court will likely resolve all issues raised in the federal action.

**2. Exceptional Circumstances**

If the Court finds that the proceedings are parallel, the Court must "ascertain whether there exist exceptional circumstances, the clearest of justifications that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 25-26. The Court may consider the following nonexclusive factors: (1) whether the state court assumed in rem jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether a federal question is presented; and (6) whether the state court proceedings would adequately protect the federal plaintiff's rights. *Colo. River,* 424 U.S. at 818-19; *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 17-18 n. 20; *Trent,* 33 F.3d at 225 (citations omitted); *see also, e.g., Rodin Props.-Shore Mall, N.V. v. Cushman & Wakefield of Pa.,* 49 F.Supp.2d 709, 719 (D.N.J.1999). [7] No one factor is determinative, and "[o]nly the clearest of justifications [under this multi-factor approach] will warrant dismissal." *Colo. River,* 424 U.S. at 818-19 (citation omitted); *see, e.g., Rodin Props.,* 49 F.Supp.2d at 719; *Ryan,* 115 F.3d at 196; *Fioriglio v. City of Atl. City,* 963 F.Supp. 415, 425 (D.N.J.1997).

[7]    "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. The weight to be given to any one factor

may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 16.

**a. In rem jurisdiction over the property**

Neither action concerns jurisdiction over property. Thus, this factor is of no value to the abstention inquiry here. *See N. River Ins. Co.,* 1989 WL 200993, at \*3 n. 3 (finding "given the strong presumption in favor of exercising jurisdiction, any 'neutral' factor effectively weighs against granting a stay"); *see also Trent,* 33 F.3d at 225 ("In sum, because the parties agree that there is no res over which any court has exercised jurisdiction, only one factor truly weighs in favor of the district court exercising federal jurisdiction[,] .... [specifically] that the federal forum is not inconvenient."); *cf. McMurray v. De Vink,* 27 Fed.Appx. 88, 93 (3d. Cir.2002) (finding first factor irrelevant because of absence of property at issue); *Rodin Props.,* 49 F.Supp.2d at 719 (same).

**b. The inconvenience of the federal forum**

**\*7** The federal forum is not inconvenient as both parties are New Jersey residents and have voluntarily chosen to bring their respective suits in New Jersey. The state court is located in Somerville, Somerset County, New Jersey, approximately 30 miles from this Court, located in Trenton, Mercer County, New Jersey. ADS has its principal place of business in Bridgewater, New Jersey, located within Somerset County, approximately 35 miles from this courthouse and only 7 miles from the state court. This factor thus does not weigh heavily in favor of abstention under *Colorado River. See McMurray,* 27 Fed.Appx. at 93 ("Even if [the Court] were to assume that the participants must travel to New Jersey from the most distant part of Delaware, we would be hard put to define the resultant travel as imposing such a hardship that a federal court in New Jersey would be inconvenient for the purposes of Colorado River."); *see also BIL Mgmt. Corp. v. N.J. Econ. Dev. Auth.,* 07-1077, 2008 U.S.App. LEXIS 8762, at \*6, 2008 WL 1813159 (3d Cir.2008) ("[T]he equal convenience of the two fora is a neutral, or non-existent, factor.")

**c. The desirability of avoiding piecemeal litigation**

This factor, typically emphasized in decisions to abstain, requires more than just the fear of duplicative, piecemeal litigation. *See, e.g., Moses H. Cone Mem'l Hosp.,* 460 U.S. at 20 (considering piecemeal litigation factor to be "paramount" consideration in *Colorado River* analysis). The Third Circuit, in such cases as *Ryan v. Johnson,* 115 F.3d 193 (3d Cir.1997), and *Spring City Corp. v. Am. Bldg. Co.,* 193 F.3d 165 (3d

Cir.1999), has held that this factor favors abstention only when there is "a strongly articulated congressional policy against piecemeal litigation in the specific context of the case under review." *Ryan,* 115 F.3d at 198 (citations omitted); *see also Spring City Corp.,* 193 F.3d at 172-73. This policy requirement is based, not only on prior case law, but also on the fear that abstention premised on "a mere possibility of piecemeal litigation" would threaten to "swallow[ ] up the century-old principle ... that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Ryan,* 115 F.3d at 198 (quoting *Colo. River,* 424 U.S. at 817); *see also Spring City Corp.,* 193 F.3d at 172; *see also Kuhn v. Oehme Carrier Corp.,* 255 F.Supp.2d 458, 465 (E.D.Pa.2003).

There is no Congressional policy requiring that a federal constitutional challenge of state statutes and regulations be adjudicated in state courts. The Court thus concludes that this often-vital factor favors not abstaining based on the *Colorado River* doctrine.

### d. The order in which jurisdiction was obtained by the concurrent forums

This factor does not turn upon "which complaint is filed first, but rather [on] how much progress has been made in the two actions." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 21. Although the state court action was brought first, both actions are at the same stage of litigation. Discovery has not started, and scheduling conferences have been put on hold pending the outcome of the Order to Show Cause. Accordingly, this factor does not weigh in favor of abstaining under *Colorado River.*

### e. Whether a federal question is presented

**\*8** Federal law will govern ADS's constitutional claims. The state court's ability to resolve such claims, however, is commonplace.

### f. Whether the state court proceedings would adequately protect the federal plaintiff's rights

There is no evidence that the state forum will be inadequate to protect the rights of the parties, but this does not weigh heavily in favor of abstention. *See Spring City Corp.,* 193 F.3d at 173 (citations and internal quotations omitted) ("Just as abstention cannot be justified merely because a case arises entirely under state law, the question whether parties' interests are protected is only relevant when they are not; that is, when

the state court is adequate, this factor carries little weight."); *Ryan,* 115 F.3d at 200; *Blum v. St. Paul Travelers Ins. Co.,* No. 07-1268, 2007 U .S. Dist. LEXIS 55213, at *10 (E.D.Pa. July 26, 2007) (finding that it is only in rare circumstances that state law considerations weigh in favor of surrender, such as when the case involves state law that is so complex and unsettled that resolution in state court is more appropriate).

Under *Colorado River,* once the Court has evaluated the relevant factors, it must make a "carefully considered judgment taking into account both the obligation to exercise judgment and the combination of factors counseling against that exercise," with no one factor "necessarily determinative." *Colo. River,* 424 U.S. at 818. In balancing these factors, the Court's decision is to be "heavily weighted" toward the exercise of jurisdiction. *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 16. Although the Court here will abstain based on the principles of *Younger,* the Court finds that abstention under the *Colorado River* doctrine is not warranted under these circumstances.

### CONCLUSION

For the reasons stated *supra,* the Court will (1) remand the claims initially asserted under No. 07-3239 to state court for lack of jurisdiction, and (2) abstain from exercising jurisdiction over the claims initially asserted under No. 07-3210. Accordingly, the Court will reopen No. 07-3239, and remand the action to state court for lack of jurisdiction. The Court will abstain from exercising jurisdiction over the claims initially asserted under No. 07-3210 under the principles of the *Younger* abstention doctrine. The Court will issue an appropriate order and judgment. [8]

[8]     The Court lacks the authority to dismiss the complaint in the ADS-Initiated Action pending the resolution of the County-Initiated Action in state court, and may only stay and administratively terminate the ADS-Initiated Action. *See Gwynedd Props.,* 970 F.2d at 1204; *Bonqiorno v. Lalomia,* 851 F.Supp. 606, 610-17 (D.N.J.) (same), *aff'd,* 39 F.3d 1168 (3d Cir.1994). An administrative termination of the ADS-Initiated Action is not the equivalent of a dismissal of the complaint with prejudice, and will be issued pursuant to the Court's inherent power to control the docket and in the interests of judicial economy. *See Delgrosso v. Spang & Co.,* 903 F.2d 234, 236 (3d Cir.1990) (stating administrative termination not final determination, as it "permits reinstatement and

contemplates the possibility of future proceedings", and "does not purport to end litigation on the merits").

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 78149

---

**End of Document**                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

**B**

Airgas, Inc. v. Cravath, Swaine & Moore LLP, Not Reported in F.Supp.2d (2010)
2010 WL 624955
Case 3:14-cv-00591-MEM Document 143-3 Filed 03/23/16 Page 12 of 78

2010 WL 624955
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. Pennsylvania.

AIRGAS, INC., Plaintiff,
v.
CRAVATH, SWAINE & MOORE LLP, Defendant.

Civil Action No. 10-612.
|
Feb. 22, 2010.

**Attorneys and Law Firms**

Stephen A. Cozen, Cozen & O'Connor, Philadelphia, PA, for Plaintiff.

John A. Guernsey, Nancy J. Gellman, Robert N. Feltoon, Conrad O'Brien Gellman & Rohn PC, Philadelphia, PA, for Defendant.

MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

**\*1** Cravath, Swaine and Moore LLP ("Cravath") requests this Court to abstain and/or stay consideration of Plaintiff's petition for a preliminary injunction while the issue of Cravath's disqualification to represent a party in litigation in Delaware is being considered by the Delaware Chancery Court (doc. no. 4).

**I. BACKGROUND**

This lawsuit is a tale of one law firm's representation of two different clients who are business competitors. When, how and under what terms and conditions the representation occurred are factual questions. The ultimate legal issue is whether the allegedly dual representation violated the rules of professional conduct and/or the fiduciary duty owed by the law firm to each of its clients.

Cravath is a New York-based law firm. Airgas, Inc. ("Airgas") is a Delaware corporation with its principal place

of business in Pennsylvania. Air Products and Chemicals, Inc. ("Air Products") is a Delaware corporation with its principal place of business in Pennsylvania, located forty miles from Airgas. Airgas and Air Products are competitors in the industrial, packaged gases business. Cravath has provided legal representation to Air Products for over forty years. Meanwhile, Airgas has been a client of Cravath for nine years.

The parties hotly dispute the nature of Cravath's representation of the parties, the scope of the representation and when Cravath's representation of Airgas came to an end. Also in dispute is the nature of the information Cravath learned while representing Airgas.

These issues came to the forefront in the past five months when Air Products, with the assistance of Cravath, sought to engage Airgas in discussions about a possible merger of the two companies. On February 4, 2010, when these initial overtures were rejected by Airgas, Air Products publicly announced an all cash offer to purchase all outstanding Airgas shares. That same day, Air Products filed suit in the Delaware Chancery Court against Airgas and its Board of Directors alleging that their failure to consider Air Products' offer is a breach of fiduciary duty ("the Delaware Action"). Cravath is representing Air Products in that action.

The very next day, on February 5, 2010, Airgas sued Cravath in the Philadelphia Court of Common Pleas for damages and also a special injunction (TRO) and preliminary injunction restraining Cravath from representing Air Products in the Delaware Action and from otherwise representing Air Products in the proposed acquisition of Airgas (the "Pennsylvania Action"). Airgas claims that Cravath violated Rule 1.7 of the Pennsylvania Rules of Professional Conduct [1] by simultaneously representing Airgas in financing related matters and advising Air Products on a potential takeover of Airgas. Airgas, in the Pennsylvania Action, is seeking to enjoin Cravath from representing Air Products in any matter related to the attempted acquisition of Airgas, including banning Cravath from representing Air Products in the Delaware Action.

[1]    Rule 1.7 states: Conflict of Interest: Current Clients
(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or

> more clients will be materially limited by the lawyer's
> responsibilities to another client, a former client or a
> third person or by a personal interest of the lawyer.
> (b) Notwithstanding the existence of a concurrent
> conflict of interest under paragraph (a), a lawyer may
> represent a client if: (1) the lawyer reasonably believes
> that the lawyer will be able to provide competent
> and diligent representation to each affected client; (2)
> the representation is not prohibited by law; (3) the
> representation does not involve the assertion of a claim
> by one client against another client represented by
> the lawyer in the same litigation or other proceeding
> before a tribunal; and (4) each affected client gives
> informed consent.
>
> Pa. R.P.C. 1.7.

**\*2** Over the past two weeks, there has been rapid action in this now two front legal battle. On February 9, 2010, the Honorable Albert Sheppard, of the Court of Common Pleas of Philadelphia County, after hearing argument from counsel, declined Airgas' request to grant a TRO and instead scheduled an evidentiary hearing on a request for a preliminary injunction for February 16, 2010. Despite having won the initial scrimmage before the Pennsylvania state court, on February 12, 2010, Cravath removed the Pennsylvania Action to this Court (the "Federal Action"). Immediately thereafter, Cravath moved for this Court to abstain and/or stay the Federal Action pending resolution of the issue of disqualification in the Delaware Action.

Meanwhile, Airgas has moved to disqualify Cravath from representing Air Products in the Delaware Action by filing a motion in the Federal Action (doc. no. 18) and also objecting to Cravath's representation of Air Products in the Delaware Action.

It is Cravath's motion to abstain and/or stay the Federal Action pending resolution of the issue of Cravath's disqualification in the Delaware Action that is before the Court at this time.

## II. Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). While the ordering of an indefinite stay can constitute an abuse of discretion, *Dover v. Diguglielmo,* 181 Fed. Appx. 234, 237 (3d Cir.2006) (citing *Landis,* 299 U.S. at 255), the Court is, nonetheless, empowered to stay proceedings pending the

outcome of related proceedings. *See Standard Sanitary Mfg. Co. v. United States,* 226 U.S. 20, 52, 33 S.Ct. 9, 57 L.Ed. 107 (1912) (trial court has discretion under the Sherman Act to determine whether to stay a civil action pending outcome of a criminal trial); *Cofab, Inc. v. Phila. Joint Bd. Amalgamated Clothing & Textile Workers Union, AFL CIO-CLC,* 141 F.3d 105, 110 (3d Cir.1998) (declining to issue writ of mandamus reversing an order staying a federal action pending completion of related proceedings before the National Labor Relations Board); *Commonwealth Ins. Co. v. Underwriters, Inc.,* 846 F.2d 196, 199 (3d Cir.1988) (district court has discretion to stay litigation among non-arbitrating parties pending the outcome of a related arbitration).

"[The] decision [to stay litigation] is one left to the district court ... as a matter of its discretion to control its docket." *Mendez v. Puerto Rican Int'l Cos.,* 553 F.3d 709, 712 (3d Cir.2009) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp .,* 460 U.S. 1, 20 n. 23, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Generally, in the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues. *Bechtel Corp. v. Local 215, Laborers' Int'l. Union of N. Am., AFL-CIO,* 544 F.2d 1207, 1216 (3d Cir.1976).

**\*3** In determining whether a stay should be granted, the Court "must weigh competing interests and maintain an even balance." *Landis,* 299 U.S. at 254-55. Among the factors the Court must consider are whether the proposed stay would prejudice the non-moving party, whether the proponent of the stay would suffer a hardship or inequity if forced to proceed and whether granting the stay would further the interest of judicial economy. *See id.*

## III. Analysis

This situation presents a compelling case for a temporary stay. *CTF Hotel Holdings, Inc. v. Marriott Int'l., Inc.,* 381 F.3d 131, 138 (3d Cir.2004) (the party proposing a stay "must state a clear countervailing interest to abridge a party's right to litigate .").

One, there will be no prejudice to Airgas, the nonmoving party. The delay will be brief. Chancellor Chandler, of the Delaware Chancery Court, has indicated that he is ready to hear the motion for disqualification and that a decision would be rendered promptly. The Delaware Chancery Court will provide a highly desirable alternate forum, served by a capable and experienced judiciary, in matters of complex

Case 3:14-cv-00591-MEM Document 143-3 Filed 03/23/16 Page 14 of 78

commercial litigation. Moreover, Delaware is in fact Airgas' state of incorporation and its general corporate law governs Airgas' business. Once the issue of disqualification is decided, the case would be returned to active status in this Court, where the remaining issues of damages would be addressed in the regular course of the Court's business.

Two, substantial hardship will befall an absentee, but important, party to this litigation. Air Products has not been sued in this action, therefore, Air Products is not present here. However, as a practical matter, disposition of Airgas' claim for injunctive relief against Cravath, if successful, will deprive Air Products of the benefit of Cravath's counsel. While no doubt, given time, Air Products could engage capable substitute counsel, that determination would have been addressed in this Court without Air Products' participation. As the New Jersey Appellate Division has stated:

> It follows that an action aimed at disqualifying an opposing party's counsel should be filed in the State where the underlying dispute is being litigated, so that the opposing party may readily participate to defend its right to 'freely choose' its counsel. It is manifestly inappropriate to attempt, as plaintiffs have done here, to achieve disqualification of opposing counsel by filing a lawsuit in another State.

*Camden Iron & Metal, Inc. v. Klehr, Harrison, Harvey, Branzberg & Ellers, LLP,* 384 N.J.Super. 172, 894 A.2d 94, 99 (N.J.Super.Ct.App.Div.2006) (internal citation omitted).

Three, public policy concerns implicating federalism and comity attach to the decision to allow a federal court to disqualify Cravath from appearing as counsel for a litigant in a state court proceeding. Historically, the credentialing and discipline of lawyers has been a state function. In this case, Delaware courts have adopted, with some modifications, the Model Rules of Professional Conduct to govern the conduct of counsel appearing before it. *Appeal of Infotechnology, Inc.,* 582 A.2d 215, 216-17 (Del.1990) (citing the Delaware Rules of Professional Conduct as the rules governing the disciplinary process in Delaware courts).

**\*4** It would constitute an unprecedented intrusion of federal power upon a local court for this Court to dictate to the Delaware Chancery Court that a law firm [Cravath] was

disqualified from representing a litigant [Air Products] in a proceeding before it. Airgas has not produced any authority, and the Court has not located any, where such an extreme result has obtained. *See e.g., Dyntel Corp. v. Ebner,* 120 F.3d 488, 489, 491 (4th Cir.1997); *Liberty Mutual Ins. Co. v. Pietragallo, Bosick & Gordon,* No. 94-6682, 1995 WL 517613, at *3 (E.D.Pa. Aug.25, 1995); *Camden Iron,* 894 A.2d at 99; *Airbus S.A.S. v. Wilmer Cutler Pickering Hale & Dorr, LLP,* No. 06-4261, 2007 WL 5084428, at *3 (D.C.Super.Jan.10, 2007) (all denying requests to bar law firm from representing client in litigation in another forum).

Moreover, the Delaware Chancery Court is bound to apply Delaware law to the issue of disqualification. While the events giving rise to the claim of disqualification mostly transpired in Pennsylvania, under the Pennsylvania Rules of Professional Conduct, issues of disqualification of counsel for a violation of the Pennsylvania Rules of Professional Conduct shall be adjudicated under the rules of conduct for the jurisdiction in which the disqualification is being sought, *see* Pa. R.P.C. 8.5(b)(1), in this case Delaware.

Four, the need to avoid piecemeal litigation and to promote the efficient administration of justice also weigh in favor of the stay. The disqualification of Cravath is only a preliminary bout in this litigation cartel. The main issue remains whether Airgas and its Board of Directors breached their fiduciary duty. To create an alternate forum for the subsidiary issue of considering the disqualification of Cravath would be tantamount to the proverbial tail wagging the dog.

Airgas counters that the Delaware Action only deals with disqualification of Cravath in litigation matters, and that, by contrast, the Federal Action implicates the prospect of Cravath's disqualification in all Air Products' matters, including transactional matters. Airgas' argument is now moot since Cravath has agreed, before the Court, that should the Delaware Chancery Court determine the firm is disqualified from representing Air Products in the Delaware Action, it will cease representation of Air Products in all related transactional matters as well.

Airgas also argues that the case is controlled by the Pennsylvania Supreme Court's decision in *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 602 A.2d 1277 (Pa.1992). In *Maritrans,* the Pennsylvania Supreme Court held that an attorney's subsequent representation of a client, whose interests were materially adverse to a former client in a matter substantially related to that in which he

or she represented the former client, was an impermissible conflict of interest, giving rise to breach of a fiduciary duty. 602 A.2d at 1282. There, the Pennsylvania Supreme Court upheld an injunction barring the law firm Pepper, Hamilton & Scheetz ("Pepper") from serving as labor counsel for competitors of its former client, Maritrans, who were located in New York. According to Airgas, *Maritrans* stands for the proposition that a Court in one jurisdiction may enjoin a lawfirm from representing a client in litigation pending in another jurisdiction.

**\*5** *Maritrans,* however, is distinguishable. In *Maritrans,* there was no pending litigation relating to Maritrans' competitors in New York at the time the litigation was proceeding in Pennsylvania. Therefore, under the procedural posture of the case, the only way the claim that Pepper could be prevented from representing Maritrans' competitors in New York, was through an order of the Pennsylvania Court.

Finally, although the Court will not formally abstain, i.e., decline to exercise jurisdiction in this case, the rationale underlaying the stay in this case is congruent with the principles of abstention. These principles are deeply rooted in a concern for federalism and comity. As to federalism, the Third Circuit has noted, quoting in part from a leading Supreme Court case:

> [F]ederal courts have recognized circumstances under which they will decline to adjudicate cases even though they have jurisdiction under the Constitution and statutes. These circumstances are loosely gathered under discrete concepts of abstention named after leading Supreme Court cases. The Court has said: 'The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of consideration designed to soften the tensions inherent in a system that contemplates parallel judicial processes.'

*Chiropractic Am. v. La Vecchia,* 180 F.3d 99, 103 (3d Cir.1999) (quoting *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 11 n. 9, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)).

As to comity, it has stated, "[a]t the risk of over-simplification, we can say that these reasons come within the rubric of comity, or the idea 'that certain matters are of state concern to the point where federal courts should hesitate to intrude; and they may also concern judicial economy, the notion that courts should avoid making duplicate efforts or unnecessarily deciding difficult questions.' " *Id.* (quoting

*Bath Mem'l Hosp. v. Maine Health Care Fin. Comm'n,* 853 F.2d 1007, 1012 (1st Cir.1988)).

The court is cognizant that it is charged with the "unflagging obligation" to exercise jurisdiction in a case properly before it. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). However, as the Supreme Court has repeated, under proper circumstances, staying an action " 'does not constitute abnegation of judicial duty. On the contrary, it is a wise and productive discharge of it. There is only postponement of decision for its best fruition.' " *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 721, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 29, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959)).

In this case, a brief departure from this "unflagging obligation" to exercise jurisdiction is entirely consistent with the underlying principles undergirding abstention. Under the brief stay mandated by the Court, a Delaware court, under Delaware law, will be able to decide the dispute between two Delaware corporations as to whether a law firm is disqualified from representing one of the two Delaware corporations in litigation pending before the Delaware Chancery Court.

### IV. Conclusion
**\*6** For all of these reasons, the Court will grant a temporary stay to allow the Delaware Court to determine whether Cravath is disqualified from representing Air Products in the Delaware Action. An appropriate order follows.

### *ORDER*

**AND NOW,** this **22nd** day of **February, 2010,** it is hereby **ORDERED** that Defendant's motion requesting the Court to abstain and/or stay consideration of Plaintiff's petition (doc. no. 4) is **GRANTED in part** and **DENIED in part.** The motion is granted to the extent that the case is stayed to allow the Delaware Court to determine whether Cravath is disqualified from representing Air Products in the Delaware Action. The motion to abstain is denied.

**IT IS FURTHER ORDERED** that a status and scheduling conference on this matter shall take place on **June 23, 2010, at 9:30 A.M.** in Courtroom 11A, United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania. [2]

2    If the issue of disqualification is resolved by the Delaware Chancery Court earlier than 120 days from the date of this Order, either party may contact this Court and request that the case be returned to the active docket.

**IT IS FURTHER ORDERED** that Plaintiff's motion to disqualify counsel (doc. no. 18) is hereby **DENIED** without prejudice, as moot.

**AND IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 624955

---

**End of Document**                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

**C**

Barron v. Caterpillar, Inc., Not Reported in F.Supp. (1996)

Case 3:14-cv-00591-MEM Document 143-3 Filed 03/23/16 Page 18 of 78

1996 WL 368335

1996 WL 368335
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Thomas BARRON and Marie Barron

v.

CATERPILLAR, INC.

Civil Action No. 95–5149.
|
June 26, 1996.

**Attorneys and Law Firms**

Bayard H. Graf and George D. Sheehan, Jr., Sweeney
Sheehan & Spencer, Philadelphia, PA, for plaintiffs.

Ronald L. Daugherty and Francis P. Devine, III, White and
Williams, Philadelphia, PA, for defendant.

MEMORANDUM

PADOVA, District Judge.

**\*1** Plaintiffs, Thomas Barron and Marie Barron ("the
Barrons") bring this products liability lawsuit against
Caterpillar, Inc. ("Cat") to recover for injuries Thomas Barron
allegedly sustained while working with a piece of equipment
manufactured by Cat. The Barrons currently submit for the
Court's consideration their "Motion to Stay and Enter This
Civil Action on the Suspense List." For the following reasons,
I will deny the Barrons' Motion.

I. FACTUAL ALLEGATIONS AND PROCEDURAL
HISTORY
The Barrons' Complaint asserts the following. In 1969, Cat
designed and manufactured the "Caterpillar 992" front end
loader ("992") and sold it to the Jeddo–Highland Coal
Company ("Jeddo"). Thomas Barron worked as a mechanic
for Jeddo. On April 12, 1993, Thomas Barron sustained
injuries while installing a lift cylinder in the 992, including
a crushed left hand and amputation of one or more fingers.

The Barrons filed their Complaint in this Court on August
11, 1995 ("Federal Complaint") against Cat. On the same
date, the Barrons filed a Praecipe for Writ of Summons in
the Court of Common Pleas of Philadelphia County against
*both* Cat and Cleveland Brothers, the organization that sold

and supplied the 992 to Jeddo. The Barrons did not file the
actual complaint in state court, however, until February 26,
1996 ("State Complaint").

In both cases, the Barrons allege that Cat sold the 992 without
"the necessary and adequate customized or special tools
and accessories, and [Cat] failed to provide the necessary,
adequate and comprehensive warnings and instructions for
the safe removal and installation of lift cylinders." Pl.'s
Federal Compl. at ¶ 6. Cat purportedly failed to supply the
992 with the appropriate beam and trolley assembly necessary
to change the cylinder safely. According to the Barrons, these
failures, in conjunction with Cat's negligent and defective
design, manufacture, and assembly of the 992, caused the
accident.

II. DISCUSSION

A. ABSTENTION
The Barrons request that this Court employ the "exceptional
circumstances" doctrine articulated in *Colorado River Water
Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct.
1236 (1976) and stay these proceedings in deference to the
state court case the Barrons filed in the Court of Common
Pleas. [1] In limited circumstances, *Colorado River* allows
courts to take such a course of action. *See Univ. of Maryland
v. Peat Marwick Main & Co.,* 923 F.2d 265, 276 (3d Cir.1991)
(interpreting *Colorado River* and its progeny as a clarification
by the Supreme Court "that abstention in deference to
simultaneous state court proceedings is permissible only
in exceptional and narrow situations"); *Harris v. Pernsley,*
755 F.2d 338, 346 (3d Cir.) (noting "the teaching of the
Colorado River case is that only 'exceptional' circumstances
will permit a federal court to refrain from exercising its
jurisdiction for reasons of wise judicial administration due to
the presence of a concurrent state court proceeding") (citation
omitted), *cert. denied,* 474 U.S. 965, 106 S.Ct. 331 (1985).

[1]    Technically, "*Colorado River* abstention is not one of
the three constitutionally- or comity-based traditional
grounds for abstention." *Trent v. Dial Medical of
Florida, Inc.,* 33 F.3d 217, 223 (3d Cir.1994). *See R.R.
Comm'n of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct.
643 (1941) ("*Pullman* abstention"); *Burford v. Sun Oil
Co.,* 319 U.S. 315, 63 S.Ct. 1098 (1943) ("*Burford*
abstention"); and *Younger v. Harris,* 401 U.S. 37, 91
S.Ct. 746 (1971) ("*Younger* abstention").

**\*2** Federal courts may exercise jurisdiction when a
concurrent proceeding is pending in state court. *See Colorado*

WESTLAW  © 2016 Thomson Reuters. No claim to original U.S. Government Works.

1996 WL 368335

*River,* 424 U.S. at 817, 96 S.Ct. at 1246 (noting "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction"). In fact "[a]bstention from the exercise of jurisdiction is the exception, not the rule," *id.* at 813, 96 S.Ct. at 1244, "[and] *Colorado River* abstention is even rarer for two reasons." *Trent,* 33 F.3d at 223 (citation omitted). "First, the pendency of a case in a state court will not bar federal litigation of a case concerning the same issues if the federal court has jurisdiction over the case before it." *Id.* (citing *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246). Moreover, courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246. Considering that *Colorado River* applies in only exceptional and narrow circumstances, the balance weighs heavily in favor of the exercise of jurisdiction. *Univ. of Maryland,* 923 F.2d at 276.

#### 1. *Parallelism*

Because "[c]ases that are not truly duplicative do not invite *Colorado River* deference," the Court must first assess whether the Barrons' state case and their federal case "are parallel." *Trent,* 33 F.3d at 223. The Court may only abstain from exercising jurisdiction over a truly duplicative proceeding. *See Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246 (noting "[a]s between federal district courts ... though no precise rule has evolved, the general principle is to avoid duplicative litigation"); *Univ. of Maryland,* 923 F.2d at 276 (stating "the lack of identity of all issues necessarily precludes *Colorado River* abstention.... [D]eference under *Colorado River* [is] inappropriate when the two proceedings are not 'truly duplicative' ") (citing *Compl. of Bankers Trust Co. v. Chatterjee,* 636 F.2d 37, 40 (3d Cir.1980) (refusing to find duplicity when "the claims, parties, or requested relief differ")).

"Generally, cases are parallel so as to justify abstention under *Colorado River* when they involve the same parties and claims." *Trent,* 33 F.3d at 223. A finding that the federal case involves claims that are distinct from those at issue in the state court eliminates the parallelism required to invoke *Colorado River* abstention. *Id.* at 224.[2]

[2]     The Court notes the stringent definitions of "parallel" found in *Trent* and *Univ. of Maryland. See Trent,* 33 F.3d at 223 (defining parallel cases as those involving "the same parties and claims"); *Univ. of Maryland,* 923 F.2d at 276 (noting that "while certain issues to be litigated

[in the federal case] ... may be identical to issues that have been or will be raised [in the state case] ... the lack of identity of all issues necessarily precludes *Colorado River* abstention").

Both definitions relied on by the United States Court of Appeals for the Third Circuit, however, differ slightly from other Circuits' definitions of "parallel." *Compare Sheerbonnet, Ltd. v. American Express Bank, Ltd.,* 17 F.3d 46, 49–50 (2d Cir.) (refusing to find abstention applicable where "the state and federal proceedings here are not 'concurrent' in the manner required by the *Colorado River* doctrine.... [such abstention applies] where federal and state actions [are] 'essentially the same' ") (citations omitted), *cert. denied,* 115 S.Ct. 67 (1994), *with McLaughlin v. United Virginia Bank,* 955 F.2d 930, 935 (4th Cir.1992) (defining parallel lawsuits as those where "substantially the same parties litigate substantially the same issues in different forums"); *with Chrysler Credit Corp. v. Marino,* 63 F.3d 574, 578 (7th Cir.1995) (stating "a suit is only duplicative if it involves the same claims, parties, and available relief") (citation omitted); *Schneider v. Nat'l Carriers, Inc. v. Carr,* 903 F.2d 1154, 1156 (7th Cir.1990) (defining the issue as not "whether the state and the federal suit are identical, but only if they are parallel.... if substantially the same parties are litigating substantially the same issues simultaneously in two fora"); *with Intel Corp. v. Advanced Micro Devices, Inc.,* 12 F.3d 908, 913 n. 4 (9th Cir.1993) (discussing how "the requirement of 'parallel' state court proceedings implies that those proceedings are sufficiently similar to the federal proceedings to provide relief for all of the parties claims"), *cert. denied,* 114 S.Ct. 2675 (1994); *and Allen v. Bd. of Educ., Unified School Dist. 436,* 68 F.3d 401, 403 (10th Cir.1995) (considering state and federal suits "parallel if substantially the same parties litigate substantially the same issues in different forums") (citation omitted).

A close examination of *Trent,* however, suggests these decisions present semantical rather than substantive distinctions. The Third Circuit's definition distills the spirit of these cases. In *Trent,* neither the parties nor the claims were perfectly identical. The Third Circuit nonetheless considered them, in the spirit of the aforementioned cases, substantially the same. *See Trent,* 33 F.3d at 224 (describing the allegations in the state and federal case as "nearly identical," plaintiffs as "essentially identical," and defendants as "effectively the same").

Application of the aforementioned legal precepts to the facts presented in the instant case compels a conclusion that the invocation of *Colorado River* is appropriate. The parties,

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Barron v. Caterpillar, Inc., Not Reported in F.Supp. (1996)

1996 WL 368335

Case 3:14-cv-00591-MEM Document 143-3 Filed 03/23/16 Page 20 of 78

claims, and issues presented in the Barrons' state and federal cases are sufficiently identical to consider the actions parallel.

The allegations in both fora are nearly identical. The Federal Complaint presents three causes of action against Cat: product liability (Count I), negligence (Count II), and loss of consortium (Count III). The State Complaint presents four similar causes of action: product liability (Count I against both Defendants); negligence against Cat (Count II); negligence against Cleveland Brothers (Count III); and loss of consortium against both Defendants (Count IV). *C.f. Chrysler Credit,* 63 F.3d at 579 (finding creditor's action on a guarantee agreement involved neither the same claims nor same parties and did not parallel a replevin action filed by creditor against debtor where guarantor was not named in replevin complaint); *Harris,* 755 F.2d at 346 (concluding "[t]he cases are not truly parallel since the federal court plaintiffs seek money damages while the state court plaintiffs did not"); *Grove Holding v. First Wisconsin Nat'l Bank,* 803 F.Supp. 1486, 1506 (E.D.Wis.1992) (finding state and federal actions were not parallel where state court action alleged misrepresentations and federal action asserted claims under Racketeer Influenced and Corrupt Organizations Act).

**\*3** Both cases present the same legal issue: whether Cat negligently designed and manufactured the 992 and whether this negligence caused the injuries sustained by Thomas Barron. *Compare Trent,* 33 F.3d at 224 (finding federal class action filed against a dialysis center for allegedly negligent treatment presented identical issues to state class action against same dialysis center); *with Univ. of Maryland,* 923 F.2d at 276 (concluding that action brought by policy holders of insolvent insurer against auditor of insurer's books in federal court was not identical to action brought by insurance commissioner acting as insurer's receiver against auditor in state court).

As the Barrons correctly point out, parallelism exists in the instant case by virtue of the fact that the state court litigation will dispose of all their claims against both Cat and Cleveland Brothers and the related legal issues arising out of the alleged accident, while the instant case will only dispose of their claims against Cat and the legal issues specific to this proceeding. According to the Barrons, discovery revealed that Cleveland Brothers used the 992 involved in this case as a demonstration model for over a year before selling it to Jeddo, visited Jeddo's premises to make sales and perform repairs, and was familiar with Jeddo's business operations.

The state court will assess the additional issue of what role Cleveland Brothers played in altering the 992's condition and whether Cleveland Brother's actions contributed to the injuries sustained by Thomas Barron. The absence of this issue from the federal court's consideration does not prevent a finding of parallelism. *See Benninghoff v. Tolson,* No. CIV.A. 94–2903, 1994 WL 519745, at *2 (E.D.Pa. Sept. 22, 1994) (defining the relevant inquiry as "whether the state court is able to address all of the claims raised in the federal action, and not whether the complaints are identical. If the state court has jurisdiction to hear the claims presented in the federal case, this supports a finding of parallelism") (citations omitted); *United States Ex Rel. Hartigan,* 797 F.Supp. 624, 633 (N.D.Ill.1992) (noting that parallelism does not depend on "symmetry between the actions, but [on] a substantial likelihood that the state litigation will dispose of all claims presented in the federal case.... actions may be parallel even though the state court complaint is a good deal more comprehensive than the federal case") (citation omitted).

Finally, the parties in both fora are nearly identical. The inclusion of Cleveland Brothers in the state action does not bar a finding of parallelism. Both fora need not contain identical parties. *See Trent,* 33 F.3d at 224 (noting "defendants in each case are essentially identical.... [and] plaintiffs are effectively the same"); *Hartigan,* 797 F.Supp. at 634 (stating "[t]he fact that the parties in the two suits are not identical also does not preclude a *Colorado River* stay") (citation omitted). *Cf. Kenworthy v. Hargrove,* 826 F.Supp. 138, 141 & n. 4 (E.D.Pa.1993) (finding cases were not parallel where "[a]t least two of the parties [were] different in the federal and state court actions"). [3]

[3]     *Albright v. Sears, Roebuck and Co.,* No. CIV.A. 95–4240, 1995 WL 664742 (E.D.Pa. Nov. 7, 1995) presents identical facts to the instant case. There, the complaint alleged that Francis Faline ran over Thomas Albright while Faline was operating a Sears Craftsman riding mower. Albright filed a suit in federal court against Sears, Roebuck and Co. presenting *inter alia* theories of strict liability, negligence, and loss of consortium. Several hours later, Albright filed an identical state court action which contained a negligence count against Faline. Judge Gawthrop found the two cases sufficiently parallel to invoke *Colorado River* 's exceptional circumstances analysis. The presence of an additional party in state court, Faline, actually fortified Judge Gawthrop's decision: "If anything, because it includes a count against an additional defendant, the state complaint is more embracing. This lack of parallelism

does not weigh against application of Colorado River abstention, but instead works in favor of it." *Id.* at *1.

## 2. *Exercising The Court's Discretion*

**\*4** Having determined that the instant litigation presents an appropriate setting for *Colorado River* abstention because of the truly duplicative nature of the state and federal actions, the Court must next determine whether to exercise its discretion and stay the federal case. *See Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 665, 98 S.Ct. 2552, 2558 (1978) (stating "a district court's decision to defer proceedings because of concurrent state litigation is generally committed to the discretion of that court"). The following factors govern the exercise of this discretion:

(1) Which court first assumed jurisdiction over property involved, if any;

(2) Whether the federal forum is inconvenient;

(3) The desirability of avoiding piecemeal litigation;

(4) The order in which the respective courts obtained jurisdiction;

(5) Whether federal or state law applies; and

(6) Whether the state court proceeding would adequately protect the federal plaintiff's rights.

*Trent,* 33 F.3d at 225. "No one factor is necessarily determinative. A carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River,* 424 U.S. at 818–819, 96 S.Ct. at 1247.

The Barrons' principal justification for the stay is that resolution of the federal case will not dispose of the potential claims of contribution and indemnity between Cleveland Brothers and Cat. The Barrons also contend that confining this case to the state forum will avoid piecemeal litigation because the state court can adjudicate all the claims. Finally, according to the Barrons, Cleveland Brothers' role in this litigation creates an issue of first impression in Pennsylvania courts which the state court should resolve, i.e. "whether a manufacturer is liable in strict liability and negligence for its exclusive distributor's failure to supply adequate and necessary tools and accessories after the distributor used the product as a demonstration model for a year." Pl.'s Mem.Supp.Mot. at 3.

Cat objects by pointing to the significant progress of the federal case compared to the state action; the straight-forward nature of this litigation—a simple products liability and negligence case which presents neither complex nor novel issues of law; the prospect of a verdict in favor of Cat which would end this litigation entirely under the preclusion doctrines; and the concern against forum shopping.

Despite the Barrons' protestations to the contrary, the balance of the factors presented in the instant case weighs strongly in favor of retaining jurisdiction and refraining from abstention. Considering that "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937 (1983), the Court considers the order in which the concurrent tribunals obtained and exercised jurisdiction to be the dispositive factor in this litigation. The absence of any substantial progress in the state forum, compared to the status of the litigation in this Court, tips the scales against abstention.

**\*5** Specifically, the Barrons filed their Complaint on August 11, 1995 in this Court. According to the Scheduling Order entered pursuant to Fed.R.Civ.P. 16, discovery is closed and the federal case is scheduled for trial in the July 1, 1996 trial pool. [4] In striking comparison, the Barrons did not file their State Complaint until February 26, 1996, nearly six months after the Federal Complaint. At present, the state court faces Cleveland Brother's preliminary objections to the State Complaint (forum non convenience), the parties have signed stipulations to transfer the case to Luzerne County which await court approval, neither Defendant has filed an answer, and the parties have not begun discovery. *See* Pl.'s Mem.Supp.Mot. at 3; Def.'s Mem. Supp.Mot. at 1–2.

[4]     Specifically, the Scheduling Order imposes the following dates and deadlines: settlement conference May 15, 1996; all discovery completed by May 31, 1996; dispositive motions filed by June 7, 1996; Plaintiff's pretrial memorandum due June 17, 1996; Defendant's pretrial memorandum due June 24, 1996; and final pretrial conference June 27, 1996. *See* Doc. No. 7.

"Priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *NYLife Distribs., Inc. v. Adherence Group, Inc.*, 72 F.3d 371, 384 (3d Cir.1995) (citing *Moses H. Cone,* 460 U.S. at 21, 103

Barron v. Caterpillar, Inc., Not Reported in F.Supp. (1996)

Case 3:14-cv-00591-MEM Document 143-3 Filed 03/23/16 Page 22 of 78

1996 WL 368335

S.Ct. at 940). Given the substantive work and discovery that the parties have invested in the federal proceeding and the lack of any substantial progress in the state court, the Court finds that staying the federal case would amount to a complete abandonment of its "virtually unflagging obligation" to exercise jurisdiction over proceedings properly before it. The Court finds justification for its conclusion in the well established precept of abstention jurisprudence that the presumption weighs strongly in favor of exercising jurisdiction in the absence of exceptional circumstances. *See NYLife,* 72 F.3d at 384 (noting that "because the federal proceedings were clearly 'prior' to the state action, dismissing the federal claims seems all the more like an unjust abdication of the court's duty to exercise jurisdiction"); *Trent,* 33 F.3d at 225 (staying federal proceeding where more time had been invested into "substantive work and discovery" in the state case); *S.E. Pennsylvania Transp. Auth. v. American Costal Indus.,* 682 F.Supp. 285, 287 (E.D.Pa.1988) (refusing to stay federal proceedings filed six weeks after parallel state proceedings where "the only activities in the state action had been the filing of preliminary objections [while] document discovery had already begun in the federal action").

Addressing the remaining factors *seriatim,* the Court considers the first factor irrelevant because it has not assumed jurisdiction over any property in this case. Neither party has submitted evidence demonstrating that this Court is an inconvenient forum. Indeed, the Barrons voluntarily filed two lawsuits in both this Court and the Court of Common Pleas for Philadelphia County. Furthermore, the Court has not received any motions to transfer.[5]

[5]     While the parties have entered into a stipulation to transfer the state case to Luzerne County, this alone fails to demonstrate that this Court is an inconvenient forum. Even if the mutual desire to transfer the case to Luzerne County did indicate inconvenience, the Barrons cannot rely heavily on the inconvenience factor when they chose to file their lawsuit in this forum.

While the Third Circuit has remarked that "the principal reasons to abstain ... are to avoid piecemeal litigation and to adjudicate state-law issues in state court," *Trent,* 33 F.3d at 225, neither factor tips the scales in favor of abstention in the instant case. "Piecemeal" litigation occurs when "different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Hartigan,* 797 F.Supp. at 635. This factor seeks to avoid the simultaneous litigation of two identical suits. Admittedly, the state and federal actions in this case face overlapping issues. Nonetheless, the progress of the federal proceedings diminishes the probability of "duplicated efforts" because the cases will not be litigated simultaneously. This Court will most likely resolve the issues in this litigation months before any resolution is reached in state court. The parties will then be free to assert collateral estoppel and *res judicata* in the state action. Indeed, the Barrons accepted the risk of preclusion when they filed their lawsuit in two different fora. *See McLaughlin,* 955 F.2d at 936 (recognizing an overlap but relying on "principles of res judicata, collateral estoppel, and equitable stay ... to minimize the potential for undue waste"); *S.E. Pennsylvania Transp. Auth.,* 682 F.Supp. at 287 (noting "[t]he parties, by deciding to pursue parallel actions, must accept the risk of preclusion").

**\*6** The Barrons' case involves state substantive law. While "adjudicating state law issues in state court weighs in favor of abstention," *Albright,* 1995 WL 664742, at *2 (citing *Trent,* 33 F.3d at 225), it is equally true that "[a] federal court is as competent in applying the settled law of the state in which it sits as the courts of that state." *S.E. Pennsylvania Transp. Auth.,* 682 F.Supp. at 287. Federal courts sitting in diversity are capable of applying state law. The Barrons present a straight-forward negligence and products liability action, and Pennsylvania law will provide the rule of decision in this case. Furthermore, the effect of Cleveland Brothers' actions on Cat's liability will not prevent the Court from reaching a final determination regarding that liability. "Under our products liability law, all suppliers of a defective product in the chain of distribution, whether retailers, part-makers, assemblers, owners, sellers, lessors, or any other relevant category, are potentially liable to the ultimate user injured by the defect." *Burch v. Sears, Roebuck and Co.,* 467 A.2d 615, 621 (Pa.Super.Ct.1983) (citation omitted). If Cleveland Brothers' activity materially altered the product so as to affect Cat's responsibility to the Barrons, such issue can be fully heard in this lawsuit.

Finally, while it is true that the state court proceeding would adequately protect the Barrons' rights, there is no indication this Court would jeopardize their rights by retaining jurisdiction.

In the absence of exceptional circumstances, the Court finds that abstaining would amount to an abdication of its obligation to exercise jurisdiction. *See e.g., Sacody Tech., Inc. v. Avant, Inc.,* 862 F.Supp. 1152, 1159 (S.D.N.Y.1994) (describing the court's task in these cases as "not to find some substantial reason for the *exercise of*

1996 WL 368335

federal jurisdiction.... [but] to ascertain whether there exist 'exceptional' circumstances ... to justify the *surrender* of that jurisdiction") (citing *Moses H. Cone,* 460 U.S. at 25–26, 103 S.Ct. at 941–43).

An appropriate Order follows.

ORDER

AND NOW, this 24st day of June, 1996, upon consideration of Plaintiffs' "Motion to List Civil Action in Suspense File" (Doc. No. 18), Plaintiffs' Supplemental Brief in support thereof (Doc No. 20), and Defendant's Opposition thereto (Doc. No. 21), IT IS HEREBY ORDERED THAT:

   1. Plaintiffs' Motion is DENIED.

**All Citations**

Not Reported in F.Supp., 1996 WL 368335

---

**End of Document**          © 2016 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.    6

**D**

2003 WL 22518526
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

Robert CHARTENER

v.

PROVIDENT MUTUAL

LIFE INSURANCE CO., et al

No. Civ.A. 02–8045.
|
Filed Oct. 24, 2002.
|
Oct. 22, 2003.

**Attorneys and Law Firms**

represented by Arthur Stock, Berger & Montague, P.C., Philadelphia, PA, Lead Attorney, Attorney to be Noticed, Christopher J. Marino, Russel H. Beatie, Beatie & Osborn LLP, New York, NY, Lead Attorney, Attorney to be Noticed, Sherrie R. Savett, Berger & Montague, PC, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, for Robert Chartener, Individually and on Behalf of All Others Similarly Situated, Plaintiff.

represented by Barak Bassman, Laurence Z. Shiekman, Pepper Hamilton LLP, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, for Provident MutualLife Insurance Company, Defendant.

represented by Barak Bassman, Laurence Z. Shiekman, (See above for address), Lead Attorney, Attorney to be Noticed, for Robert Kloss, Defendant.

represented by Barak Bassman, Laurence Z. Shiekman, (See above for address), Lead Attorney, Attorney to be Noticed, for Bernard Anderson, Defendant.

represented by Barak Bassman, Laurence Z. Shiekman, (See above for address), Lead Attorney, Attorney to be Noticed, for Dorothy M. Brown, Defendant.

represented by Barak Bassman, Laurence Z. Shiekman, (See above for address), Lead Attorney, Attorney to be Noticed, for Robert Casale, Defendant.

represented by Barak Bassman, Laurence Z. Shiekman, (See above for address), Lead Attorney, Attorney to be Noticed, for Nicholas Debenedictis, Defendant.

represented by Barak Bassman, Laurence Z. Shiekman, (See above for address), Lead Attorney, Attorney to be Noticed, for Philip C. Herr, II, Defendant.

represented by Barak Bassman, Laurence Z. Shiekman, (See above for address), Lead Attorney, Attorney to be Noticed, for J. Richard Jones, Defendant.

represented by Barak Bassman, Laurence Z. Shiekman, (See above for address), Lead Attorney, Attorney to be Noticed, for John Nealsey, Defendant.

represented by Barak Bassman, Laurence Z. Shiekman, (See above for address), Lead Attorney, Attorney to be Noticed, for Charles Orr, Defendant.

represented by Barak Bassman, Laurence Z. Shiekman, (See above for address), Lead Attorney, Attorney to be Noticed, for Harold Sorgenti, Defendant.

represented by Barak Bassman, Laurence Z. Shiekman, (See above for address), Lead Attorney, Attorney to be Noticed, for Mehran Assadi, Defendant.

represented by Barak Bassman, Laurence Z. Shiekman, (See above for address), Lead Attorney, Attorney to be Noticed, for Mary Finelli, Defendant.

represented by Barak Bassman, Laurence Z. Shiekman, (See above for address), Lead Attorney, Attorney to be Noticed, for Alan Hinkle, Defendant.

represented by Barak Bassman, Laurence Z. Shiekman, (See above for address), Lead Attorney, Attorney to be Noticed, for Joan Tucker, Defendant.

represented by Barak Bassman, Laurence Z. Shiekman, (See above for address), Lead Attorney, Attorney to be Noticed, for Linda Springer, Defendant.

*MEMORANDUM*

BAYLSON, J.

**\*1** Robert Chartener, individually and on behalf of all others similarly situated, (herein "Plaintiff") has filed a Complaint against Provident Mutual Life Insurance Company

("Provident"), Robert Kloss, Bernard Anderson, Dorothy M. Brown, Robert Casale, Nicholas DeBenedictis, Philip C. Herr, II, J. Richard Jones, John Nealsey, Charles Orr, Harold Sorgenti, Mehran Assadi, Mary Finelli, Alan Hinkle, Joan Tucker, and Linda Springer ("Defendants"), alleging breach of fiduciary duty and violation of Section 921–A of the Pennsylvania Mutual–to–Stock Conversion Act, 40 Pa. Stat. § 921–A. Jurisdiction is premised upon diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(1). (Complaint ¶ 13.) Presently before this Court is Defendants' Motion to Stay or, in the alternative, to Dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendant's Motion to Stay will be granted.

I. Motion to Stay

A. Legal Standard
A court's power to stay a pending action "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, counsel, and for litigants." *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). A district court has broad discretionary power to stay proceedings. *Bechtel Corp. v. Local 215, Laborers' Int'l Union,* 544 F.2d 1207, 1214 (3d Cir.1976). "In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Id. See* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1838 (2d ed.1987).

B. Background
In January of 1998, Provident developed a plan to convert from a mutual insurance company to a stock insurance company. In January of 1999, Provident policyholders filed an action challenging the conversion plan in the Philadelphia Court of Common Pleas. *Butler v. Provident Mutual Life Ins. Co., et al.,* No. 780 (Pa.Comm.Pl.). Provident ultimately withdrew its plan for conversion and began a "Comprehensive Review Project" to investigate alternative courses of action, and the *Butler* suit was held in abeyance. (Complaint ¶ 43–46.) In July of 2000, a second class action by Provident policyholders was filed in regard to Provident's attempts at conversion. *Provident Mutual Life Insurance Co. v. Kloss,* No. 788 (Pa.Comm.Pl.). (As in the pleadings, the plaintiffs in *Butler* and *Kloss* will be collectively referred to as the "*Butler* plaintiffs").

In August of 2000, as part of the Comprehensive Review Project, Provident made modifications to its change-in-control arrangements for its officers, giving Provident's management additional payments if Provident underwent a successful alternative conversion transaction. As part of these modifications, Provident also accelerated certain payments to its directors. (Complaint ¶ 47–51.)

**\*2** In August of 2001, Provident signed a "sponsored demutualization" plan, whereby Provident would convert into a stock company and then merge with Nationwide Financial Services, Inc. ("NFS"). The merger between Provident and NFS was successfully completed and compensation was paid in accordance with the August, 2000 Agreement. (Complaint ¶ 5.) In July of 2002, the *Butler* plaintiffs amended their complaint to address the second conversion effort and ultimately settled with Provident in October of 2002, with the preliminary approval of the state court. The settlement was finally approved in April of 2003 and is currently pending on appeal in the Pennsylvania Superior Court. (Pl.'s Mem. in Opp'n to Def.'s Mot. To Stay or Dismiss at 9–10) ("Pl.'s Opp'n Memo"). The *Butler* settlement agreement provides for both a mandatory non-opt-out class of Provident policyholders as well as a broad release of other claims related to Provident's conversion and merger. Final Order and Judgment in *Butler v. Provident Mutual Life Ins. Co., et al.,* No. 780 and *Provident Mutual Life Insurance Co. v. Kloss,* No. 788, ¶ 3, 8–9 (Pa. Comm. Pl., April 1, 2003) ("Final Order"). The issues currently on appeal in the Pennsylvania Superior Court, raised by class member Paul Wexler, address the adequacy of consideration for the settlement agreement, the breadth of the release provision, and whether the class should have been afforded opt-out rights. *Butler, et al. v. Provident Mutual Life Ins. Co., et al.,* No. 1634 EDA 2003.

In September of 2002, Plaintiff Chartener made a demand on Provident's Board to revoke the change-in-control agreements and, subsequent to the Provident Board's denial of this demand, filed the complaint in the instant case. (Pl.'s Opp'n Memo at 10.) Upon learning of the settlement agreement between Provident and the Butler plaintiffs, Plaintiff's counsel appeared before the state court to clarify that his claims regarding compensation agreements were excluded from the settlement, which the state court declined to do in its final approval of the settlement. Findings of Fact and Conclusions of Law Regarding Class Settlement in *Butler v. Provident Mutual Life Ins. Co., et al.,* No. 780; *Provident Mutual Life Insurance Co. v. Kloss,* No. 788, ¶ 192 (Pa. Comm. Pl ., April 1, 2003) ("Class Settlement Findings");

Defs.' Br. At Exh. I, Transcript of Hearing on the Propriety of the Class Settlement in *Butler v. Provident Mutual Life Ins. Co., et al.* 67–98.

C. Discussion

Defendants now move to stay the action before this Court, arguing that the *Butler* settlement, if affirmed, will preclude the claims in this action and, thus, staying the action before this court will prevent the waste of judicial and litigant resources. Plaintiff does not dispute this Court's authority to stay the instant action pending resolution of the state court proceedings, but argues that the claims before the *Butler* court are distinct from and, therefore, will not affect the claims raised by Plaintiff in this Court. Plaintiff also argues that the settlement in *Butler* cannot be dispositive of the claims before this Court because the class representatives in *Butler* were inadequate.

**\*3** The case at bar and the Pennsylvania class action involve claims against the same Defendants. Plaintiff in this case is also a member of the Pennsylvania class. Both cases raise claims arising from Provident's efforts at conversion and both cases require the application of state law to resolve plaintiffs' claims. The overlap between this action and the one pending in state court makes a stay of the proceedings before this Court appropriate until the state court proceedings are resolved because this Court will necessarily have to engage in an analysis of whether Plaintiff's claims are subject to res judicata or collateral estoppel and such an analysis is premature until the state court proceedings become final. *See Schwarz v. Prudential–Bache Securities, Inc.,* 1991 WL 137157 (E.D.Pa. July 19, 1991) (staying federal action pending finality of settlement agreement in state class action alleging misconduct of same defendants in the sale of same securities, where federal plaintiff was member of state class).

Plaintiff's first challenge to the Motion to Stay is that his claims are distinct from those raised in the state proceeding. However, the state court's approval of the class settlement in *Butler* directly addressed issues pertinent to Plaintiff's claims. The state court's Final Order and Findings of Fact and Conclusions of Law directly address the modifications to the change-in-control agreements (Class Settlement Findings at ¶ 51–64), ruled on the adequacy of class representation (Final Order at ¶ 1, Class Settlement Findings at ¶ 127–132), and addressed the breadth of the settlement's release provision (Final Order at ¶ 8–9, Class Settlement Findings at ¶ 73–6). The state court specifically found that Plaintiff Chartener's claims in the case before this Court were not exempted from

the settlement's release provision (Class Settlement Findings at ¶ 187–93), an issue that, despite Plaintiff's contention to the contrary, is relevant in these proceedings. *See Grimes v. Vitalink Comm'ns Corp.,* 17 F.3d 1553 (3d Cir.1994) (finding that a broad release provision in state court settlement precluded litigation in federal court). It is clear that the final outcome of state court proceedings will have a substantial affect on, if not dispose of, some or all of Plaintiff's claims before this court. *See Bechtel Corp. v. Local 215, Laborers' Int'l Union,* 544 F.2d 1207, 1214 (3d Cir.1976). In addition, contrary to Plaintiff's assertion, there is no requirement that a court stay proceedings only where claims in the two proceedings are identical. *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). *See Ingersoll–Rand Financial Corp. v. Callison,* 84 F.2d 133 (3d Cir.1988) (finding that, where state proceeding is not strictly parallel, the appropriate action is to stay the federal proceeding until final judgment in state court, and then apply principles of res judicata to determine what issues remain.) In addition, judicial economy supports avoiding the prospect of redundancy of proceedings, which is possible if the instant case proceeds. *Ingersoll–Rand* at 137.

**\*4** Plaintiff also argues that the Motion to Stay should be denied because he is mounting a collateral attack on the adequacy of representation of the Butler plaintiffs, an issue not raised in the *Butler* appeal. Even assuming that Plaintiff is properly mounting a collateral attack on the adequacy of class representation, an issue neither mentioned in Plaintiff's complaint nor raised by Plaintiff in objection to the settlement in state court, the final determination of the Pennsylvania state courts of the validity of the class action settlement would affect this Court's analysis of that issue.

Finally, Plaintiff has not argued in any of his pleadings that a stay of the proceedings before this Court would unduly prejudice his claims. *See Landis v. North American Co.,* 299 U.S. 248, 258, 57 S.Ct. 163, 81 L.Ed. 153 (1936), *Schwarz v. Prudential–Bache Securities, Inc.,* 1991 WL 137157, \*4 (E.D.Pa. July 19, 1991), Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1838. In a telephone conference with counsel on October 20, 2003, Plaintiff's counsel agreed that Plaintiff would not be prejudiced by a stay until the Pennsylvania Superior Court rules. Accordingly, Defendants' Motion to Stay will be granted.

II. Motion to Dismiss

The potential effect of the outcome of state court proceedings leads this Court to stay the instant action pending finality of

state court proceedings in *Butler.* For the reasons discussed above, the determination of the state courts are necessary to further consider Plaintiff's claims and Defendants' Motion to Dismiss. Accordingly, the Motion to Stay will be granted and the case will be placed in suspense for six months, allowing the Motion to Dismiss to remain open until state court proceedings are final.

III. Conclusion

For the foregoing reasons, Defendant's Motion to Stay will be granted and the case will be placed in suspension for a period of 180 days.

An appropriate Order follows.

*ORDER*

AND NOW, this 21st day of October, 2003, it is hereby ORDERED that the Defendant's Motion to Stay is GRANTED and:

1. The case shall be transferred to the Civil Suspense File for a period of 180 days;

2. The Clerk of the Court shall mark this case closed for statistical purposes;

3. The Court shall retain jurisdiction over the case and the case shall be returned to the Court's active docket when the action is in a status so that it may proceed to final disposition;

4. After a period of 180 days, the parties shall advise the Court of the status of state court proceedings. If state court proceedings are final before the period of 180 days expires, the parties shall advise the Court accordingly.

5. This entry of this Order shall not prejudice the rights of the parties to this litigation.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 22518526

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

**E**

2014 WL 5463856
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

GGNSC EQUITY HOLDINGS,
LLC, et al., Petitioners
v.
Bridget T. BRESLIN, as Executrix for the Estate
of John P. Breslin, deceased, Respondent.

Civil No. 1:14–MC–00450.
|
Filed Oct. 27, 2014.

**Attorneys and Law Firms**

Eric E. Reed, Jacqueline M. Carolan, Fox Rothschild LLP, Philadelphia, PA, for Petitioners.

Andrei N. Govorov, Erica C. Wilson, Matthew T. Stone, Wilkes & McHugh PA, Philadelphia, PA, for Respondent.

*MEMORANDUM*

WILLIAM W. CALDWELL, District Judge.

*I. Introduction*

 **\*1**  We are considering three motions: a motion to dismiss; a motion to compel alternative dispute resolution; and a motion to strike. This matter relates to a petition to compel arbitration filed by Petitioners on August 6, 2014. (Doc. 1). On August 20, 2014, Respondent filed a motion to dismiss the petition. (Doc. 8). While the motion to dismiss was pending, Petitioners filed a motion seeking to compel alternative dispute resolution (ADR) and to stay state court proceedings. (Doc. 9). Petitioners filed another motion on September 24, 2004. (Doc. 18). That motion seeks to strike portions of Respondent's brief in opposition to motion to compel ADR. For the reasons discussed below, we will deny Respondent's motion to dismiss, deny Petitioners' motion to compel ADR, grant Petitioners' motion to stay state court proceedings, and deny Petitioners' motion to strike.

*II. Background*
On April 23, 2010, John P. Breslin was admitted as a resident of Golden Living Center–Camp Hill, a skilled nursing facility. (Doc. 8 at 2; Doc. 12 at 2). He died on September 27, 2013 while living at the Golden Living Center. (Doc. 8 at 2; Doc. 12 at 3). Respondent, executrix of Mr. Breslin's estate, filed a writ of summons against Petitioners in the Pennsylvania Court of Common Pleas of Cumberland County on January 6, 2014. (Doc. 8 at 2). Named as defendants in the state action are Petitioners, as well as Denise Curry. (*Id.*). Denise Curry is the regional vice president of Petitioners and a Pennsylvania resident. (Doc. 12 at 5). On July 23, 2014, Respondent served a complaint in the state action. (Doc. 1). The complaint claims that Petitioners and Curry were negligent in the care and treatment of John Breslin. (Doc. 1–2). On August 6, 2014, Petitioners filed preliminary objections to Respondent's complaint, seeking to enforce an alternative dispute resolution agreement (ADR agreement). (Doc. 12 at 5). On the same date, Petitioners filed the instant petition with this court, seeking to compel arbitration, stay the state proceedings, and seeking declaratory relief. (*Id.*).

Petitioners claim that John Breslin executed a Durable Power of Attorney on August 25, 2005, under which Martha M. Zeiders was appointed as his agent. (Doc. 12 at 2). Petitioners assert that pursuant to the Durable Power of Attorney, when Mr. Breslin was admitted to the Golden Living Center, Zeiders entered into a valid ADR agreement on his behalf. (Doc. 12 at 3). The ADR agreement provides that "any and all disputes arising out of or in any way relating to [the ADR agreement] or [John Breslin's] stay at the Facility ... shall be resolved exclusively by an ADR process that shall include mediation and, where mediation is not successful, binding arbitration." (Doc. 1–3 at 3). Additionally, in bold capital letters, it states that the parties **"UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT THEY ARE SELECTING A METHOD OF RESOLVING DISPUTES WITHOUT RESORTING TO LAWSUITS OR THE COURTS, AND THAT BY ENTERING INTO THIS AGREEMENT, THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BY A JUDGE OR JURY ...."** (Doc. 1–3 at 2).

 **\*2**  Asserting various grounds, Respondent filed a motion to dismiss the petition to compel arbitration. (Doc. 8). While that was pending, Petitioners filed a motion to compel ADR. (Doc. 9). Respondent opposed the motion by making numerous arguments to attack the validity of the agreement, including that Zeiders never signed the agreement. (Doc. 17–1). Finally, Petitioners filed a motion to strike portions of Respondent's brief in opposition. (Doc. 18).

## III. Discussion

### A. Motion to Dismiss

Respondent makes four arguments to support her motion to dismiss. First, she claims that the petition was not served in accordance with Federal Rule of Civil Procedure 4. Next, she argues that Petitioners failed to join an indispensable party and the compulsory joinder of that party causes us to lose subject matter jurisdiction. Third, Respondent asserts that we should dismiss the petition under the *Colorado River* abstention doctrine. Last, she claims that, pursuant to the Anti–Injunction Act, we lack authority to grant the petition.

### 1. Service of Process

Federal Rule of Civil Procedure 4(e) provides that an individual within a judicial district may be served by (1) following state law for serving a summons, (2) delivering a copy of the summons and complaint to the individual personally, (3) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, or (4) delivering a copy of each to an agent. FED. R. CIV. P. 4(e). Here, a private firm served the petition upon Respondent by leaving a copy with the manager of Respondent's apartment complex. (Doc. 8–2 at 2). Respondent argues that such service was insufficient under Federal Rule of Civil Procedure 4. We disagree.

First, Respondent argues that the service did not comply with Pennsylvania law. Pennsylvania Rule of Civil Procedure 400 dictates that original process must be served by a sheriff. [1] PA. R. CIV. P. 400. Here, the petition was served by a firm hired to serve process, not by a sheriff. Accordingly, we agree the service did not satisfy Pennsylvania law. [2] Next, Respondent argues that process was not served on Respondent personally and was not served upon her agent. These contentions are not refuted by Petitioners. Last, Respondent argues that the petition was not left at her dwelling with someone of suitable age and discretion *who resides there* because the apartment complex manager does not reside in her apartment or in the same apartment complex. (Doc. 8 at 4). We find that the apartment manager satisfies the residency requirement of Rule 4(e).

[1]   There are exceptions to this rule. A competent adult may also serve process if the action was initiated in Pennsylvania's First Judicial District (Philadelphia County) or the action is a domestic relations matter. PA.

R. CIV. P. 4001.1; 1930.4. Further, a competent adult may serve process if the action includes a request for special injunctive relief in a state court, the perpetuation of testimony or appointment of receiver, partition, or declaratory judgment when declaratory relief is the only relief sought. PA. R. CIV. P. 400(b). Petitioners do not argue that any of these exceptions apply.

[2]   Petitioners seem to argue that service did comply with Pennsylvania law because Rule 402 allows process to be served on the manager of a defendant's apartment house. Pa. R. Civ. P. 402. Here, however, with respect to Pennsylvania law, we are not concerned with to whom process was served. We are concerned by with whom process was served.

Federal courts have liberally construed the "who resides there" language of Rule 4(e) to include personal residences and business residences. *Hartford Fire Ins. Co. v. Perinovic,* 152 F.R.D. 128, 131 (N.D.Ill.1993); *Pickford v. Kravetz,* 17 Fed. Rules Serv. 4d 121 (S.D.N.Y.1952). Therefore, the residency requirement is met if a person receiving the process is employed at the defendant's place of residence and has authority, whether expressed or by customary practice, to receive correspondence on behalf of the tenants. *See, e.g., Nowell v. Nowell,* 384 F.2d 951 (5th Cir.1967) (holding service on apartment manager was sufficient); *Smith v. Kincaid,* 249 F.2d 243 (6th Cir.1957) (holding service on landlady was sufficient); *131 Main St. v. Manko,* 897 F.Supp. 1507, 1525 (S.D.N.Y.1995) (holding doorman satisfied the requirement); *Three Crown Ltd. P'ship v. Caxton Corp.,* 817 F.Supp. 1033, 1051 (S.D.N.Y.1993) (holding doorman satisfied the requirement); *Perinovic,* 152 F.R.D. at 131 (holding doorman satisfied requirement); *Pickford,* 17 Fed. Rules Serv. 4d 121 (holding hotel manager satisfied the requirement). [3]

[3]   *Cf. Kolker v. Hurwitz,* 269 F.R.D. 119, 123–24 (D.Puerto Rico 2010) (holding security guard lacked authority to receive defendant's correspondence); *Hardy v. Kaszycki & Sons Contractors,* Inc., 842 F.Supp. 713 (S.D.N.Y.1993) (holding non-employee of facility was not a resident of Defendant's dwelling); *Zuckerman v. McCulley,* 7 F.R.D. 739, 741 (E.D.Mo.1947) (indicating janitor lacked authority to accept correspondence).

**\*3** Here, the process was received by an employee of Respondent's dwelling place—the apartment complex manager. (Doc. 8–2 at 2). Further, the manager informed the process server that she had the authority to accept correspondence on behalf of Respondent. (Doc. 12–5 at 2). Thus, we find that process was left at Respondent's place of

dwelling with someone of suitable age and discretion who resided there. Accordingly, we find that service of process was sufficient under Rule 4(e).

*2. Lack of Subject Matter Jurisdiction*
In their petition, Petitioners assert that we have jurisdiction based on diversity of citizenship. Diversity jurisdiction "requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co. v. Wood,* 592 F.3d 412, 419 (3d Cir.2010). "[D]iversity of citizenship is determined by reference to the parties named in the proceeding before the district court, as well as by any indispensable parties who must be joined pursuant to Rule 19 of the Federal Rules of Civil Procedure." *Doctor's Assocs., Inc. v. Distajo,* 66 F.3d 438, 445 (2d Cir.1995). Respondent argues that Denise Curry, the regional vice president of Petitioners and a named defendant in the state action, is a necessary and indispensable party in this proceeding. Therefore, Respondent argues that since Curry and Respondent are both citizens of Pennsylvania, there is not complete diversity of citizenship, and we lack subject matter jurisdiction. We disagree.

Federal Rule of Civil Procedure 19 dictates when joinder of a party is compulsory. Pursuant to Rule 19, a "court must first determine 'whether a person is necessary to the action and should be joined if possible.' " *PaineWebber, Inc. v. Cohen,* 276 F.3d 197, 200 (6th Cir.2001). If the person is necessary, but joinder of that person would defeat diversity of citizenship, the court must determine if the absent party is indispensable, or if the action, "in good equity and good conscience," should proceed among the existing parties. FED. R. CIV. P. 19(b); *Gen. Refractories Co. v. First State Ins.* Co., 500 F.3d 306, 312, 319 (3d Cir.2007). If the party is indispensable, the court must dismiss the action for lack of subject matter jurisdiction. *Gen. Refractories Co.,* 500 F.3d at 319.

An absent party is necessary if, *inter alia,* the party claims an interest relating to the action, and disposing of the action may leave an existing party subject to substantial risk of incurring inconsistent obligations. FED. R. CIV. P. 19(a). Here, Curry has an interest because the ADR agreement covers all claims against Petitioners and Curry. (Doc. 1–3 at 2) (covering "employees, agents, officers, directors, affiliates and any parent or subsidiary"). Further, there is a risk that the existing parties could incur inconsistent obligations. If we were to reach a different conclusion than the state court concerning

the enforceability of the ADR agreement, Respondent would have inconsistent remedies. *See GGNSC Louisville Hillcreek, LLC v. Warner,* No. 3:13–CV752, 2013 WL 6796421 at * 3 (W.D.Ky. Dec. 19, 2013) (holding, in near identical circumstances, administrator of nursing facility a necessary party). Therefore, we find Curry is a necessary party.

**\*4** There are four factors to balance when determining whether a necessary party is indispensable: (1) extent to which judgment rendered in the person's absence might prejudice that person or existing parties; (2) extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, by shaping of relief, or by other measures; (3) whether judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non joinder. FED. R. CIV. P. 19(b). Respondent argues that she would be prejudiced if Curry were not joined because of the risk of inconsistent procedures. She further argues that this prejudice cannot be mitigated by any provisions in the judgment, and Petitioners would have an adequate remedy in state court if the action were dismissed. We disagree.

The potential prejudice to Respondent resulting from inconsistent procedural remedies is minimal. *PaineWebber, Inc.,* 276 F.3d at 201; *Golden Gate Nat. Senior Care, LLC v. Addison,* No. 14–MC–0421, 2014 WL 4792386 * 7 (M.D.Pa. Sept.24, 2014) (Rambo, J.) (finding in an identical petition that risk of prejudice was low). Additionally, the possibility that Respondent may have to resolve its disputes in two separate forums "occurs because the [FAA] *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Thus, the FAA's strong policy in favor of arbitration overcomes any prejudice Respondent may experience from piecemeal litigation that results from Curry's absence. *Distajo,* 66 F.3d at 446. Accordingly, the degree of prejudice experienced by Respondent does not weigh in favor of finding Curry indispensable, and we need not consider how protective provisions might reduce an already minimal risk of prejudice. *PaineWebber, Inc.,* 276 F.3d at 205. With respect to the third factor, Respondent admits that she "can receive adequate judgment against Petitioners separately, whether in arbitration or otherwise." (Doc. 8 at 15). Finally, the fourth factor weighs in favor of finding Curry indispensable. Petitioners could seek to compel arbitration in state court, which they have already done. On balance, however, this alone is insufficient for us to conclude that

Curry is indispensable. *Addison,* 2014 WL 4792386 at *8 (reaching same conclusion). Accordingly, we find that complete diversity of citizenship exists.

### 3. Colorado River Abstention

"The *Colorado River* doctrine allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.,* 571 F.3d 299, 307 (3d Cir.2009). It is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). A two part analysis is necessary to determine if the use of *Colorado River* abstention is appropriate. *Nationwide,* 571 F.3d at 307–08. First, there must be parallel state and federal proceedings. *Id.* If parallel proceedings exist, various factors are weighed . [4] *Id.* Respondent argues that we should dismiss the petition pursuant to the *Colorado River* abstention doctrine because a parallel state court action is pending in Cumberland County.

[4] In pertinent part, those factors include: (1) the desirability of avoiding piecemeal litigation; (2) the order in which jurisdiction was obtained; (3) whether federal or state law controls; and (4) whether state court will adequately protect the interests of the parties. *Nationwide,* 571 F.3d at 308.

**\*5** Parallelism exists if the proceedings "involve the same parties, same legal and factual issues, and seek the same remedies." *Allied Nut & Bolt, Inc. v. NSS Indust.,* Inc., 920 F.Supp. 626, 630–31 (E.D.Pa.1996). *See also Yang v. Tsui,* 416 F.3d 199, 204 n. 5 (3d Cir.2005). Here, the remedies sought in each forum are different. In the federal "action, petitioners seek to compel arbitration; in the state court action, the respondent/plaintiff seeks monetary damages for the alleged torts. This difference alone is enough to show that the proceedings are not parallel under Third Circuit case law." *GGNSC Lancaster v. Roberts,* No. 13–5291, 2014 WL 1281130 * 3 (E.D.Pa. March 31, 2014). *See also Harris v. Pernsley,* 755 F.2d 338, 345 (3d Cir.1985) (holding proceedings were not "truly parallel since federal court plaintiffs seek money damages while the state court plaintiffs do not"); *Addison,* 2014 WL 4792386 at *9 (holding, in near identical circumstances, that proceedings were not parallel). Therefore, we find that the proceedings are not parallel,

and we are precluded from applying the *Colorado River* abstention doctrine. [5]

[5] Even if the proceedings were parallel, the factors weigh against applying *Colorado River* abstention. *See Addison,* 2014 WL 4792386 at *11–12 (holding *Colorado River* should not be applied). First, the desireability of avoiding piecemeal litigation weighs against abstention. As discussed above, the FAA has a strong policy in favor of piecemeal litigation if necessary to preserve arbitration rights. Next, the priority of jurisdiction weighs against abstention. Priority is not measured solely by which complaint was filed first, it is also measured by how much progress has been achieved. *Moses H. Cone,* 460 U.S. at 21. Only two weeks after being served with the complaint, Petitioners filed preliminary objections with the state court and filed this petition. Thus, despite Respondent's claims to the contrary, and despite her claims of forum shopping, both proceedings are at the exact same progression and abstention is not warranted under this factor. *See Manor Care of Camp Hill, PA, LLC v. Fleagle ex rel.Fritz,* No. 1:13–CV–2449, 2013 WL 6185604 (M.D.Pa. Nov.25, 2013). Next, the applicability of state or federal law does not favor either position. Federal law applies to the interpretation of the agreement, and state law applies to the formation of the contractual agreement. *Id.* at *6. Finally, whether the state court will adequately protect Petitioner's interest weighs in favor of abstention. Balancing these factors, this case does not rise to the level of an exceptional circumstance in which we abdicate our obligation to decide a case before us. *See Warner,* 2013 WL 6796421 at *5–6.

### 4. Authority Under the Anti–Injunction Act

The Anti–Injunction Act provides that a "court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Respondent argues that pursuant to the language of the Anti–Injunction Act, we lack authority to grant the stay Petitioners request and must dismiss the petition. We disagree. Authority to grant injunctions during the pendency of petitions to compel arbitration exists under the second exception to the Anti–Injunction Act. *See Manor Care of Camp Hill, PA, LLC v. Fleagle ex rel. Fritz,* No. 1:13–CV–2449, 2013 WL 6185604 (M.D.Pa. Nov.25, 2013); *Roberts,* 2014 WL 1281130 at * 4 n. 19. An injunction is necessary to aid in exercising jurisdiction over the petition to compel arbitration. *Id.; See also Addison,* 2014 WL 4792386 at * 15 (finding injunction necessary to

effectuate the court's judgment). Thus, we find that we have authority under the AntiInjunction Act to stay the state court proceedings.

For the reasons discussed above, we will deny Respondent's motion to dismiss.

*B. Motion to Compel Alternative Dispute Resolution and to Stay State Court Proceedings*

On August 25, 2014, Petitioners' filed a motion to compel alternative dispute resolution. (Doc. 9). They argue that an enforceable ADR agreement exists, and the dispute between Petitioners and Respondent is within the scope of that agreement. (Doc. 9; Doc. 10; Doc. 20). Therefore, Petitioners ask that we stay the state court proceeding initiated by Respondent and order Respondent to mediate, and then arbitrate if necessary, the claims commenced by Respondent in state court. (*Id.*). In turn, Respondent asserts, on various grounds, that the ADR agreement is not enforceable and asks us to deny Petitioners' motion. (Doc. 17; Doc. 17–1).

**\*6** As a threshold matter, we must determine what standard of review applies to Petitioners' motion to compel. When it is clear from the face of the complaint and its supporting documents [6] that a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b) (6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resolution, LLC,* 716 F.3d 764, 776 (3d Cir.2013). However, "a Rule 12(b)(6) standard is inappropriate when ... the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate." *Id.* at 775. Accordingly, "if the complaint and its supporting documents are unclear regarding an agreement to arbitrate ... then the parties should be entitled to discovery ...." *Id.* at 776. "After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under the summary judgment standard." *Id.*

[6]     Supporting documents includes documents permissibly viewed under the 12(b)(6) standard. This includes complaints, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir.2010).

Respondent contests the validity of the signature on the ADR agreement and asserts "upon information and belief" that Martha Zeiders did not sign the agreement. (Doc. 17 at 2; Doc. 17–1 at 11). Respondent therefore argues that discovery is necessary to determine (1) the circumstances surrounding the execution of the agreement, (2) whether Zeiders did in fact sign the agreement, and (3) when the agreement was signed. (Doc. 17–1 at 12–13). Thus, Respondent implicitly argues that the summary judgment standard applies. Conversely, Petitioners argue that the 12(b)(6) standard applies. They argue that 12(b)(6) is appropriate because the ADR agreement is undisputedly authentic, the comparison of signatures proves that Zeiders signed the agreement, Respondent has provided no evidence that the signature is not Zeiders, and there are no facts in the complaint that places the validity of the agreement in issue. We find that Respondent is entitled to limited discovery.

First, there is no mention of an ADR agreement within Respondent's state court complaint. *See* (Doc. 1–2). *Cf. Guidotti,* 716 F.3d at 776–77 (finding reference to agreement in complaint allowed for review under 12(b)(6); *Lehigh v. Chesapeake Appalachia, LLC,* No. 1:13–CV–2018, 2013 WL 6191739 at * 2 (M.D.Pa. Nov.26, 2013) (Caldwell, J.) (applying 12(b)(6) standard because complaint referred to lease agreement that contained arbitration clause)). Further, the ADR agreement is not appended to the complaint, allowing us to review it under the 12(b)(6) standard. Cf. *Somerset Consulting, LLC v. United Capital Lenders, LLC,* 832 F.Supp.2d 474, 482 (E.D.Pa.2011) (applying 12(b)(6) because ADR agreement was attached to complaint). Last, the agreement is not undisputedly authentic because Respondent contests the validity of ADR agreement and challenges whether the agreement was ever entered into by Zeiders. *Cf. Aluminium Bahrain B.S.C. v. Dahdaleh,* No. 8–299, 2014 WL 1681494 at * 2 (W.D.Pa. April 28, 2014) (applying 12(b)(6) standard because opposing party did not contest the validity of, or intent to be bound by, the agreement, causing the agreement to be undisputedly authentic). Thus, Petitioners' motion to compel does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate. *Accord Defillipis v. Dell Fin. Servs.,* No. 3:14–CV–00115, 2014 WL 4198015 at * 2–3 (M.D.Pa. Aug.22, 2014) (holding that despite the complaints reference to an arbitration agreement, the 12(b) (6) was not appropriate); *Alexander v. Raymours Furniture Co.,* No. 13–5387, 2014 WL 3952944 at * 3 (E.D.Pa. Aug.13, 2014) (applying summary judgment standard due to lack of clarity in complaint regarding ADR agreement);

*Porreca v. Rose Grp.,* No. 13–1674, 2013 WL 6498392 at * 7 (E.D.Pa. Dec.11, 2013) (noting court required limited discovery because complaint did not make clear dispute was subject to ADR agreement); *MacDonald v. Unisys Corp.,* 951 F.Supp.2d 729, 735–38 (E.D.Pa.2013) (holding summary judgment standard applies).

**\*7** Additionally, Petitioners' arguments that the 12(b)(6) standard is the correct standard are unavailing. First, Petitioners arguement that the ADR agreement is undisputedly authentic is unpersuasive. (Doc. 10 at 7). We construe Petitioners to argue that an undisputedly authentic document can be reviewed in conjunction with the complaint, and a review of the undisputedly authentic ADR agreement makes it clear that the dispute is subject to alternative dispute resolution. Thus, the 12(b)(6) standard applies. While it is true that we can review undisputedly authentic documents if the claims are based on these documents, *see Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir.2010), the ADR agreement Petitioners attach to their motion to compel is not undisputedly authentic. Indeed, Respondent disputes whether it was ever signed. Further, the ADR agreement is not the basis of Respondent's state court claims. Therefore, we cannot examine the ADR agreement in conjunction with the complaint to determine if it is clear the parties agreed to arbitrate the dispute. Similarly, Petitioners argument that a comparison of signatures establishes that Zeiders signed the agreement does not support the application of the 12(b)(6) standard. (Doc. 20 at 12). While Petitioners' contentions may ultimately be proven true, all of these documents are outside of the complaint and complaint-related documents, placing them beyond our view under the 12(b)(6) standard and beyond our view when determining if there is a clear indication the parties agreed to arbitrate. *Mayer,* 605 F.3d at 230.

Next, Petitioners' argument that the 12(b)(6) standard applies because Respondent has provided no evidence to support the assertion that Zeiders never signed the agreement is premature. (Doc. 20 at 12). Under the 12(b)(6) standard, we look only at the face of the pleadings. *Id.* Thus, at this stage, we cannot expect Respondent to produce record evidence.[7] Last, Petitioners' argue the 12(b) (6) standard applies because Respondent did not make any allegations in her complaint placing the agreement in issue. (Doc. 10 at 7). Under the Third Circuit's holding in *Guidotti,* the plaintiff only has the burden to plead additional facts to place the agreement in issue if the complaint is clear the parties agreed to arbitrate. *Guidotti,* 716 F.3d at 776. Here, there is nothing in the complaint or attached

documents that indicate the parties agreed to arbitrate, and Respondent thus need not plead additional facts.

7     We remind Respondent that her filings are subject to Rule 11 of the Federal Rules of Civil Procedure, violation of which may result in sanctions. Rule 11 states that by submitting a signed writing to the court, that party is certifying that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the factual contentions have evidentiary support...." FED. R. CIV. P. 11(b). Thus, when Respondent averred in her Response to Petitioners' Motion to Compel (Doc. 17) that Zeiders did not sign the ADR agreement, she must have had information or belief that evidentiary support existed for that contention. Following discovery, should Petitioners file a renewed motion to compel arbitration, we will be interested to see what that evidence might be.

Accordingly, we find that the 12(b)(6) standard is not appropriate, and we find that Respondent is entitled to limited discovery. In order to permit limited discovery, we will dismiss without prejudice Petitioners' motion to compel ADR. We will allow the parties to engage in discovery limited in duration to sixty days and limited in the scope to the following issues: (1) the circumstances surrounding the execution of the agreement; (2) whether Zeiders did in fact sign the agreement; and (3) when the agreement was signed. After the close of discovery, Petitioners may file a renewed motion to compel alternative dispute resolution, and we will review that motion under the summary judgment standard by looking at all record evidence produced during discovery. Because our dismissal of Petitioners' motions on standard of review grounds makes it unnecessary to address Respondent's remaining arguments, we decline to address them now. We will address those arguments if a renewed motion to compel alternative dispute resolution is filed.

**\*8** Although we will deny without prejudice Petitioners' other motions, we will grant Petitioners' motion to stay the state court proceedings initiated by Respondent. As discussed in the context of Respondent's motion to dismiss, we have authority to stay a state court proceeding if the injunction is necessary to aid in the exercise of our jurisdiction. *See Fleagle,* 2013 WL 6185604 at * 4; *Roberts,* 2014 WL 1281310 at * 4 n. 19. Here, we find that staying the state court proceeding is necessary to aid in exercising our jurisdiction over the petition to compel arbitration. Accordingly, we will order the state court proceedings stayed during the pendency of the petition to compel arbitration.

*C. Motion to Strike*

In Respondent's brief in opposition to Petitioners' motion to compel ADR, she cites to an affidavit of David J. Hoey to argue that the ADR agreement is unconscionable. (Doc. 17–1 at 17 n. 28; Doc. 17–6). Petitioners filed a motion to strike all references to the Hoey Affidavit. They argue that the affidavit is "immaterial, impertinent, and scandalous" because the affiant intended the affidavit to be used in an unrelated and unidentified case. (Doc. 18; Doc. 19). Further, they assert that the arguments within the Hoey Affidavit lack merit. (*Id.*). Therefore, Petitioners claim that any reference to the Hoey Affidavit in Respondent's brief in opposition should be stricken pursuant to Federal Rule of Civil Procedure 12(f). Since we decline to address Respondent's remaining arguments, including her unconscionability argument, Petitioners' subsequent motion to strike is moot. However, to avoid duplicative motions and duplicative arguments in future briefing, we will discuss the Petitioners' motion to strike here.

We raise *sua sponte* the issue of whether Rule 12(f) is the appropriate vehicle for striking material from briefs. Federal Rule of Procedure 12(f) provides that a "court may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Thus, Rule 12(f) only applies to documents defined as a "pleading" under the Federal Rules of Civil Procedure. [8] *See Am. Standard Life & Accident Ins. Co. v. U.R.L., Inc.,* 701 F.Supp. 527, 531 (M.D.Pa.1988) (Caldwell, J.) ("Rule 12(f) should be strictly construed."). It is not meant as an instrument to attack "motions, briefs or memoranda, objections, or affidavits." *United States v. Endo Pharm., Inc.,* No. 05–3450, 2014 WL 4209006 at * 2 (E.D.Pa. Aug.25, 2014); *Freedom from Religion Found., Inc. v. New Kensington–Arnold Sch. Dist.,* No. 12–1319, 2012 WL 6629643 at *4 (W.D.Pa. Dec.19, 2012); *Walthour v. Tennis,* No. 3:CV–06–0086, 2008 WL 318386 at * 8 (M.D.Pa. Feb.4, 2008) (Vanaskie, J.). Accordingly, we find that Petitioners cannot utilize Rule 12(f) to strike Respondent's reference to the Hoey Affidavit within her brief in opposition. Petitioners' motion to strike will therefore be denied.

[8]    The Federal Rules of Civil Procedure define pleading to include: a complaint; an answer to a complaint; an answer to a counterclaim designated as a counterclaim; an answer to a counterclaim; a third-party complaint; and an answer to a third-party complaint. FED. R. CIV. P. 7(a).

*IV. Conclusion*

**\*9**  For the reasons discussed above, we will deny Respondent's motion to dismiss. Further, we will deny without prejudice Petitioners' motion to compel alternative dispute resolution. We will order limited discovery and stay the state proceedings during the pendency of the petition to compel arbitration. Finally, we will deny Petitioners' motion to strike. An appropriate order will be issued.

**All Citations**

Slip Copy, 2014 WL 5463856

---

**End of Document**                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

**F**



**RE: Hood ex rel. State of Mississippi v. Bristol Myers Squibb Co., et al.**

**Civ. Action No.: 13-5910,MDL No. 2418**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2014 U.S. Dist. LEXIS 114000*

**July 22, 2014, Decided
July 22, 2014, Filed**

**PRIOR HISTORY:** *W. Va. ex rel. McGraw v. Bristol Myers Squibb Co., 2014 U.S. Dist. LEXIS 24026 (D.N.J., Feb. 26, 2014)*
*Hood ex rel. Miss. v. Bristol-Myers Squibb Co., 2013 U.S. Dist. LEXIS 90540 (N.D. Miss., June 27, 2013)*

**COUNSEL:** **[*1]** Monica N. Watson, Esq., Parker Ibrahim & Berg LLC, Philadelphia, Pennsylvania.

George W. Neville, Esq., Office of the Attorney General, Jackson, Mississippi.

Anand Agneshwar, Esq., Arnold & Porter LLP, New York, New York.

**JUDGES:** FREDA L. WOLFSON, United States District Judge.

**OPINION BY:** FREDA L. WOLFSON

**OPINION**

Counsel:

In this case, Plaintiff Jim Hood, Attorney General of the State of Mississippi ("Plaintiff" or the "State"), brings a *parens partiae* action against Defendant Bristol Myers Squibb Co. ("Defendant" or "BMS"), pursuant to the Mississippi Consumer Protection Act ("MCPA"), alleging that BMS unfairly, falsely and deceptively labeled and promoted the prescription drug Plavix to

consumers. Plaintiff moves for remand of this matter, a member case in the *In re Plavix* Multidistrict Litigation ("MDL") assigned to me. This is not Plaintiff's first remand attempt, however; indeed, Plaintiff moved for remand before the transferor court, a district court in the Northern District of Mississippi. *See Hood v. Bristol-Myers Squibb Co., No. 12-179, 2013 U.S. Dist. LEXIS 90540 (N.D. Miss. Jun. 27, 2013) ("Hood")*. That court denied remand on two separate grounds: 1) federal jurisdiction exists under the Class Action Fairness Act ("CAFA"); and 2) diversity jurisdiction exists because Mississippi is a nominal party. Thereafter, **[*2]** *Hood* was transferred to this Court by the MDL Panel.

On February 26, 2014, in another companion case, *West Virginia v. Bristol-Myers Squibb Co., No. 13-1603, 2014 U.S. Dist. LEXIS 24026 (D.N.J. Feb. 26, 2014) ("West Virginia")*, this Court held that in a *parens patriae* suit, West Virginia was the real party in interest when it brought consumer fraud claims against BMS, pursuant to West Virginia's Consumer Credit Protection Act. Moreover, this Court, relying on recent Supreme Court precedent in *Mississippi ex rel. Hood v. AU Optronics Corp., 134 S. Ct. 736, 187 L. Ed. 2d 654 (2014)*, concluded that *parens patriae* suits brought by state attorney generals are generally not removable as "class actions" under CAFA. Indeed, my decision in *West Virginia* involved identical legal issues concerning federal jurisdiction as those addressed by the *Hood* court, albeit, I reached the opposite conclusion in favor of

Case 3:14-cv-00591-MEM   Document 143-3   Filed 03/23/16   Page 39 of 78

Page 2
2014 U.S. Dist. LEXIS 114000, *2

remand.

Based upon this Court's *West Virginia* decision, Plaintiff moves for remand here and asks this Court to reconsider the decision made by the transferor court. In response, Defendant opposes Plaintiff's request, however, BMS acknowledges that "if this Court were writing on a blank slate, it would likely remand [*Hood*] as it did in [*West Virginia*]." Def. Letter dated April 10, 2014, p.1. Defendant insists that principles of comity prevent this Court from changing the outcome of [**3**] this motion; that is, I must defer to the transferor court's decision to deny remand, even if I disagree with its holding. While I note that normally, a transferee court should give deference to a transferor court's decision, I find, here, circumstances permit me under the exceptions to the law of the case doctrine to grant remand.

Indeed, nothing in the text of *28 U.S.C. 1407*, the statutory provision governing MDLs, addresses whether a transferee judge can vacate or modify an order of the transferor judge. *See Bellevue Drug Co. v. Caremarks PCS (In re Pharm. Benefit Managers Antitrust Litig.), 582 F.3d 432, 440 (3d Cir. 2009)*. According to the Third Circuit, " [a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." *Id. at 439* (quoting *Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988))*. This proposition is also known as the law of the case doctrine. In that connection, however, the law of the case doctrine "does not preclude a court from revisiting its own decisions or one of a coordinate court where (1) new evidence is available or (2) a supervening new law has been announced." *Id.* (Internal citations and quotations omitted). More [**4**] importantly, the Third Circuit has definitively stated that a transferee judge "has the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling [from a transferor judge], even if unambiguous, might lead to an unjust result." *Id.* (citations omitted).

At the outset, I note that since the *Hood* decision, the Supreme Court rendered its ruling in *AU Optronics*, wherein the Court found that CAFA jurisdiction is generally not appropriate in *parens partiae* suits. *AU Optronics Corp., 134 S. Ct. at 736*. There is no dispute

here that based on that decision this Court would not have CAFA jurisdiction over this case, and that this supervening law would justify changing *Hood* in this context.

Similarly, an exception to law of the case doctrine applies to the issue of diversity jurisdiction. Briefly, in order to determine that a state is the real party in interest in a *parens patriae* suit, the Court must examine whether the state is pursuing a quasi-sovereign interest, while suing on behalf of its citizens. *See Pennsylvania v. Porter, 659 F.2d 306, 328 (3d Cir. 1981)*; *Hawaii v. Standard Oil Co., 405 U.S. 251, 257-58, 92 S. Ct. 885, 31 L. Ed. 2d 184 (1972)*. A quasi-sovereign interest is generally either a direct injury to the state, or to the general public so that "no one individual has legal standing to sue." *Commonwealth of Pennsylvania v. National Association of Flood Insurers, 520 F.2d 11, 22 (3d Cir. 1975)*. In that regard, [**5**] it is "well accepted that a state is the real party in interest when it brings a claim for civil penalties because such awards add only to the state's coffers rather than any individual's bank account." *West Virginia ex rel. McGraw v. Comcast Corp., 705 F. Supp. 2d 441, 447 (E.D. Pa. 2010)*; *Connecticut v. Levi Strauss & Co., 471 F. Supp. 363, 372 (D. Conn. 1979)*. Moreover, this Court has stated that injunctive relief alone supports the position that the State is the only real party in interest. *West Virginia ex rel. McGraw v. Comcast Corp., 705 F. Supp. 2d 441, 447 (E.D. Pa. 2010)* ("Courts have universally accepted the notion that a state is the real party in interest when it brings a claim for injunctive relief because such a remedy protects both current and prospective consumers . . . ."). Indeed, the law in this context is not dissimilar in the Fifth Circuit. *See Hood, 2013 U.S. Dist. LEXIS 90540 at *13-14*; *see Louisiana ex rel. Caldwell v. Allstate Ins. Co., 536 F.3d 418, 430 (5th Cir. 2008)*; *Jim Hood ex rel. Miss. v. JP Morgan Chase & Co., 737 F.3d 78, 88 (5th Cir. 2013)*.

Similar to the plaintiff in *West Virginia*, Plaintiff, here, seeks damages for injunctive relief, civil penalties, and disgorgement in equity. Based on these remedies, the *Hood* court evaluated who would ultimately benefit from this case, i.e., the State or private consumers, to determine the real party in interest. Undertaking that review, the court first found that the MCPA does not allow the state to collect damages on behalf of consumers, *see Hood, 2013 U.S. Dist. LEXIS 90540 at *30*, and therefore, no civil penalties or disgorgement in

equity could be distributed amongst individuals. Second, [*6] the court held that the statute requires that "every private action must be maintained in the name of and for the sole use and benefit of the individual person," *Id. at *15*, which means that only the private citizens who were named plaintiffs could benefit from these remedies. Third, the court found that the remedy of injunctive relief sought was a "compelling argument that the state is the only real party in interest" as it is proper for a *parens patriae* plaintiff to request such relief. *Id. at *14*. It would appear from these findings that the transferor court should have found that the state was the only real party in interest. And, in fact, those are the same reasons why this Court found that the state was the real party in interest in *West Virginia*. However, the transferor court, nevertheless, held that because the language used in the original complaint "indicate[d] that the injury complained of was suffered by the user or purchaser consumer," the state was a nominal party in suit. *Hood, 2013 U.S. Dist. LEXIS 90540 at *17-18*. I disagree because the transferor court's focus limited on the language of the pleadings which is not dispositive of the jurisdictional questions raised here. Consequently, such a misplaced reliance on the pleadings necessarily [*7] requires that I exercise my discretion to correct the outcome in order to avoid an unjust result. *See In re Pharm. Benefit Managers Antitrust Litig., 582 F.3d at 440*.

In support of its decision, the transferor court cited to multiple sections of the Complaint, which essentially allege that injury complained of by the State was suffered by the individual consumers. *See, e.g.,* Pl.'s Compl. ¶ 5.32 ("Defendants . . . . continue to choose[] to put their corporate profits ahead of patients' safety . . . . "); *id.* ¶ 5.35 ("In short, Defendant's bilked purchasers including Mississippi patients, their insurers, public healthcare providers, public entities, and government payors, including Plaintiff, out of hundreds of millions of dollars . . . ."); *id.* ¶ 6.5 ("Defendants disseminated false and misleading information to the public, including Mississippi doctors and citizens, regarding the health risks associated with Plavix(r)."); *id.* ¶ 7.2 ("causing Defendants to receive a financial windfall from the State and from Mississippi consumers"). The transferor court then reasoned that because the State alleges that the State and individual consumers suffered injuries as a result of Defendant's business practices, the public -- individual consumers and purchases [*8] -- is the real party in interest. But, that is not the law; in order for the state to bring a *parens patriae* suit, the state must "allege injury

to a sufficiently substantial segment of its population." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, 458 U.S. 592, 607, 102 S. Ct. 3260, 73 L. Ed. 2d 995 (1982)*. In fact, those allegations in the Complaint pertaining to public injury are precisely the types of harm the State must aver in order to sustain a *parens patriae* action. As I have indicated, a state may sue on behalf of its citizens as *parens patriae* only when the interests of a group of citizens are at stake. *West Virginia*, 2014 U.S. Dist. LEXIS 24026 at *10*. Thus, the pleadings in the Complaint in this regard clearly accomplish that goal. It is erroneous, then, to find that the State is a nominal party when it seeks to vindicate a public wrong, which is the very essence of a *parens patriae* action.

Moreover, the State, here, has clearly articulated quasi-sovereign interests, as identified by the transferor court: the civil penalties which the state seeks only flows to the state for its benefit as authorized by the MCPA, *see Missouri, K. & T. Ry. Co. of Kansas v. Missouri R. & Warehouse Comm'rs, 183 U.S. 53, 59, 22 S. Ct. 18, 46 L. Ed. 78 (1901)* ("It may be fairly held that the State is such [a] real party [in interest] when the relief sought is that which enure to it alone, and in its favor the judgment or decree, if for the plaintiff, will effectively [*9] operate"); and the remedy of injunctive relief supports the conclusion that the State is the only real party in interest. *See Comcast, 705 F. Supp. 2d at 447* ("Courts have universally accepted the notion that a state is the real party in interest when it brings a claim for injunctive relief because such a remedy protects both cur-rent and prospective consumers . . . ."). My conclusion regarding Mississippi's quasi-sovereign interests in this context is further supported by a district court's decision in *In Re Standard & Poor's Rating Agency Litig., No. 13-2446, 23 F. Supp. 3d 378, 2014 U.S. Dist. LEXIS 76163 (D.N.Y. June 3, 2014)*. In that case, in finding that the state of Mississippi is the real party in interest when bringing a *parens patriae* action pursuant to the MCPA, that court disregarded the *Hood* court's reasoning to the contrary. *Id. at *73-79*. Simply, the purpose of Mississippi's Complaint here is to protect the State's citizens and uphold the integrity of its law. Accordingly, Mississippi -- the sole named plaintiff -- is the real party in interest in this case; Mississippi citizens, by contrast, are neither named parties nor real parties in interest. It follows that the parties are not completely diverse, and the case must be remanded. *Id. at *82*.

**ORDERED** that Plaintiff's motion for remand is

2014 U.S. Dist. LEXIS 114000, *9

GRANTED;

    **ORDERED** that this case **[*10]** is transferred to the Northern District of Mississippi, Aberdeen Vicinage, for the purposes of remanding this matter to the Mississippi Circuit Court of Chickasaw County.

**SO ORDERED.**

Sincerely yours,

/s/ Freda L. Wolfson

FREDA L. WOLFSON

United States District Judge

G

2001 WL 913835
Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.

Linda LANE, et al.
v.
RECORD KEEPERS, L.L.C., et al.

No. CIV. A. 00–3036.
|
Aug. 14, 2001.

**Opinion**

PORTEOUS, District J.

**\*1** Before the Court is a Motion to Dismiss Pursuant to Rule 12(b)(6), For More Definite Statement Pursuant to Rule 12(e), or alternatively, To Abstain or Stay Proceedings filed on behalf of the defendants, Record Keepers, L.L.C., International Financial Systems, Inc., Life Insurance Brokerage Resources Associates, L.L.C., W. Clayton Sims, Pamela Himber Rogers, and Chris Vacari (herein after collectively "defendants"). The parties waived oral argument and as such the motion was taken under submission for consideration on January 17, 2001. The Court, having reviewed the arguments of counsel, the Court record, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

ORDER AND REASONS

I. BACKGROUND:

The plaintiffs have filed this suit as a proposed class action alleging that the defendants violated 18 U.S.C. § 1341 by using the mail to conduct and promote a pyramid promotional scheme, including soliciting and receiving contributions of money to the pyramid promotional scheme and violated 18 U.S.C. § 1961(a) by establishing and participating in the pyramid promotional scheme through use of the mail. The plaintiffs are alleged victims of the pyramid promotional scheme who were induced to participate with the assurances that the scheme was not illegal, but instead a "private gifting concept", the rewards of which are excluded from gross income for federal tax purposes and that it was "a private sharing group...offered only through an exclusive invitation." Each participant paid $2,200.00 with $200.00 mailed to Record Keepers as an administrative fee and $2,000.00 to be

mailed to other participants in the scheme. Plaintiffs contend that their damages arose when the Attorney General for the State of Louisiana enjoined the scheme in a proceeding filed in the 22nd Judicial District Court for the Parish of St. Tammany, Louisiana.

II. ARGUMENTS OF THE RESPECTIVE PARTIES:

A. Arguments of the Defendants in Support of the Motion to Dismiss:

Defendants contend that plaintiffs are merely disgruntled, voluntary participants of the "gifting program" whose hopes of returns on their investment were thwarted by the Louisiana Attorney General obtaining a temporary restraining order enjoining the operation of the program. Plaintiffs' claims are not actionable under 18 U.S.C. § 1962(a). While the requisite RICO "buzz words" have been alleged, the facts are insufficient to place plaintiffs' claims within the ambit of 18 U.S.C. § 1962(a) which requires a showing that plaintiffs were injured as a result of the investment of racketeering proceeds in an enterprise. Additionally, plaintiffs have failed to distinguish among the defendants in making their claims. As such, defendants contend that the complaint should be dismissed with prejudice pursuant to Rule 12(b)(6). At a minimum, however, defendants argue that plaintiffs' claims are so vague and ambiguous that defendants cannot frame responsive pleadings. As such, the complaint should be stricken pursuant to Rule 12(e) and plaintiffs should be required to amend their complaint substantially.

**\*2** In the alternative, defendants submit that the matter should be stayed pending the conclusion of the first-filed, related state court proceeding brought on behalf of persons such as plaintiffs. The Attorney General has obtained a temporary restraining order and is seeking a permanent injunction to prohibit the operation of an alleged pyramid scheme and restitution for the plaintiffs and others allegedly injured. Because any ruling made by this Court regarding the legality or illegality of defendants' conduct and any award of damages may duplicate or be inconsistent with the relief sought by the Attorney General, this Court should exercise its discretion and either dismiss or stay proceedings until the conclusion of the Attorney General's suit.

B. Arguments of defendant, Chris Vacari, in Support of the Motion to Dismiss:

Chris Vacari adopts all arguments asserted on behalf of all defendants and submits these additional arguments. First,

WESTLAW  © 2016 Thomson Reuters. No claim to original U.S. Government Works.    1

Vacari, contends that the complaint lacks any substantive allegation as to him personally. The only activity he is alleged to have engaged in is that he induced two people, not parties to the lawsuit, to participate in the pyramid scheme with the assurance that the scheme was not illegal. Accordingly, plaintiffs lack standing to prosecute the claims of the alleged wrongdoing perpetrated against these unnamed individuals who are not parties to this suit. Second, Vacari argues that plaintiffs have no remedy at law under their allegations. Under Louisiana law, an obligation which has as its object an illicit or immoral purposes is absolutely null and its performance is unenforceable. Clearly, plaintiffs should have known that this pyramid scheme was otherwise illegal and could not be enforced against anyone. Furthermore, Vacari as the alleged agent for a disclosed principal cannot be individually civilly liable to plaintiffs with whom he allegedly dealt pursuant to Civil Code article 3016. Finally, plaintiff has no right of action or standing to enforce R.S. 51:361–3. Therefore, Vacari should be dismissed with prejudice.

C. Arguments of the Plaintiffs in Opposition to the Motion to Dismiss:

The plaintiffs have identified participation by each defendant in violation of § 1962(a), the pattern of racketeering activity under the RICO cause of action, the predicate acts, including mail fraud, the relationship of the RICO enterprise to the racketeering activity, and the use of investment funds engendered on behalf of the enterprise for its continuing operation. The plaintiffs have set forth, with as much particularity as they know, the factual circumstances surrounding initiation and operation of the illegal pyramid promotional scheme which is the object of this complaint. Clearly, the motion to dismiss should be denied.

III. LAW AND ANALYSIS:

A. Law on Motion to Dismiss pursuant to Rule 12(b)(6):

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") "is viewed with disfavor and is rarely granted." Lowery v. Texas A & M University System, 117 F.3d 242, 247 (5th Cir.1997); Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir.1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the original complaint must be taken as true. Campbell v. Wells Fargo Bank, 781 F.2d 440, 442 (5th Cir.1980). A district court may not dismiss a complaint under FRCP 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set

of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); Blackburn v. Marshall, 42 F.3d 925, 931 (5th Cir.1995). The Fifth Circuit defines this strict standard as, "[t]he question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." Lowrey, 117 F.3d at 247, citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1357, at 601 (1969).

B. Law on Motion for More Definite Statement pursuant to Rule 12(e):

*3 FRCP 12(e) provides that where a pleading is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the Court may order a more definite statement. Motions for More Definite Statement are generally disfavored, discovery is the correct vehicle to obtain information necessary for trial. Erickson v. Hunter, 932 F.Supp. 1380 (M.D.Fla.1996).

C. Law on Abstention:

A federal court may decline to exercise jurisdiction if there is a pending action in state court involving the same parties and there are exceptional circumstances involving wise judicial administration and conservation of judicial resources. Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). However, the United States Supreme Court stated that abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" and that federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given to them." Colorado River, 424 U.S. at 813, 817, 96 S.Ct. at 1244, 1246; Falcon Operators v. P.M.P. Wireline Services, Inc., 1997 WL 313417 (E.D.La.6/9/97). A party requesting a district court to abstain must demonstrate "exceptional circumstances and the clearest of justifications" to justify the surrender of a federal court's jurisdiction. Colorado River, 424 U.S. at 824, 96 S.Ct. at 1250.

The Fifth Circuit articulated the following factors a district court should consider when deciding when abstention is appropriate:

  1. Whether the cause of action arises under state or federal law;

2. Whether the case requires inquiry into unsettled issues of state law or into local facts;

3. The importance of the state interest involved;

4. The state's need for a coherent policy in the area; and

5. The presence of a special state forum for judicial review.

*Wilson v. Valley Electric Membership Corp.,* 8 F.3d 311, 314 (5th Cir.1993). A stay or dismissal may be appropriate when first-filed state court proceeding may be dispositive of federal court claims and where judicial efficiency would not be served by maintenance of two suits. *Robichaux Construction, Inc. v. Solid Waste Disposal, Inc.,* 707 F.Supp. 242 (E.D.La.1989).

D. Law on RICO claims:

The RICO Act creates a civil cause of action under section 1964(c) for those injured by reason of a violation of § 1962, where: (1) a *person* engages in (2) *a pattern of racketeering activity* (3) connected to the acquisition, establishment, conduct, or control of an *enterprise. St. Paul Mercury Insurance Co. v. Williamson,* 224 F.3d 425 (5th Cir.2000). "Enterprise" is defined very broadly under RICO. An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). This definition describes two categories of associations that come within the definition of an "enterprise." *Bonton v. Archer Chrysler Plymouth, Inc.,* 889 F.Supp. 995 (S.D.Tex.1995). First, organizations such as corporations, partnerships and other "legal entities" comprise an "enterprise" while the second category includes any union of individuals associated in fact although not a legal entity. *Id.* However, an "association in fact" enterprise must be an ongoing organization, formal or informal, and its members must function as a continuing unit shown by a hierarchical or consensual decision making structure. *St. Paul,* 224 F.3d at 440–1. An enterprise must be shown to have an existence "separate and apart from the pattern of activity in which it engages." *Bonton,* 889 F.Supp. at 1001.

**\*4** RICO defines "person" broadly to include "any individual or entity capable of holding a legal or beneficial interest in property ." 18 U.S.C. § 1961(3). The RICO person must be either one who poses or has posed a continuous threat of engaging in acts of racketeering. *Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 855 F.2d 241, 242 (5th Cir.1988).

"Racketeering activity" is defined in § 1961(1) which lists state and federal crimes. The individual acts of racketeering are usually described as the "predicate offenses." *Bonton,* 889 F.Supp. at 1001. A RICO plaintiff must also establish that there was a "pattern of racketeering activity." A pattern requires at least two acts of racketeering. 18 U.S.C. § 1961(5). Yet, two acts may not be sufficient to establish a pattern depending on the circumstances. *Id.* It also requires "continuity and relationship." Continuity exists where the predicate acts constitute or threaten continued criminal activity. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. A showing that the predicate acts have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events satisfy the relationship element. *Id.*

Courts have routinely required a distinction when a corporation has been alleged as both a RICO "person" and a RICO "enterprise," however a similar requirement has not been mandated when individuals have been named as RICO "persons" and as members of an association in fact enterprise. *St. Paul Mercury,* 224 F.3d at 447. In such a case, the individual defendant is distinct from the organizational entity. *Id.*

E. The Court's Analysis:

First, the Court determines that due to the pending state case, it is necessary to apply the Fifth Circuit test for abstention found in *Wilson v. Valley Electric,* 8 F.3d 311 (5th Cir.1993). First, plaintiffs' cause of action arises from federal RICO law, however, it can be directly linked to the ongoing related state court proceeding which is an alleged violation of La. R.S. 51:361–3. Second, inquiry into local facts will undoubtedly be needed for a proper determination by this Court. Third, Louisiana possesses a strong state interest due to the alleged involvement of local law enforcement and the Louisiana Attorney General's pursuit of a suit in state court. Fourth, an obvious need for a coherent state policy concerning unlawful pyramid schemes without interference from this Court exists. Finally, the state court proceeding provides a state forum for judicial review of the state claims under La. R.S. 51:361–3. Although plaintiffs' RICO claims may not be brought to the state court, a stay of these proceedings until the conclusion of the state case allows for a forum for plaintiffs' RICO claims, while exercising wise judicial administration and conservation of judicial resources. Also, the conclusion of the

state court proceeding will allow for the issues concerning plaintiffs' RICO claims to be materially narrowed.

 **\*5**  Second, the Court finds dismissal unwarranted pending the outcome of the first-filed, related state court proceeding. At this time, it does not appear "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Blackburn v. Marshall,* 42 F.3d 925, 931 (5th Cir.1995). Furthermore, the Court determines the need for a more definitive statement from plaintiffs to be unnecessary at this time. The completion of the state court proceeding along with discovery should provide the necessary information for defendants to frame a responsive pleading.

Finally, the Court concludes Chris Vacari's additional arguments claiming plaintiffs' complaint lacks any substantive allegation as to him personally shall be deferred pending the outcome of the state court proceeding. Issues concerning Vacari may be narrowed following the outcome of the ongoing state court proceeding allowing this Court to gather all necessary information while best serving judicial efficiency.

Accordingly,

IT IS ORDERED that the Motion To Abstain or Stay Proceedings filed on behalf of the defendants, Record Keepers, L.L.C., International Financial Systems, Inc., Life Insurance Brokerage Resources Associates, L.L.C., W. Clayton Sims, Pamela Himber Rogers, and Chris Vacari, be and the same is hereby GRANTED to the extent that the claims asserted against these defendants are STAYED until the conclusion of *State of Louisiana ex rel Ieyoub v.*

*Friends and Family Gifting Club, et al,* No.2000–13907, 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana.

IT IS FURTHER ORDERED that the Motion to Dismiss filed on behalf of the defendants, Record Keepers, L.L.C., International Financial Systems, Inc., Life Insurance Brokerage Resources Associates, L.L.C., W. Clayton Sims, Pamela Himber Rogers, and Chris Vacari, be and the same is hereby DEFERRED until the conclusion of *State of Louisiana ex rel Ieyoub v. Friends and Family Gifting Club, et al,* No.2000–13907, 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana.

IT IS FURTHER ORDERED that the Motion For More Definite Statement filed on behalf of the defendants, Record Keepers, L.L.C., International Financial Systems, Inc., Life Insurance Brokerage Resources Associates, L.L.C., W. Clayton Sims, Pamela Himber Rogers, and Chris Vacari, be and the same is hereby DEFERRED until the conclusion of *State of Louisiana ex rel Ieyoub v. Friends and Family Gifting Club, et al,* No.2000–13907, 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana.

IT IS FURTHER ORDERED that the additional reasons set forth in the Supplemental Memorandum in Support of the Dismissal on the behalf of the defendant, Chris Vacari, be and the same is hereby DEFERRED until the conclusion of *State of Louisiana ex rel Ieyoub v. Friends and Family Gifting Club, et al,* No.2000–13907, 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana.

**All Citations**

Not Reported in F.Supp.2d, 2001 WL 913835

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.



**H**

McGuire v. International Paper Co., Not Reported in F.Supp. (1994)

Case 3:14-cv-00591-MEM   Document 143-3   Filed 03/23/16   Page 48 of 78

1994 WL 261360

1994 WL 261360
Only the Westlaw citation is currently available.
United States District Court, S.D.
Mississippi, Southern Division.

Kenneth D. McGUIRE and wife,
Elsie Jeanette McGuire, Plaintiffs,
v.
INTERNATIONAL PAPER COMPANY,
A New York Corporation, Defendant.

Civ. A. No. 1:92–CV–593BRR.
|
Feb. 18, 1994.

**Attorneys and Law Firms**

John M. Deakle, Curtis Ray Hussey, John M. Deakle, P.A., Hattiesburg, MS, for Kenneth D. McGuire and Elsie Jeanette McGuire.

Joseph R. Colingo, James H. Heidelberg, Colingo, Williams, Heidelberg, Steinberger & McElhaney, Pascagoula, MS, John G. Corlew, William F. Goodman, III, Frank A. Wood, Jr., Watkins & Eager, Jackson, MS, Robert F. McDermott, Jr., Robert H. Klonoff, Jones, Day, Reavis & Pogue, Washington, DC, for International Paper Co.

*MEMORANDUM OPINION*

BRAMLETTE, District Judge.

**\*1** This cause is before the Court on the plaintiffs' Motion to Maintain Class Action, for Certification of Class, and for Notice to Class Members. Having considered the motion and response, as well as the memorandum briefs with arguments of counsel and legal authorities contained therein, and supporting documents, affidavits, and excerpts from depositions, the Court finds as follows:

International Paper Company ("IP") is a New York corporation engaged in the business of making paper. In 1928, IP commenced operation of a "bleach kraft" paper pulp mill at Moss Point, Mississippi, on the Escatawpa River upstream from its confluence with the Pascagoula River. Treated effluent from the mill's paper-making process is discharged into the Escatawpa River.

The plaintiffs, Kenneth D. and Elsie Jeanette McGuire ("the McGuires") are the owners of Mac's Fishing Camp, located on Bennett Bayou in Jackson County, Mississippi. Mac's Fishing Camp sells bait and tackle, rents and stores boats and other "marine appliances," serves as a launching point for boats, and provides other goods and services for persons using the Escatawpa and Pascagoula Rivers. The plaintiffs are also recreational users of the rivers and have consumed fish from the rivers. They own real property which abuts the Escatawpa and lies within its flood plain.

The plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1332(a)(1). Their complaint charges that IP should have known, no later than 1985,

> that a by-product of the bleach
> kraft pulp making process is 2.3.7.8–
> tetrachlorodibenzo-p-dioxin (TCDD)
> and its mill was discharging at
> levels which resulted in contamination
> of the river system and aquatic
> life downstream from the mill
> discharge site. Despite possessing
> such knowledge, International Paper
> Company continued its operations at
> Moss Point, Mississippi, and at no
> time issued any warnings to the public,
> including plaintiffs, that fish in the
> Escatawpa and East Pascagoula Rivers
> might or would be contaminated with
> TCDD, or that there was any hazard to
> persons or property.

(Complaint, ¶ 7). The complaint further alleges that

> [t]he International Paper Company
> mill at Moss Point, Mississippi,
> also discharges into the waters
> of the Escatawpa River dark and
> foul smelling effluent in sufficient
> quantities that the color of the rivers
> is often altered. The operation of
> the International Paper Company mill
> has been conducted in a manner that
> has resulted in the aquatic life of
> the Escatawpa and East Pascagoula
> Rivers being so contaminated with
> TCDD and a closely related chemical
> known as TCDF that the State of

McGuire v. International Paper Co., Not Reported in F.Supp. (1994)

Case 3:14-cv-00591-MEM   Document 143-3   Filed 03/23/16   Page 49 of 78

1994 WL 261360

Mississippi has banned commercial fishing and consumption of fish from the Escatawpa River below International Paper Company's mill to the Mississippi Sound.

(Complaint, ¶ 7).

According to the complaint, the defendant is dumping toxic chemicals into the Escatawpa, polluting "the entire stretch of river and all creeks, bayous, lakes, other rivers and other bodies of water into which the streams flow." (Complaint, ¶ 8). The plaintiffs attribute this pollution with causing the State of Mississippi to post warning signs banning commercial fishing on the Escatawpa and recommending that fish taken from those bodies of water not be consumed by the public. (Complaint, ¶ 9) The plaintiffs claim they have been damaged through injury to their business, loss of income, damage to real property, and resulting emotional anxiety and worry. (Complaint, ¶ 9).

 *2  In addition to their individual claims, the plaintiffs propose a class action on behalf of persons falling within one of the following subclasses:

(1) all present and former owners of real property which properties make connection with the flood plain of the Pascagoula/Escatawpa River and estuarine system and who owned such property prior to the posting of notices by the State of Mississippi warning of dioxin contamination of fish taken from the river and estuarine system;

(2) all present and former residents of real property which property makes connection with the flood plain of the affected river system and who resided upon said property prior to the posting of notices by the State of Mississippi warning of dioxin contamination of fish taken from the river and estuarine system;

(3) all present and former marina owners or operators whose marinas are or were affected by the defendant's contamination of the Pascagoula/Escatawpa River and estuarine system and who own [sic] or operated such marinas prior to the posting of notices by the State of Mississippi warning of dioxin contamination of fish taken from the river and estuarine system;

(4) all present or former business owners and operators such as commercial fishermen, bait and tackle shop owners, boat sales and boating equipment businesses whose business premises are located and affected by the contaminated river system;

(5) all persons who claim to have in the past regularly consumed fish taken from the Pascagoula/Escatawpa River and estuarine system and to have made recreational use of the system, and who have suits based upon such consumption or use pending in Mississippi state courts against the defendant herein as well as those persons who are similarly situated who have not filed suit as of the date of the filing of this class action complaint.

(Complaint, ¶ 13). In addition, the plaintiffs, in their Memorandum in Support of Motion for Class Certification, propose a sixth subclass:

> (6) Fish or hunting camp owners or lessees, which camps are located within Jackson County, Mississippi, and which lie within two miles of the Escatawpa and Pascagoula Rivers floodplain.

(Memorandum in Support of Motion for Class Certification, p. 5).

The plaintiffs allege seven separate causes of action against the defendant, as follows:

1. Negligence

2. Intentional Infliction of Emotional Distress

3. Strict Liability

4. Nuisance

5. Trespass

6. Violation of Environmental Statutes

7. Conspiracy

The plaintiffs demand compensatory damages from the defendant for:

(a) Toxic pollution of the lands, waters and property of each plaintiff;

(b) Destruction of the value of the plaintiffs' said lands, rendering their said lands unmerchantable and without substantial fair market value;

McGuire v. International Paper Co., Not Reported in F.Supp. (1994)

1994 WL 261360

Case 3:14-cv-00591-MEM   Document 143-3   Filed 03/23/16   Page 50 of 78

(c) Exposure of the lands, waters and property of plaintiffs to toxic chemical pollution, hazardous to health;

(d) Exposure of each plaintiff's body to toxic chemical pollution, hazardous to health;

**\*3** (e) Necessity of each plaintiff undergoing and incurring the expense of undergoing annual toxic chemical medical screening each year for the remainder of his life;

(f) Necessity of each plaintiff testing on a regular basis his property for toxic chemical contamination;

(g) Intense fear, and associated acute and chronic severe mental pain, anguish, distress and depression, which is real and reasonable of each plaintiff, that he will suffer cancer and/or other long-term personal injury from TCDD exposure or exposure to other chemical contaminants released by the defendant, the manifestations of which may be delayed for years or may commence at any time;

(h) Severe mental distress, pain and anguish from having to deal from a business and economic point of view with the fact that plaintiffs' lands, constituting for each plaintiff in this case a major portion of his total assets, are now unmerchantable and without substantial market value because of the aforesaid chemical contamination and exposure to said chemical contamination proximately caused by defendant;

(i) Annoyance, discomfort and inconvenience occasioned by the defendant's created nuisance; the loss of use and enjoyment of each plaintiff's separate property and the loss of use and enjoyment of the river system itself to each plaintiff.

(Complaint, ¶ 47). The plaintiffs also seek punitive damages, and equitable relief from the "usurpation of [their] riparian rights" in the form of a penal bond "to stimulate the defendant to develop a plan to abate and correct the nuisance within a time certain." (Complaint, ¶¶ 52, 54).

The immediate question before the Court is not the merits of the plaintiffs' suit, but the appropriateness of class action certification, which is a procedural question. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). The burden of proof is on the plaintiffs to show that the suit should proceed as a class action. *See State of Alabama v. Blue Bird Body Co.,* 573 F.2d 309 (5th Cir.1978); *Garcia v. Gloor,* 618 F.2d 264, 267 (5th

Cir.1980); *Miller v. Mackey International, Inc.,* 452 F.2d 424 (5th Cir.1971).

The plaintiffs must show that the necessary requirements for class certification have been met in this case. Those requirements include two that have been found by the courts to be implicit in Rule 23(a) of the Federal Rules of Civil Procedure. In the first place, a class capable of definition must exist. An identifiable class is essential so that the Court can determine whether a particular claimant is a class member. *DeBremaekar v. Short,* 433 F.2d 733, 734 (5th Cir.1970) (*per curiam* ) ("adequately defined and clearly ascertainable"). The inquiry is whether "it is administratively feasible for the court to determine whether a particular individual is a member." 7A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 2d § 1760 at 121 (1986). This requires that the class be defined "in objective terms that are capable of present ascertainment." *Manual for Complex Litigation* 2d § 30.14 at 213 (1985). In the second place, the representative parties must be members of the proposed class. *Wagner v. Central Louisiana Elec. Co., Inc.,* 99 F.R.D. 279, 281 (E.D.La.1983).

**\*4** Rule 23(a) itself imposes the following prerequisites to the certification and the maintenance of a class action:

(1) that the class is so numerous that joinder of all class members is impracticable,

(2) that there are questions of law or fact common to the class,

(3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) that the representative parties will fairly and adequately protect the interests of the class.

Each of these requirements must be satisfied as to each subclass. *See* Fed.R.Civ.P. 23(c)(4)(B); *Stewart v. Winter,* 669 F.2d 328, 337 (5th Cir.1982).

In addition, the plaintiffs must show that the action qualifies for class action treatment under at least one of the subsections of Fed.R.Civ.P. 23(b). *Eisen v. Carlisle & Jacquelin, supra,* 417 U.S. at 163; *Payne v. Travenol Laboratories, Inc.,* 673 F.2d 798, 810 n. 9 (5th Cir.1982). Under the particular class approach proposed by plaintiffs' counsel, the plaintiffs must demonstrate under Rule 23(b)(3)

McGuire v. International Paper Co., Not Reported in F.Supp. (1994)

1994 WL 261360

that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

### 1. *A Definable Class*

Not all subclasses proposed to the Court by the plaintiffs are clearly defined. Subjective elements are present in subclasses 3 (marina owners whose marinas are "affected" by the river's contamination), 4 (business owners whose businesses are "located by" and "affected by" the contaminated river), and 5 (persons who "claim" to have "regularly" consumed fish taken from the river and who "claim" to have made recreational use of the river). In their memorandum brief, the plaintiffs modify their definition of subclass 4 to include owners of businesses in Jackson County "directly related" to fishing, recreational or other uses of the river, who sell products and services "directly related" to the use of the river. The terms "related to," "affected by," and "located by" are not capable of the kind of precise definition needed to facilitate the identification of a class.

Similarly, the criteria for determining the members of the fish consumer subclass are vague and indefinite. The proposed definition depends on the state of mind of each putative claimant, making it difficult, if not impossible, to know if he or she is a member of the subclass. Here, we are we not dealing with workers in a laboratory or factory exposed to concentrated amounts of dioxin. In fact, the proposed definition lacks any limitation of time or place that can be objectively ascertained.

**\*5** The plaintiffs, in their rebuttal memorandum, propose that the Court establish criteria for determination of this

subclass, such as requiring all proposed class members to submit to blood tests and depositions. However, such an approach would necessitate the holding of an inestimable number of individual hearings, in order to determine a subclass which plaintiffs' counsel estimates to comprise 150,000 people, and would create insurmountable administrative problems. The judicial and litigation costs of making these threshold determinations would eliminate any possibility that a class action would yield any of its intended efficiencies.

### 2. *Membership in the Proposed Class; Numerosity; Typicality; Commonality*

The McGuires must show that they are members of each of the subclasses for which they seek certification, and that the members of the subclasses are so numerous that joinder of all members is impracticable.

They must show that there are questions of law or fact common to the class as a whole. The Court notes that the requirements of Rule 23(a)(2) are less stringent than those of Rule 23(b)(3). Rule 23(a)(2) requires only a showing of a common question. Rule 23(b)(3) requires that those common issues predominate over the individual ones. Rule 23(b)(3) will be discussed at greater length below.

The McGuires must also show that their claims are typical of the claims of each subclass. Typicality ensures that the named plaintiffs' claims are so similar to the absent class members' claims that the named plaintiffs' claims can serve as proxies for those of the absent claimants. 7A Wright, Miller & Kane § 1764 at 232–33. This requirement "cannot be satisfied solely by conclusory allegations." *Id.* at 235. The typicality requirement refers to the nature of the claim and not to the specific facts from which it arose. Factual differences are acceptable provided the claim arises from the same event or course of conduct and is based on the same legal theory.

The Court finds that a readily ascertainable class is crucial to the plaintiffs' claims of membership, numerosity, typicality and commonality. Because of this shortcoming, and because of the other findings set forth below, the Court deems it unnecessary to rule on these issues.

### 3. *Adequacy*

The basic thrust of Rule 23(a)(4) is whether or not the putative class of plaintiffs will fairly and adequately protect the interests of those whom they claim to represent. Courts are

McGuire v. International Paper Co., Not Reported in F.Supp. (1994)

1994 WL 261360

commonly faced with two factors to consider. First, whether the class is assured vigorous prosecution, 7A Wright, Miller & Kane § 1766 at 302–03; and second, whether there is an absence of conflict. Id. § 1768 at 326.

The Court must evaluate the adequacy of both the party representatives (the McGuires) and their legal representatives. The Court finds that it is not at all clear that the McGuires understand just how expensive and painstaking the determination of their proposed class action is likely to be. There is no telling analysis of plaintiffs' resources. There has been no forecast presented to the Court of the financial needs of the action and the funding sources to meet them. In addition, the McGuires seem to lack familiarity with their suit, and are not able to articulate the class they seek to represent. (Deposition of Kenneth McGuire, pp. 7, 17–19, 24, 63, 72, 97; Deposition of Elsie McGuire, pp. 8–9). Blind reliance, even on competent counsel, is insufficient. The due process interests of the absent class members require some restraint on the attorneys. Therefore, the Court finds that the record does not support a finding that these plaintiffs will adequately represent absent class members.

**\*6** The attorneys themselves must be qualified, experienced and able to conduct the litigation. *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir.1968). In support of this requirement, counsel have directed the Court's attention to class action suits in which they have been involved. Standing alone, citation of these cases does not establish an adequate record in the type of litigation here involved. Nor is there any indication of how many lawyers will actually devote time to this case or what their support staffs or resources are.

The Court does not question the competence of plaintiffs' counsel. However, having thoroughly reviewed the file, this Court is of the opinion that the record is inadequate to support a positive finding that the plaintiffs' attorneys will adequately represent absent class members. The Court emphasizes that it does not conclude the attorneys are inadequate counsel; rather, the record reflects too little for the Court to make a finding.

### 4. *Predominance and Superiority*

Rule 23(b)(3) requires the Court to find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In their memorandum brief, the plaintiffs provide meager analysis of

this complex question, except to offer argument on the broad question of whether "class action procedure is appropriate for mass tort litigation." (Memorandum in Support of Motion for Class Certification, pp. 10–16). Their argument is not directed to the specific facts and theories of this case.

If the "main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." 7A Wright, Miller & Kane § 1778 at 535. Where class members' injuries are separate and individual, common questions typically don't predominate. *See, e.g., In re N. Dist. of California, Dalkon Shield IUD Prod. Liab. Litig.,* 693 F.2d 847, 854 (9th Cir.1982), *cert. denied,* 459 U.S. 1171 (1983). In the case *sub judice,* individual issues of liability, causation and damages seem to predominate over any common issues of fact or law. *See id.* at 852; *see also McDonnell Douglas Corp. v. United States Dist. Court,* 523 F.2d 1083, 1085–87 (9th Cir.1975), *cert. denied,* 425 U.S. 911 (1976).

In the few mass tort cases where a Rule 23(b)(3) class has been approved, unique factors, which are absent here, have been controlling. For instance, in *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145 (2d Cir.1987), *cert. denied,* 484 U.S. 1004 (1988), the Second Circuit approved a Rule 23(b)(3) class, but only because of "the centrality of the military contractor defense." *Id.* at 166. Had that common defense been absent, the Second Circuit observed, "certification of a class action would have been error," because (1) proximate causation is a "highly individualistic" determination which "depends upon the characteristics of individual plaintiffs (*e.g.,* state of health, lifestyle) and the nature of their exposure;" (2) with the exception of the common military-contractor defense, "there may be few, if any, common questions of law;" and (3) "the dynamics of a class action" impair the ability of representative parties to protect the interests of the class because "potential plaintiffs in toxic tort cases do not share common interests because of differences in the strength of their claims." *Id.* at 165–66. Further, the Second Circuit opined that the Agent Orange litigation "justifies the prevalent skepticism over the usefulness of class actions in so-called mass tort cases and, in particular, claims for injuries resulting from toxic exposure." *Id.* at 164.

**\*7** *Watson v. Shell Oil Co.,* 979 F.2d 1014 (5th Cir.1992), *reh. en banc granted,* 990 F.2d 805 (5th Cir.1993), a case which the plaintiffs assert to be factually similar to the case *sub judice,* actually presents a quite different scenario, as it arose from an explosion at an oil refinery. In such "single

McGuire v. International Paper Co., Not Reported in F.Supp. (1994)

Case 3:14-cv-00591-MEM   Document 143-3   Filed 03/23/16   Page 53 of 78

1994 WL 261360

occurrence" cases, the facts and law are necessarily more common and typical for all injured parties. In contrast, the proposed claimants in this case are affected individually over a long period of time and in different ways.

Both the property damage claims and emotional distress claims depend on a wide variety of individual factors. Individual inquires will also be required relating to causation and damages, *e.g.,* whether a class member might have been exposed to dioxin in other circumstances, whether he or she suffers from a pre-existing disease, or whether other factors may have caused business losses or reduction in property values.

In *Mattoon v. City of Pittsfield,* 128 F.R.D. 17 (D.Mass.1989), the plaintiffs sought to represent a class of city residents who became ill with a virus brought on by contaminated drinking water. In denying certification, the court held:

> [P]roximate cause will necessarily be different for every person in the proposed class, based on each person's length of exposure to contaminated water, notice, pre-existing medical conditions and other factors. For these reasons, defendants' liability can not "be determined on a class-wide basis...." Common questions, in sum, do not predominate. Proximate causation with regard to each party remains a thorny, individual question. The liability of each defendant under the various legal theories asserted in the complaint will also require individual attention. Damages, of course, are individual issues as well.

*Id.* at 21 (quoting *Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1197 (6th Cir.1988)).

The present action does not turn on a single act committed by the defendant that affects all class members identically, such as an explosion, a single toxic spill, or an air crash. Rather, the claims concern an alleged course of conduct extending over a number of years, during which class members supposedly claim that they have been affected in different ways and at different times.

IP has also raised affirmative defenses that require individual examination. Depending on their knowledge and conduct, some class members' claims may be barred or diminished by contributory negligence. Claimants who claim to own businesses will be subject to individual defenses, such as failure to mitigate damages. Some claims may be barred by the applicable statute of limitations.

Overall, the issues that are individual in nature predominate over those that are common. Even a recovery by the class representatives will not necessarily entitle other class members to recover. This means that class treatment cannot achieve the economies of time, effort and expense which justify the other sacrifices of class actions.

**\*8** As stated earlier, the plaintiffs are required to prove that a class action suit is a superior medium for adjudication. The Court finds, however, that a class action is not the superior method for the fair and efficient adjudication of this controversy. This is not the only dioxin litigation against IP, nor is it the only such suit involving these plaintiffs and their attorneys. On November 14, 1990, the McGuires filed suit in the Circuit Court of Jackson County, Mississippi, against IP, Georgia–Pacific Corporation, and other defendants. Subsequent to the McGuire's suit, 79 similar suits were filed against IP on behalf of approximately 5,000 plaintiffs. Three of these cases have already been tried, and appeals taken in two of them to the Mississippi Supreme Court. There are compelling reasons for permitting the dioxin cases to remain in state court, where the predominantly state law claims can be resolved. The factors listed in Rule 23(b)(3) support this finding:

> (A) The interest of members of the class in individually controlling the prosecution or defense of separate actions.

The major factors supporting individual litigation include extremely large damage claims and a need to tailor trial conduct to individual issues. *See, e.g., Butt v. Allegheny Pepsi–Cola Bottling Co.,* 116 F.R.D. 486, 492 (E.D.Va.1987). Individual interests are at their peak in tort cases, *see, e.g., In re "Agent Orange", supra,* 818 F.2d at 165, and the strength of individual interests can be gauged in large part from the number of individual suits already filed. "[T]he court should inform itself of any litigation actually pending by or against the individuals. The interests of individuals in conducting separate lawsuits may be so strong as to call for denial of a class action." *Advisory Committee Notes to Rule 23,* 39 F.R.D. 69, 104 (1966). *Compare Riordan v. Smith Barney,* 113 F.R.D. 60, 66 (N.D.Ill.1986) (class action found to be "superior" method of adjudication in light of "the fact that no other actions against defendants arising out of the transaction at issue are currently pending").

Here, it is clear that "some of the interested parties have decided that individual actions are an acceptable way to proceed, and even may consider them preferable to a class action." 7A Wright, Miller & Kane § 1780 at 570. The defendant has presented affidavits to the effect that there are 79 dioxin cases pending against IP in the Mississippi courts on behalf of almost 5,000 plaintiffs, and additional cases involving thousands of plaintiffs against Georgia–Pacific (many of whom also have cases pending against IP).

> (b)  The extent and nature of any litigation concerning the controversy already commenced by or against members of the class.

The plaintiffs are essentially asking this Court to supplant state court litigation with a federal class action. The Court finds, however, that the existing state court litigation is extensive and superior to the proposed class action. *See, e.g.,* *Pennsylvania v. Budget Fuel Co.,* 122 F.R.D. 184, 185–86 (E.D.Pa.1988) (ongoing state court action superior to a federal class action).

> (C)  The desirability or undesirability of concentrating the litigation of the claims in the particular forum.

**\*9**  Most of the claims presented in the class action, *e.g.* emotional distress, trespass and nuisance, are state-law claims best resolved in the state courts. In fact, the viability of the claims as a matter of state law is currently pending in the two appeals before the Mississippi Supreme Court. (Defendant's Memorandum in Opposition to Class Certification, p. 32). A federal decision on these issues would be disruptive of the emerging state law. These questions are more appropriately addressed to the Mississippi trial courts, whose decisions, unlike this Court's, may be appealed directly to the Mississippi Supreme Court. Considerations of comity and federalism support denying certification in this case.

> (D)  The difficulties likely to be encountered in the management of a class action.

Finally, the Court reiterates the anticipated problems in managing a case of this magnitude. If a class were certified, an inordinate amount of time and expense would be spent addressing individual claims, involving evidentiary development at hearings or trials. Whatever efficiency might be gained by a class action would surely be outweighed by the unmanagability of the litigation.

Upon consideration, this Court concludes that the plaintiffs have failed to meet their burden of proof to show that their suit should proceed as a class action. The plaintiffs have not persuasively demonstrated that class certification as requested under Fed.R.Civ.P. 23(b)(3) is appropriate. The plaintiffs have also failed to adequately define a class, and have failed to show that they will fairly and adequately protect the interests of the class. With these deficiencies, the Court finds it unnecessary to rule on any other issues raised. The instant application for class certification shall accordingly be denied.

Counsel for the defendant shall submit an Order in conformity with this Memorandum Opinion within ten (10) days of the date of entry hereof.

### All Citations

Not Reported in F.Supp., 1994 WL 261360

---

**End of Document**                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

I

Case 3:14-cv-00591-MEM Document 143-3 Filed 03/23/16 Page 56 of 78

Peerless Heater Co. v. Chevron Chemical Co., Not Reported in F.Supp. (1998)
1998 WL 195706

1998 WL 195706
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

PEERLESS HEATER COMPANY, Plaintiff,
v.
CHEVRON CHEMICAL COMPANY and
HART & COOLEY, INC., Defendants.

No. CIV.A. 97–CV–3128.
|
March 27, 1998.

**Attorneys and Law Firms**

Carl W. Hittinger, Ballard, Spahr, Andrews and Ingersoll, Phila, for Peerless Heater Company, Plaintiffs.

Wilbur L. Kipnes, Schnader, Harrison, Segal & Lewis, Richard M. Bernstein, Hoyle, Morris & Kerr, Phila, for Chevron Chemical Company, Hart & Cooley, Inc., Defendants.

ORDER

GAWTHROP, J.

**\*1**  AND NOW, this 27th day of March, 1998, the defendants' Motion to Dismiss, or in the alternative, to Stay the Proceedings is DENIED; and

Defendant Hart & Cooley, Inc.'s Motion for Enlargement of Time is GRANTED. Defendant shall answer or move with respect to the Amended Complaint within ten (10) business days after the entry of this order.

MEMORANDUM

In this diversity action, plaintiff, a boiler manufacturer, has brought suit against two manufacturers of high-temperature plastic venting pipes, alleging that the pipes installed in its boilers are defective. In addition to this case, there are related state-court actions in Tennessee and Michigan. Before the court are defendants' Motions to Dismiss, or in the alternative, to Stay the Proceedings, pending the disposition of the state actions. Upon the following reasoning, I shall deny the motions.

I. Background

Defendants, Chevron Chemical Company ("Chevron") and Hart & Cooley, Inc. ("H & C"), are manufacturers of high-temperature plastic venting ("HTPV") pipes, designed to vent gaseous byproducts of combustion such as carbon monoxide from a boiler to the outside of a home. Plaintiff, Peerless Heating Company ("Peerless"), is a manufacturer of gas-fired furnace and boiler appliances, and it regularly installed defendants' pipes in its appliances. Peerless alleges that the pipes are defective, having cracked after repeated exposure and use. It filed suit against Chevron, seeking to recover on theories of breach of contract, breach of warranty of merchantability, breach of warranty of fitness, breach of express warranties, negligent misrepresentation, and fraud. Peerless later amended the complaint, adding defendant H & C and an indemnification count.

Earlier, in January 1997 in Tennessee state court, a nationwide class action against the HTPV pipe manufacturers, including the defendants, was brought on behalf of all homeowners whose furnaces use the pipes. *Engel v. Chevron Corporation, Inc., et al.,* Civil Action No. 37715 (Rutherford County, Tennessee, filed January 9, 1997). Chevron, seeking contribution, filed a third-party complaint against the class of appliance manufacturers, including Peerless.

Also, in Michigan state court, H & C filed suit against Peerless and 33 other appliance manufacturers, seeking a declaratory judgment regarding the duties owed by the appliance manufacturers and the anticipated claims for contribution. *Hart & Cooley, Inc. v. Amana Refrigeration, Inc., et al.,* No. 97–27729–NP (Ottawa County, Michigan, filed April 1, 1997). The complaint includes ten damages counts, asking for declaratory relief as to the parties' liability, indemnification for past and future damages arising from litigation over the failed pipe, and reimbursement for expenses already incurred in such litigation. Chevron is not a party to the Michigan action.

Defendants maintain that both the state actions and this federal one spring from the same factual scenario and involve the same controlling issues. Defendants thus—with Chevron relying on the Tennessee case and H & C on the Michigan case—ask this court, pursuant to the *Colorado River* doctrine, to decline to exercise jurisdiction.

Case 3:14-cv-00591-MEM Document 143-3 Filed 03/23/16 Page 57 of 78

Peerless Heater Co. v. Chevron Chemical Co., Not Reported in F.Supp. (1998)

1998 WL 195706

## II. Colorado River Abstention

*2 Abstention by a federal court due to a similar suit in state court is justified "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Colorado River Water Cons.Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The three traditional bases of abstention arise from concerns of constitutionality or comity. [1] In contrast, the principles underlying *Colorado River* abstention "rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." ' 424 U.S. at 817 (citations omitted).

[1]     The three traditional doctrines are *Pullman, Burford,* and *Younger* abstention. Under *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and its progeny, abstention is proper where a state court determination of a question of state law might moot or change a federal constitutional issues presented in a federal court case. Under *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and its progeny, abstention is proper where the federal case presents questions of state law in which the state has expressed an interest in establishing a coherent policy in a matter of substantial concern. Finally, under *Younger v. Harris,* 401 U.S. 37 (1971), and its progeny, abstention is proper where federal jurisdiction has been invoked in order to restrain certain state proceedings.

*Colorado River* abstention is even rarer than abstention on the three traditional grounds, for two reasons. First, the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them" means that pendency of a case in state court does not generally bar federal litigation on the same issues. *Id.* at 817. Second is "the absence of weightier considerations of constitutional adjudication and state-federal relations" which support the three traditional abstention doctrines. *Id.* at 818.

### A. Parallel Proceedings

*Colorado River* abstention is justified only if the state and federal cases involved are duplicative or 'parallel.' *Trent v. Dial Medical of Florida, Inc.,* 33 F.3d 217, 223 (3d Cir.1994). Cases are parallel when "they involve the same parties and claims," *Ryan v. Johnson,* 115 F.3d 193, 196 (3d Cir.1997), or when they are "substantially identical," "essentially identical," or raise "nearly identical allegations and issues." *Trent* at 223. *See also Complaint of Bankers Trust*

*Co. v. Chatterjee,* 636 F.2d 37, 40 (3d Cir.1980)(cases are not parallel when the claims, parties, or requested relief differ).

### 1. The Tennessee case

Chevron argues that the Tennessee action is sufficiently similar to warrant application of the *Colorado River* abstention doctrine. All the parties in this action are parties in the Tennessee suit, although there are also additional parties to that case. The claims in this case are substantially the same as those in Tennessee. [2]

[2]     Although Peerless asserts numerous claims against Chevron based on contract and warranty theories that do not exactly mirror Chevron's tort-based contribution claim in the Tennessee case, these claims all arise out of the same transaction between Peerless and Chevron over the purchase and use of the pipes. These claims must be brought as compulsory counterclaims under Tenn. Civ. P. 13.01. The two cases thus should be considered 'parallel.' *See Allied Nut and Bolt, Inc. V. NSS Industries, Inc.,* 920 F.Supp. 626, 630 (E.D.Pa.1996).

Peerless response that, because Chevron cannot sue for contribution under Tennessee law, the Tennessee litigation is not parallel. Chevron disagrees; both cite case law to support their position. I need not predict how the Tennessee court will rule. Rather, the issue is whether the state case, "as it currently *exists, is* a parallel, state-court proceeding". *Crawley v. Hamilton County Comm'rs,* 744 F.2d 28, 31 (6th Cir.1984) (emphasis in the original). As to defendant Chevron, I conclude that the Tennessee action sufficiently presents the same parties and claims to merit *Colorado River* analysis.

### 2. The Michigan case

H & C argues that the Michigan lawsuit is parallel to Peerless' current suit. Peerless's response first argues that because there are 32 other boiler manufacturers in the Michigan case who are not parties in this case the cases are not parallel. However, since additional parties do not destroy the parallel nature of the two proceedings this is not dispositive. *See Albright v. Sears, Roebuck and Co.,* 1995 WL 664742, at *1 (E.D.Pa.). Peerless next suggests that, because Chevron is not a party in Michigan, the case is not parallel. But this is not the issue. The question is not whether this case and the Michigan one are parallel with respect to Peerless, H & C, and Chevron, but rather whether they are parallel as to Peerless and H & C. Finally, Peerless asserts that the claims differ. In Michigan, H & C asks for a declaratory judgment on Peerless' obligation

Peerless Heater Co. v. Chevron Chemical Co., Not Reported in F.Supp. (1998)

Case 3:14-cv-00591-MEM Document 143-3 Filed 03/23/16 Page 58 of 78

1998 WL 195706

to indemnify H & C for any liability it may incur, as well as seeking damages for injuries already realized.

**\*3** Although H & C is a defendant in this case and a plaintiff in Michigan, this reversal of roles does not alter the parallel nature of the cases. *See Ingersoll–Rand Fin. Corp. V. Callison,* 844 F.2d 133 (3d Cir.1988). The actual, substantive claims are not meaningfully different, each positing the same issue: which party is ultimately liable for the defective HTPV pipes. I thus find that the Michigan litigation addresses substantially the same claims as this case and that the two cases are parallel. [3]

[3]   As discussed in *Allied Nut and Bolt, Inc. v. NSS Ind. Inc.,* 920 F.Supp. 626 (E.D.Pa.1996), the reasons for assessing whether the state and federal claims are parallel is that the Colorado River abstention doctrine is based not on comity, which might require that the two jurisdictions consider the cases to be identical before abstention would be allowed, but on "whether considerations of 'wise judicial administration' render it inappropriate for them to proceed separately." *Id.* at 630.

### B. *Colorado River* abstention test

In deciding whether to abstain from hearing this case, I must consider the following six factors:(1) which court first assumed jurisdiction over any property involved,(2) whether the federal forum is inconvenient, (3) desirability of avoiding piecemeal litigation,(4) the order in which the respective courts obtained jurisdiction,(5) whether federal or state law applies, and(6) whether the state court proceedings would adequately protect the federal plaintiff's interests. *Trent,* 33 F.3d at 225(citing *Moses H. Cone Mem. Hosp. V. Mercury Constr. Corp.,* 460 U.S. 1, 15–16, 23–26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). No single factor is necessarily determinative in this analysis. *Colorado River,* 424 U.S. at 818. Only the "clearest of justifications" will warrant the dismissal or stay of a federal action because of a concurrent parallel state action. *Id .* at 819.

When I apply these factors to this case, their sum does not rise to the level of the "exceptional circumstances" necessary for abstention under *Colorado River. Moses H. Cone,* 460 U.S. at 19. The first factor is irrelevant, there being no property over which any of the courts have assumed jurisdiction. As to the second factor, I do not see that any forum is more or less convenient than the other. All the parties engage regularly in business nationwide, and some internationally.

The Third Circuit recently expounded on what sort of analysis the third factor requires. In *Ryan v. Johnson* the court observed that because every parallel state-federal litigation by definition is piecemeal, if the mere existence of concurrent state-federal litigation satisfied this factor "it is difficult to conceive of any parallel state litigation that would not satisfy the 'piecemeal adjudication' factor and militate in favor of *Colorado River* abstention." 115 F.3d 193, 198 (3d Cir.1997). Rather, for this factor to apply "there must be a strongly articulated congressional policy against piecemeal litigation in the specific context of the case under review." *Id.* (citing *Colorado River,* 424 U.S. at 819 ("clear federal policy" of "avoidance of piecemeal adjudication" under the governing statute)).

At bar, Chevron argues that to continue this litigation would effectively "be a declaration of open hunting season to each furnace and boiler manufacturer, allowing each to file its own individual suit wherever it may desire on the same issues." (Chevron's Reply Mem. Mot. to Dismiss at 6.) H & C echoes this concern, stating that appliance manufacturers potentially could file suit against it in Iowa, South Carolina, New York, Kansas, and California. (H & C's Reply Mem. Mot. to Dismiss at 4.) Certainly, piecemeal litigation abounds: beyond the parallel litigations in Tennessee and Michigan, there currently are related litigations in Alabama federal court and in Massachusetts and Texas state courts. Nevertheless, the defendants do not suggest, nor has this court found, a congressional policy that piecemeal litigation should be avoided in this context. "The presence of garden-variety state law issues has not, in this circuit, been considered sufficient evidence of congressional policy to consolidate multiple lawsuits for unified resolution in the state courts." *Ryan,* 115 F.3d at 198 (citations omitted). Accordingly, I find that the mere existence of piecemeal litigation is an insufficient basis to justify abstention.

**\*4** The fourth factor, the order in which the respective courts first obtained jurisdiction, is neutral. "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the [ ] actions." *Moses H. Cone,* 460 U.S. at 21. Each of the cases is at its beginning or early stage, and none has developed so far as to weigh either for or against abstention.

The *Ryan* court also addressed how courts should view the fifth factor, whether state or federal law applies. The *Ryan* court made clear that abstention cannot rest on the simple presence of state-law issues in the federal suit. 115 F.3d

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.

at 199. Although the presence of federal-law issues weighs against abstention, only rarely will state-law issues weigh in favor of abstention. *Id.* The *Ryan* court noted a Second Circuit case which justified abstention partly on the basis that the case raised state-law issues that were novel. The court was "skeptical of [the] rationale, at least as applied to the straightforward state negligence law issues." 115 F.3d at 200. Thus, the question is whether the state-law issues here go beyond the ordinary and present novel questions best left for adjudication by the state courts.

The current suit by Peerless alleges that defendants manufactured and distributed defective pipes. Although this case involves a large number of state-law issues, and it concerns numerous parties, it remains no more inherently unusual or unsettled than other state law negligence and product liability cases. There is no doubt that this matter has some element of complexity and may well require the resolution of conflicts-of-law questions; however, these are issues that this court normally can, and does, address. Even

when considering the scale and implications of this case, the state-law issues here do not amount to "exceptional circumstances" which would suggest that the matter is best decided by the state courts. Thus, this factor does not support abstention.

Finally, as to the sixth factor—whether the proceeding in the state courts will protect Peerless' interests—the state courts are amply capable in that regard. Thus, this factor, too, carries little weight. *See Ryan,* 115 F.3d at 200.

In conclusion, I find that this case does not present the "exceptional circumstances" necessary to stay or dismiss this action.

An order follows.

**All Citations**

Not Reported in F.Supp., 1998 WL 195706

---

**End of Document**                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

**J**

2012 WL 447544
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

Doreen RHODES, Plaintiff,

v.

INDEPENDENCE BLUE CROSS, QCC Insurance
Company and Wellmark, Inc., Defendants.

Civil Action No. 11–1881.
|
Feb. 9, 2012.

**Attorneys and Law Firms**

Timothy S. Cole, Mantacole LLC, Ft. Washington, PA,
Anthony Paduano, Jordan D. Becker, Paduano & Weintraub
LLP, New York, NY, for Plaintiff.

David L. Comerford, Katherine M. Katchen, Matthew Ryan
Varzally, Akin, Gump, Strauss, Hauer & Feld, LLP, Jeffrey
D. Grossman, Marissa Rachel Parker, Stradley, Ronon,
Stevens & Young, LLP, Philadelphia, PA, Kevin H. Collins,
Sarah J. Gayer, Nyemaster, Goode, West, Hansell & O'Brien,
PC, Cedar Rapids, IA, for Defendants.

*MEMORANDUM*

DuBOIS, District Judge.

## I. INTRODUCTION

*1 In this case, plaintiff claims that defendants—
Independence Blue Cross and its subsidiary, QCC Insurance
Company (collectively, "IBC defendants"), and defendant
Wellmark, Inc., ("Wellmark") the Iowa Blue Cross affiliate
—must pay an insurance claim for hemophilia medicine that
plaintiff ordered through T. Zenon Pharmaceuticals, LLC,
an Iowa mail-order pharmacy doing business as Pharmacy
Matters ("Pharmacy Matters"). Presently before the Court is
Defendants' Joint Motion to Stay Proceedings and Transfer
Matter to the Civil Suspense Docket, in which defendants ask
the Court to stay the case pending the resolution of an Iowa
state court case ("the Iowa case") between Pharmacy Matters
and Wellmark. For the reasons stated below, the Court grants
the motion and stays the proceedings pending resolution of
the Iowa case.

## II. BACKGROUND

### A. Plaintiff's Complaint and Defendants' Responses

Plaintiff, a Pennsylvania resident, filled prescriptions for
her son Quamir's expensive blood-clotting-factor hemophilia
medicine ("Factor") through Pharmacy Matters, an Iowa
specialty pharmacy licensed to ship medicines to patients
in other states. [1] (Am.Compl.¶¶ 1, 8–9.) Pharmacy Matters
provided two shipments of Factor to plaintiff and submitted
claims for those two shipments to Wellmark for payment. [2]
(*Id.* ¶ 12.) The total amount of the two claims was $697,651.
(*Id.* ¶ 13.) Pharmacy Matters submitted the claims to
Wellmark, which is the Blue Cross Blue Shield ("BCBS")
association affiliate in Iowa, where Pharmacy Matters is
located. (*Id.* ¶ 10.) Plaintiff alleges the prescription Pharmacy
Matters filled was covered by the Blue Cross health insurance
policy issued by the IBC defendants, but defendants refused
to pay Pharmacy Matters's claims. (*Id.* ¶¶ 13, 15.) Wellmark
stated that it denied the claims because Pharmacy Matters
breached its provider agreement with Wellmark, and the IBC
defendants took the position that they did not have to pay
the claims because they were subject to a dispute between
Pharmacy Matters and Wellmark, which was the BCBS
affiliate responsible for "coordinat[ing]" payment. (*See id.* ¶
12; Letter from Katherine Katchen to Lori Vinciguerra, Am.
Compl. Ex. D, at 1.) Plaintiff received all of the medicine
for which she seeks "reimbursement" and was covered by
the IBC policy at all times in question, although she is
no longer insured by the IBC defendants. (Def.'s Jt. Mot.
Stay Proceedings and Transfer Case Civ. Suspense Docket
("Jt.Mot.Stay") 14; IBC Defs.' Reply Br. ("Defs.' Reply") 3.)
Significantly, Pharmacy Matters has not sought payment of
the claims from plaintiff.

[1]    Pharmacy Matters was originally a plaintiff in this case,
but the Amended Complaint named only Ms. Rhodes as
plaintiff.

[2]    Those claims are a September 30, 2008, claim for
$232,566.00 (invoice no. 15394) and an October 30,
2008, claim for $465,085.00 (invoice no. 15464). (*See*
Pharmacy Matters Open Account Receivables, Defs.'
Mem. L. Mot. Dismiss Ex. C, at 1–3.)

Plaintiff contends that defendants are contractually obligated
to pay the claims and that their failure to do so exposes
her to liability to Pharmacy Matters for the nearly $700,000
balance on the Factor bill. (Am.Compl.¶ 22.) In her
Amended Complaint, plaintiff alleges: in Counts I–III, that
the IBC defendants violated the Employee Retirement and

Security Income Act ("ERISA") by wrongfully denying her benefits; in Count IV, that the IBC defendants violated the Pennsylvania Quality Health Care Accountability and Protection Act; and in Count V, that Wellmark tortiously interfered with plaintiff's contractual relations with the IBC defendants.

**\*2** In addition to defendants' motion to stay, pending before the Court are the IBC Defendants' Motion to Dismiss Amended Complaint, Wellmark's Motion to Dismiss, and plaintiff's Motion to Strike an affidavit filed with Wellmark's Motion to Dismiss. Although the IBC defendants and Wellmark raise several grounds for dismissal or, in the alternative, for a transfer of venue, their motions rely on the same theory of the case: Wellmark properly refused to pay Pharmacy Matters's claim for plaintiff's son's Factor because Wellmark was investigating possible Factor billing fraud with the assistance of the national Blue Cross Blue Shield association, other BCBS state providers, and government investigators. (Correspondence, Pl.'s Mem. Law Opp'n Def. Wellmark's Mot. Dismiss ("Pl.'s Wellmark Resp."), Exs. A–E.) The IBC defendants contend that plaintiff cannot be financially liable to Pharmacy Matters and has suffered no harm, and thus this case is nothing more than a contractual dispute between Wellmark and Pharmacy Matters. (*See, e.g.,* Mem. L. Supp. IBC Defs.' Mot. Dismiss PL's Am. Compl. ("IBC Defs.' Mem. L. Mot. Dismiss") 1–2.)

## B. The Iowa Case and Other Pending Cases

In May 2009, Pharmacy Matters filed suit against Wellmark in the Iowa District Court of Johnson County in the case of *T. Zenon Pharmaceuticals v. Wellmark, Inc.,* No. 06521 LACV070675 ("the Iowa case"). (Am. Compl. ¶ 12 & n. 2.) In the Iowa case, Pharmacy Matters seeks from Wellmark, inter alia, payment of the same two claims that are at issue in this case. (Jt. Mot. Stay 2.) Wellmark denied the claims and argued in Iowa that Pharmacy Matters violated, inter alia, an anti-assignment provision in its Wellmark contract by serving as an Iowa proxy for an out-of-state pharmaceutical drug provider, Factor Health Management, LLC. (*Id* at 2–3.) The parties have made substantial progress in discovery in the Iowa case with over 200 documents filed, 44,000 pages of documents produced, and at least fifteen depositions taken. (*Id.* at 3; *see also* Iowa Docket Entries, *T. Zenon Pharms. v. Wellmark, Inc.,* No. 06521 LACV070675 (D. Ct. Johnson Cnty., IA), available at https:// www.iowacourts.state.ia.us/ (last accessed Feb. 8, 2012).) The Iowa case is set for trial on November 6, 2012. (Iowa Docket Entries 1.)

The Iowa case also involves claims that underlie cases filed across the country, including at least six cases in federal district courts and one case in North Carolina state court. (Jt. Mot. Stay 4–8; PL's Mem. L. Opp'n Defs.' Jt. Mot. Stay ("PL's Opp'n") 4–5.) Each of these cases is in a slightly different posture. As of the date of this Memorandum, no court has decided the merits of either the case before it or the Wellmark–Pharmacy Matters dispute. The only court to rule on a motion to stay granted the motion pending conclusion of the Iowa case, applying the Colorado River doctrine, which is discussed *infra. See Brown v. Blue Cross & Blue Shield of Fla., Inc.,* No. 11–cv–80390, at \*22 (S.D.Fla. Aug. 8, 2011) (order denying motion to strike, denying motion to disqualify counsel, and granting stay). [3] A motion to stay is pending in the case in the District of Idaho. *See Rotondo v. Blue Cross of Idaho,* No. 11–cv–893 (D.Idaho).

[3]     This order is currently on appeal to the Eleventh Circuit. Subsequent citations to the *Brown* court's August 8, 2011, Order take the form "*Brown* at \*[# ]."

## C. Parties' Arguments

**\*3** Defendants argue that a stay pending the outcome of the Iowa state case is appropriate under two doctrines: (1) Colorado River abstention, under which exceptional circumstances require abstention due to a pending state court case, *see Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); and (2) the Court's inherent authority to control its docket to promote economy of time and effort, *see Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). (Jt. Mot. Stay 9–10.) According to defendants, the Court should grant a stay because "[b]oth this case and the Iowa [c]ase are based in the same dispute, *i.e.,* whether Wellmark properly denied Pharmacy Matters's claims under the Wellmark Provider Agreement for factor medication allegedly dispensed to members of Blue Cross welfare benefit plans, including plaintiff." (Jt. Mot. Stay 10.) Plaintiff responds only that abstention under *Colorado River* is inappropriate; she does not respond to defendants' request for a stay under the Court's inherent authority. (PL's Opp'n 7–28.) However, in her *Colorado River* argument, plaintiff addresses prejudice, hardship to defendants, and judicial efficiency, (*id.* at 26–28), which are the same factors the Court must evaluate in determining whether to use its inherent authority to order a stay. [4]

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works. 2

[4]      As discussed *infra,* the Court concludes that a stay under the Court's inherent authority is appropriate. Thus, the Court does not address the parties' arguments as to the *Colorado River* doctrine.

## III. LEGAL STANDARD

A court's authority to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, counsel, and for litigants." *Landis,* 299 U.S. at 254; *see also Bechtel Corp. v. Local 215,* 544 F.2d 1207, 1215 (3d Cir.1976). The decision to stay " 'is one left to the district court as a matter of its discretion to control its docket.' " *Mendez v. Puerto Rican Int'l Cos., Inc.,* 553 F.3d 709, 712 (3d Cir.2009) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 20 n. 3, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Accordingly, a court may "[i]n the exercise of its sound discretion ... hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp.,* 544 F.2d at 1215; *see also Airgas, Inc. v. Cravath, Swaine & Moore, LLP,* No. 10–612, 2010 WL 624955, at *2 (E.D.Pa. Feb.22, 2010); *Dimensional Music Publ'g, LLC v. Kersey,* 448 F.Supp.2d 643, 656 (E.D.Pa.2006).

In determining whether to stay an action under its inherent authority, a court must weigh the competing interests of and possible harms to the parties. *Dimensional Music,* 448 F.Supp.2d at 655. Factors that the Court should weigh include "whether the proposed stay would prejudice the non-moving party, whether the proponent of the stay would suffer a hardship or inequity if forced to proceed and whether granting the stay would further the interest of judicial economy." *Airgas,* 2010 WL 624955, at *3 (citing *Landis,* 299 U.S. at 254–55).

## IV. DISCUSSION

**\*4** Weighing the parties' competing interests and harms leads the Court to order a stay of proceedings pending the outcome of the Iowa case. The Court addresses each of the relevant factors—prejudice to plaintiff if the stay is granted, hardship to defendants if the stay is not granted, and whether the stay furthers the interest of judicial economy—in turn and concludes that all favor granting the stay.

## A. Prejudice to Plaintiff

Delaying the disposition of this case will cause only minimal, conjectural prejudice to plaintiff; she has already received the Factor medication, is no longer insured by the IBC defendants, and only faces a speculative threat of financial liability. (Jt. Mot. Stay 13; Defs.' Reply 3.) The core of plaintiff's claim, and the basis for each count of the Amended Complaint, is that Pharmacy Matters *may* seek to hold her financially responsible for the Factor if she lost her Pharmacy Matters loses the Iowa case. (*See* Am. Compl. ¶ 22 ("[I]f the IBC Defendants are not required to reimburse Plaintiff ... Plaintiff *will* suffer injury because she will be liable to Pharmacy Matters ....") (emphasis added); Nov. 5, 2010, Letter from Michael Stein, Am. Compl. Ex. C, at 1 (stating that Pharmacy Matters "is continuing to attempt to collect [the] amounts from ... Independence Blue Cross and Blue Shield, but ... in the event of their continued refusal to pay, you are responsible for the amounts").) Until the Iowa case is resolved, this harm is speculative. A favorable decision for Pharmacy Matters in Iowa would remove any threat of liability. A decision for Wellmark would have the same effect because Wellmark has counter-claimed for a declaratory judgment that Pharmacy Matters cannot bill plaintiff for any claims that Wellmark has denied. [5] (IBC Defs.' Mem. L. Mot. Dismiss 7 n. 6.) Plaintiff thus faces, at worst, de minimis prejudice from a stay. *See Brown* at *17 ("Should the Iowa court find that Wellmark has breached its contract and that Plaintiffs are entitled to the roughly $6.6 million in damages they seek, [plaintiffs'] claims in this suit will be moot.... Even if the resolution of the Iowa case does not dispose of this suit, it will most likely narrow the issues ...." (citations omitted)); *see also Waltman v. Dorel Juvenile Grp., Inc.,* No. 07–cv–4029, 2009 WL 2877153, at *2 (E.D.Pa. Aug.28, 2009) (staying product liability action pending Pennsylvania state appellate courts' rulings because "the possibility that either court may ... [issue] a ruling that would be dispositive of this entire case[ ] is sufficient justification to warrant the stay").

[5]      Defendants argue forcefully that, even if Pharmacy Matters were to lose the Iowa state case, Pharmacy Matters is contractually prohibited from billing plaintiff for the amounts in question. (*See, e.g.,* IBC Defs.' Mem. L. Mot. Dismiss 7–8.) Moreover, one of plaintiff's attorneys, Anthony Paduano, Esquire, represented Pharmacy Matters when it was a plaintiff in this matter. Mr. Paduano also represents Factor Health Management —Pharmacy Matters's distributor and the allegedly improper out-of-state distributor in the Iowa case—to whom Pharmacy Matters "owes a considerable sum of money." (April 23, 2009, Letter from Anthony Paduano to Michael Stein, Jt. Mot. Stay Ex. D, at 1.) Mr. Paduano is also admitted *pro hac vice* as counsel for Pharmacy

Matters in the Iowa case (Iowa Docket Entries 21). From these relationships, the Court infers that, at least for the moment, plaintiff's and Pharmacy Matters's interests are not adverse. *See* Pa. R. Prof 1 Conduct 1.7 (governing concurrent conflicts of interest).

The other types of harm plaintiff has alleged do not compel a finding that a stay would cause any real prejudice. Her claim of damage to her "credit and credibility" is also conditional: She argues that, if the IBC defendants fail to pay, it *"will* seriously jeopardize the ability of Plaintiff to obtain health care services and products from pharmacies of her choice for Quamir ...." " (Am.Compl.¶ 24.) Plaintiff has not alleged that she has had any difficulty in obtaining Factor. To the extent that she contends that she "incurred[,] and will continue to incur, significant attorneys' fees," (*id.* ¶ 21), a stay will not seriously prejudice her; she may benefit from decreased attorneys' fees if the Iowa case resolves favorably, and, at worst, she will incur only minimal incremental fees while this case is stayed. Moreover, on the present state of the record, the stay in this case has a projected end date because the trial in the Iowa case is set for November 6, 2012, thus diminishing the potential for prejudice.[6] *See Airgas,* 2010 WL 624955, at *2.

[6]   The Court's ruling on this issue would not change in the event the Iowa trial is continued for a reasonable period of time.

**\*5** The Court thus concludes that the risk of prejudice to plaintiff from a stay is minimal.

### B. Hardship to Defendants

Defendants will suffer considerable hardship if forced to proceed in this case. Plaintiff's claims turn on the same issue that Wellmark and Pharmacy Matters are litigating in the Iowa case. Thus, the question before the Iowa court—whether Wellmark's refusal to pay Pharmacy Matters was proper—is one this Court would also have to confront. The Iowa case was filed approximately twenty-two months before this case and "has been earnestly litigated for more than two years." (Declaration of Kevin H. Collins ("Collins Deck"), Jt. Mot. Stay Ex. C, at ¶ 4.) The Iowa case is at a more advanced stage than this case: the parties have exchanged "multiple sets of written discovery" and have taken more than fifteen depositions, including expert depositions. (*Id.* ¶¶ 6–8.) Although they are not parties in the Iowa case, the IBC defendants complied with a subpoena in that case and produced documents and a witness regarding the Factor claims at issue in this case; the witness was deposed in May

2011. (Declaration of Katherine M. Katchen and Exhibits, Jt. Mot. Stay Ex. G.) Without a stay, defendants will be required to spend time and money on this litigation duplicating the work required in the Iowa litigation.

In her response to the Joint Motion to Stay, plaintiff focuses on the argument that the Iowa case will not affect this case because her "claims are asserted pursuant to ERISA and are based on facts relating solely to Plaintiff's insurance contract with the H3C Defendants and Wellmark's interference with that contract." (PL's Opp'n 15.) The Court rejects this argument. The dispute that arose when Wellmark refused to pay Pharmacy Matters created a "roadblock" in the processing of plaintiff's claim. The result of the Wellmark–Pharmacy Matters dispute may "substantially affect [this case]," *Bechtel Corp.,* 544 F.2d at 1215, including the standing issue that is the partial basis of the H3C defendants' motion to dismiss (*see* H3C Defs.' Mem. L. Mot. Dismiss 7–8). The *Brown* court reached a similar conclusion, stating: "Though recast under various forms of relief here—including [ERISA and Florida state law claims]—Plaintiffs' causes of action in this matter against BCBSF stem from the same outstanding payments for Factor treatment that are part and parcel to the $6.6 million claim ... in the Iowa litigation." *See Brown* at *13, 16–17 (citing *Dailey v. Nat'l Hockey League,* 987 F.2d 172, 174 (3d Cir.1993).

The Court concludes that defendants would be required to expend significant resources unnecessarily duplicating work required in the Iowa litigation if this case were to proceed before the Iowa case is resolved. Accordingly, this factor weighs in favor of granting a stay.

### C. Judicial Economy and Efficiency

A stay will promote judicial economy and efficiency. As discussed *supra,* the resolution of the Iowa case is likely to have a significant effect on many of the issues before this Court, including the parties' disputes as to plaintiff's standing and the merits of the case. This Court, in which motions to dismiss are pending and discovery has not begun, is not prepared to rule on the merits of the Pharmacy Matters–Wellmark dispute. The Iowa court is in a better position to resolve the issues for several reasons. First, the Pharmacy Matters–Wellmark dispute involves an alleged breach of a contract that is governed by Iowa law, (Entity Agreement, Exhibit to Iowa Case Complaint, Jt. Mot. Stay Ex. B ¶ 14.9), which the Iowa court is better suited to apply. *See Shubert v. Roche Holding Ag,* 157 F.Supp.2d 542, 547 (E.D.Pa.2001) (applying "the maxim that state courts are better suited to

handle state claims"). Second, litigation in Iowa is at an advanced stage with trial already scheduled. Third, Pharmacy Matters is a party in the Iowa case but not in this Court, which makes the Iowa state court a more appropriate forum for litigating Pharmacy Matters's contractual claims. The Court thus concludes that a stay will serve "the interests of judicial economy, efficiency, comity and of the convenience of the parties themselves, who will be able to avoid the same cause of action being litigated in two forums simultaneously." *Chintala v. Diamond Reo Trucks, Inc.,* 393 F.Supp. 1392, 1394 (E.D.Pa.1975).

## V. CONCLUSION

**\*6** After weighing the competing interests of and possible harms to the parties, the Court concludes that this case should be stayed pending resolution of *T. Zenon Pharmaceuticals v. Wellmark, Inc.,* No. 06521 LACV070675, in the District Court of Johnson County, Iowa. The Court therefore grants Defendants' Joint Motion to Stay Proceedings and Transfer Matter to the Civil Suspense Docket.

An appropriate Order follows.

## All Citations

Not Reported in F.Supp.2d, 2012 WL 447544

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.



Trent v. Dial Medical of Florida, Inc., Not Reported in F.Supp. (1992)

Case 3:14-cv-00591-MEM Document 143-3 Filed 03/23/16 Page 67 of 78

1992 WL 365625

1992 WL 365625
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Earl TRENT, and all those similarly situated

v.

DIAL MEDICAL OF FLORIDA, INC.
and Community Dialysis Centers.

Civ. A. No. 92–4493.
|
Nov. 30, 1992.

**Attorneys and Law Firms**

Ronald V. Cole, Ronald Cole, Philadelphia, Pa., for plaintiff.

Joseph Frontino, Kathleen L. Thren, L'Abbate & Balkan, Andrew A. Chirls, Wolf, Block, Schorr and Solis–Cohen, Steven G. Wigrizer, Wapner Newman & Associates, Philadelphia, Pa., Charles T. Roessing, William D. Kennedy, White and Williams, Paoli, Pa., for defendants.

MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

**\*1** Plaintiff Earl Trent, has filed a motion for class certification seeking to represent a class of fifty three current and former patients of defendants Dial Medical of Florida, Inc. (Dial) and Community Dialysis Centers (CDC) who have tested positive for serum aluminum levels of greater than 100 mcg/1. Trent alleges that the defendants through their negligence permitted acid concentrate for bicarbonate dialysate to be pumped by means of an electric pump whose casing, casing cover and impeller were made of aluminum. Those patients receiving kidney dialysis treatments at the defendants facility allegedly suffered aluminum poisoning as a result of this negligence.

Also before the court is the motion of Edwin Snead to intervene in this action. Snead is the executor of the estate of his wife Elaine Snead, who died allegedly from aluminum induced encephalopathy as a result of her dialysis treatments at CDC. Snead filed a class action suit in the Court of Common Pleas of Delaware County on May 20, 1992 alleging a similar putative class. The motion for intervention is to oppose Trent's motion for class certification in the federal

court suit on the grounds that he does not adequately represent the interests of the class. For the reasons which follow, the motion of Edwin Snead to intervene will be granted and the motion for class certification will be denied without prejudice. Further, under the abstention doctrine, the court finds that it is appropriate to dismiss this action without prejudice, pending the outcome of Snead's state court suit.

Preliminarily we find Snead's request to intervene to be well founded. Pursuant to Fed.R.Civ.P. 24(a), members of a class have a right to intervene if their interests are not adequately represented by existing parties. *Bolden v. Pennsylvania State Police,* 578 F.2d 912 (3d Cir.1978). Being a member of the putative class, the disposition of this action may as a practical matter impair or impede Snead's ability to protect his interests. Fed.R.Civ.P. 24(a).

In *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976), the Supreme Court established the exceptional circumstances test, which allows a federal district court to stay or dismiss an action when a parallel action is pending in state court. A district court evaluating parallel actions under this test must make two determinations before it abstains from jurisdiction. First, it must find that the two actions are actually parallel. Second, if the actions are indeed parallel, the court must consider a number of factors that might justify a decision to refrain from exercising jurisdiction over the action. *LaDuke v. Burlington Northern R. Co.,* 879 F.2d 1556, 1559 (7th Cir.1989).

There is little doubt that Snead's state court action is parallel to this federal action. Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum. *Id.* at 1559. The allegations and issues raised in the two complaints are nearly identical. The class previously certified by the state court includes all CDC patients who utilized the defective dialysis equipment at CDC and suffered injury as a result. Although the putative class defined by plaintiff Trent is somewhat more limited, he relies upon the same allegations of negligence. The evidence produced in both actions is likely to be indistinguishable. Thus we find them to be substantially identical.

**\*2** Having found the two actions to be parallel, we must balance this court's obligation to exercise jurisdiction against factors militating toward abstention. In *Moses H. Cone Hospital v. Mercury Construction Corp.,* 460 U.S. 1 (1983), the Supreme Court reiterated the process for engaging in this balancing:

Trent v. Dialysis Centers of Florida, Inc., Not Reported in F.Supp. (1992)

Case 3:14-cv-00591-MEM   Document 143-3   Filed 03/23/16   Page 68 of 78

1992 WL 365625

> [T]he decision whether to dismiss a
> federal action because of a parallel
> state-court litigation does not rest on a
> mechanical checklist, but on a careful
> balancing of the important factors as
> they apply in a given case, with the
> balance heavily weighted in favor of
> the exercise of jurisdiction.

*Id.* at 16. The *Colorado River* decision identified the following four factors to be considered and balanced in determining whether exceptional circumstances exist: (a) the inconvenience of the federal forum, (b) the desirability of avoiding piecemeal litigation, (c) the order in which jurisdiction was obtained, and (d) the presence of a res or property over which jurisdiction has been asserted. *Colorado River,* 424 U.S. at 818–819. *Moses H. Cohen* identified two additional factors: whether federal law provides the rule of decision on the merits and the adequacy of the state court proceedings to protect the plaintiff's rights. 460 U.S. at 23, 26.

Taking these factors seriatim, we find neither the state or federal forum to be inconvenient to the parties. Among other things, convenience refers to the ease of access to sources of proof, availability of compulsory process and enforceability of judgments. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947). We find this factor to be a wash: sources of proof are as easily accessible from the Delaware County Court of Common Pleas as they are from this court. Further, compulsory process is equally available in both actions and judgments from either forum would be equally enforceable.

In *Moses H. Cohen,* the Supreme Court noted that the strong policy in favor of avoiding piecemeal litigation was "by far the most important factor" in its decision to uphold the dismissal of a federal proceeding. *Id.* at 16. This factor entails inquiry into the scope of the proceeding and nature of available defense in the pending state court action. The inquiry should determine whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amendable to process in that proceeding. *Brillhart v. Excess Insurance Co.,* 316 U.S. 491, 495 (1942), *Colorado River,* 424 U.S. at 818.

While the claims presented in these two suits are identical, the plaintiff class is not. Specifically, the class already certified by the Court of Common Pleas is far broader in definition than the putative class asserted here. Plaintiff Trent seeks

to represent only those patients at CDC who have tested positive for serum aluminum levels greater than 100 mcg/1. Intervenor Snead has been designated the representative of a class consisting of all CDC patients who utilized the defective dialysis equipment at CDC and suffered injury as a result. In his motion for class certification, Trent makes no explanation as to why the 100 mcg/1 cellar was selected as a determination for class membership, or why that number might be medically or legally relevant. While he states that the number of patients whose serum aluminum levels rose above 100 mcg/1 are too numerous for joinder, it is not inappropriate to assume that a significant number of persons exist whose serum aluminum levels were adversely affected by the defendants' alleged negligence but did not rise above 100 mcg/1. These persons are by definition a member of the state court class, but would be excluded from this putative class.

**\*3** Adjudication of these two suits at the same time would provide the very type of possibly piecemeal litigation the courts seek to avoid when applying the abstention doctrine. Clearly, some patients would be members of both classes, while others would be members of only the state court class. While the state court action would be determinative of the federal, the reverse would not be true. This factor, thus weighs heavily in favor of staying this suit.

The order in which jurisdiction was obtained also favors the state court action. It was filed in May 1992, while the instant action was filed in July 1992. More important, the state court suit has already made significant progress in discovery, and the state court class has already been certified. While this court's docket is current and the parties would be afforded a prompt trial date, the state court proceeding is clearly farther along toward resolution.

Since there is no res or property over which jurisdiction has been asserted, this factor is irrelevant.

The rule of decision factor also favors the state court action. Federal law clearly will not provide the rule of decision on the merits. Sitting in diversity, this court is required under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938), to apply Pennsylvania law.

We also find the state court would be in a superior position to adequately protect all the parties' rights. As stated, the state court class is more comprehensively defined. This indicates that, if it is successful, the plaintiffs' class will benefit a greater number of claimants. Further, because the class is more broad,

Trent v. Dialysis Center of Florida, Inc., Not Reported in F.Supp. (1992)

Case 3:14-cv-00591-MEM   Document 143-3   Filed 03/23/16   Page 69 of 78

1992 WL 365625

if the defendants settle the matter or are successful on the merits, they will have procured a greater peace.

For all these reasons, we find this is one of those extraordinary situations where a federal court should abstain from adjudicating the parallel claims raised in these two suits. Accordingly, we will order that the statute of limitation applicable to this suit be tolled and the action dismissed without prejudice, pending the outcome of the state court action. Should plaintiff Trent have any claims which survive the adjudication of that matter, he may reinstate his complaint at that time. [1]

ORDER

The motion of Edwin Snead, Executor of the Estate of Elaine Snead and in his own right to intervene as a party plaintiff is GRANTED.

The motion of plaintiff Earl Trent for class certification is DENIED without prejudice.

This suit is DISMISSED WITHOUT PREJUDICE. This case is to remain in status quo and the Statute of Limitations is tolled.

It is further understood that all discovery and settlement discussions will continue in coordination with the action currently pending in the Delaware County Court of Common Pleas styled *Snead v. Community Dialysis Center, Inc., et al.,* No. 92–7044. If intervention by the court is needed or desired, the parties may ask for assistance by either filing the appropriate motions, writing to the court or setting a telephone conference.

**\*4** The parties shall keep the court advised of the status of this case and the state court action. When they are ready for trial or wish a settlement conference all that is necessary is to write directly to the court or set a telephone conference.

IT IS SO ORDERED.

[1]    Our determination negates any necessity to take up the issues raised in the instant class action certification in any depth. However, so that the record for any possible appeal or motion for reconsideration can reflect the court's probable determination, we merely note that the arguments raised by both the intervenor and the defendants as to the typicality of the representative party's claims are significant. While intervenor Snead's decedent died of aluminum toxicity allegedly through the negligence of the defendants, plaintiff Trent has exhibited few symptoms typical of those class members he seeks to represent. While members of the putative class have allegedly died as a result of the defendants' negligence, there is no claim for wrongful death or survival in the instant complaint. Because other members of the putative class may have such claims, which Trent would be unable to assert, his claims are not typical of those possessed by other class members. Additionally, we note there are defendants named in the state court action who are not named in this case because they are not diverse to plaintiff Trent.

**All Citations**

Not Reported in F.Supp., 1992 WL 365625

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

 © 2016 Thomson Reuters. No claim to original U.S. Government Works.

**L**

West Virginia ex rel. McGraw v. Bristol Myers Squibb Co., Slip Copy (2014)

2014 WL 793569

Case 3:14-cv-00591-MEM Document 143-3 Filed 03/23/16 Page 71 of 78

2014 WL 793569
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
D. New Jersey.

State of WEST VIRGINIA, ex rel. Darrell V.
McGraw, Jr., Attorney General, Plaintiff,
v.
BRISTOL MYERS SQUIBB CO., et al., Defendants.

Civil Action No. 13–1603 (FLW).
|
Feb. 26, 2014.

**Attorneys and Law Firms**

Carl N. Frankovitch, Mark A. Colantonio, Frankovitch
Anetakis Colantonio & Simon, Weirton, WV, Clayton J.
Fitzsimmons, Robert P. Fitzsimmons, Fitzsimmons Law
Firm PLLC, Teresa C. Toriseva, Wexler Toriseva Wallace,
Wheeling, WV, Frances A. Hughes, Office of the Atty.
General, Charleston, WV, Robert L. Salim, Salim-Beasley,
LLC, Natchitoches, LA, for Plaintiff.

Erik W. Legg, Michael J. Farrell, Farrell, White & Legg
PLLC, Huntington, WV, for Defendants.

**OPINION**

WOLFSON, District Judge.

**\*1** In this *parens patriae* [1] action, the State of West
Virginia, by its Attorney General, Darrell V. McGraw,
Jr. ("Plaintiff" or the "State"), alleges that Bristol–Meyers
Squibb Company ("BMS"), Sanofi–Aventis U.S., LLC,
Sanofi U.S. Services, Inc. and Sanofi–Synthelabo, Inc.
(collectively, "Defendants"), engaged in unfair and deceptive
marketing practices relating to the efficacy of Plavix, an
anti-clotting prescription drug. Initially, Plaintiff brought
suit in West Virginia State Court; however, upon removal
by Defendants to the United States District Court for the
Northern District of West Virginia, this case was transferred
to this Court by the Multi–District Litigation ("MDL") Panel
as a part of the *In re Plavix* MDL. In the instant matter,
the State moves for remand. For the reasons set forth below,
the Court **GRANTS** the State's request, and accordingly, this
matter is transferred to the District Court in the Northern

District of West Virginia for the purpose of remanding this
case to the Circuit Court of Marshall County, West Virginia.

[1]     *Parens patriae,* literally "parent of the country," is a
        doctrine that provides a state with standing to sue as a
        guardian of its citizens when the state can "articulate
        an interest apart from the interests of particular private
        parties." *LG Display Co., Ltd. v. Madigan,* 665 F.3d
        768, 771 (7th Cir.2011); *Allegheny Gen. Hosp. v.
        Philip Morris,* 228 F.3d 429, 436–37 (3d Cir.2000);
        *Pennsylvania v. Porter,* 659 F.2d 306, 328 (3d Cir.1981).

**BACKGROUND**

The underlying facts of this case are largely not relevant to
the issues presented in the present motion. Suffice to say, the
State accuses Defendants of deceptively marketing Plavix by
wrongfully asserting that Plavix is a superior drug to aspirin
for certain indicated usages and charging approximately one
hundred times more for Plavix than aspirin despite knowing
that Plavix have no such superior efficacy. The State filed
the Complaint against Defendants in the Circuit Court of
Marshall County, West Virginia on December 28, 2012.
The Complaint only asserts West Virginia state law claims,
which include: 1) violations of the West Virginia Consumer
Credit Protection Act ("CCPA"), W. Va.Code §§ 46A17I101,
*et seq .;* 2) misrepresentations to the Public Employees
Insurance Agency ("PEIA") in violation of W. Va.Code § 5–
16–12; 3) violations of the Insurance Fraud Act, W. Va.Code
§ 33–41–11; 4) unjust enrichment; and 5) common law fraud.
The State seeks, *inter alia,* insurance payment reimbursement
on behalf of its agency, West Virginia Public Employees
Insurance Agency ("PEIA"), for excessive payments for
Plavix for its member employees.

Invoking diversity jurisdiction, Defendants removed the
matter on February 1, 2013, to the United States District Court
for the Northern District of West Virginia. In March 2013, the
case was transferred to this Court by the MDL Panel, after a
determination by the Panel to centralize all suits, subject to
its consideration, filed against Defendants related to Plavix.
Pending before me is the Plaintiff's motion for remand. The
State argues that because this is a *parens patriae* action, this
Court lacks diversity jurisdiction. Defendants, on the other
hand, maintain that diversity jurisdiction exists because the
State of West Virginia is only a nominal party in suit, and
the real party is PEIA, a citizen of West Virginia. Defendants
also contend that even if the State is the real party, this case is
nevertheless removable because it is a "class action" pursuant

to the Class Action Fairness Act ("CAFA"), and moreover, substantial and disputed federal issues exist for this Court to exercise its federal question jurisdiction.

**\*2** I held oral argument on this motion, wherein the parties presented additional arguments and certain concessions on the record. I will cite to the portions of the hearing transcript where appropriate.

## DISCUSSION

### I. Standard of Review
At the outset, because this is a MDL-related proceeding that originated from West Virginia, I must be clear on applicable choice of law rules. The parties, here, agree that under the MDL rules, in transferred diversity-ofcitizenship cases, the transferee federal district court is required to apply the substantive state law of the transferor court, including its choice-of-law rules. *See Paul v. Intel Corp.,* No. 05–1717, 2010 U.S. Dist. LEXIS 144511, at *163 (D.Del. Jul. 28, 2010). And, on issues of federal law or federal procedure, the transferee court applies the law of the circuit in which it sits (here, the Third Circuit). *See Various Plaintiffs v. Various Defendants ("Oil Field Cases"),* 673 F.Supp.2d 358, 363 (E.D.Pa.2009) (citing *In re Korean Air Lines Disaster,* 829 F.2d 1171, 1178 (D.C.Cir.1987)); *see also* Transcript of Hearing Dated August 21, 2013 ("Tr."), T5:11–22.

In a removal matter, the defendant seeking to remove bears the burden of showing that federal subject matter jurisdiction exists; that removal was timely filed; and that the removal was proper. *Boyer v. Snap-on Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990), *cert. denied,*498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991). Removal statutes are to be strictly construed against removal, and all doubts are to be resolved in favor of remand. *Shamrock Oil and Gas Corp. v. Sheets,* 313 U.S. 100, 104, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Brown v. Francis,* 75 F.3d 860, 865, 33 V.I. 385 (3d Cir.1996).

### II. CAFA Jurisdiction
As a preliminary issue, Defendants conceded during oral argument that *parens patriae* suits brought by state attorney generals are generally not removable as "class actions" under CAFA. *See* Tr ., T46:1–9. In fact, during the pendency of this motion, the Supreme Court addressed this issue in *Mississippi ex rel. Hood v. AU Optronics Corp.,* —— U.S. ——, 134 S.Ct. 736, ——L.Ed.2d —— (2014). The Court essentially held that

when a state brings suit on behalf of its citizens and it is the only named plaintiff, the suit is not removable under CAFA. Various other circuits have reached the same conclusion. *See, e.g., Purdue Phrama L.P. v. Kentucky,* 704 F.3d 208 (2d Cir.2013); *LG Display Co., LTD. v. Madigan,* 665 F.3d 768, 774 (7th Cir.2011); *Washington v. Chimei Innolux Corp.,* 659 F.3d 842, 848–49 (9th Cir.2011). Accordingly, this Court lacks jurisdiction under CAFA in this case.

### III. West Virginia is the Real Party in Interest
Plaintiff posits that this Court lacks diversity jurisdiction because the State is the real party in interest. The State reasons that the CCPA—the State's consumer fraud statute—expressly authorizes the Attorney General to bring suit on behalf of citizens of West Virginia to vindicate its quasi-sovereign interest. Here, in addition to seeking disgorgement of insurance payments on behalf of PEIA, the State claims that it has a substantial pecuniary stake in the outcome of this litigation as it seeks civil penalties, pursuant to W. Va.Code § 46A–7–111(2), against Defendants up to $5,000 for each willful violation of the CCPA, which occurred during the four year period prior to suit being filed. Plaintiff also seeks an injunction to enjoin Defendants from engaging in unfair or deceptive acts or practices in the future relating to the marketing of Plavix.

**\*3** On the other hand, Defendants submit that despite the CCPA claims brought by the State, this case is essentially an insurance reimbursement action seeking recovery of prescription drug costs expended by PEIA, and consequently, diversity exists because PEIA, a citizen of West Virginia, is the real party. Regarding the State's CCPA claims, Defendants argue that the CCPA does not apply to promotions of prescription drugs because the "learned intermediary" doctrine exempts Defendants from liability. In other words, Defendants insist that because doctors, rather than consumers, decide which drugs to prescribe, the CCPA does contemplate actions involving prescription drugs.

The parties' dispute centers on whether the State of West Virginia is the real party in interest. Rule 17 of the Federal Rules of Civil Procedure provides that:

> [e]very action shall be prosecuted in the name of the real party in interest.... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been

West Virginia ex rel. McGraw v. Bristol-Myers Squibb Co., Slip Copy (2014)
2014 WL 793569

Case 3:14-cv-00591-MEM   Document 143-3   Filed 03/23/16   Page 73 of 78

allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed. R. Civ. P. 17(a). According to this Rule, it is clear that diversity jurisdiction is based on the citizenship of the real party in interest. *Navarro Savings Ass'n v. Lee,* 446 U.S. 458, 460–61, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980); *Choi v. Kim,* 50 F.3d 244, 246 (3d Cir.1995) (in determining whether diversity jurisdiction exists, the district court is "required to decide who was the real party in interest under Rule 17(a) of the Federal Rules of Civil Procedure"). Thus, the initial step is to examine if West Virginia, the only plaintiff named in this action, is also the real party in interest. *See Ramada Inns, Inc. v. Rosemount Memorial Park Asso.,* 598 F.2d 1303, 1306 (3d Cir.1979) (when a state is a party to an action and that "particular case involves a question of diversity jurisdiction, the initial inquiry is [always] the same: is the state the real party in interest to the litigation?"). If it is, then there is no diversity jurisdiction here. *See Harris v. Pa. Tpk. Comm'n,* 410 F.2d 1332, 1333 n. 1 (3d Cir.1969) (explaining that a state is not considered a citizen for purposes of diversity jurisdiction).

That a state, a state agency, or its officers may have been named as parties in an action is not dispositive of whether that state is the real party in interest, because such a determination can only be derived from the "essential nature and effect of the proceeding." *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Ramada Inns, Inc. v. Rosemount Memorial Park Asso.,* 598 F.2d 1303, 1306 (3d Cir.1979). Another relevant factor is the stake, if any, which the state has in the outcome of the litigation beyond a general desire that its laws be enforced. *See Ramada Inns,* 598 F.2d at 1307. In other words, a state may sue on behalf of its citizens as *parens patriae* when the interests of a group of citizens are at stake, so long as the state is also pursuing a quasi-sovereign interest. *See Porter,* 659 F.2d at 328; *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 257–58, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972).

**\*4** A quasi-sovereign interest "generally arises from either (1) the State itself having suffered injury, such as direct damage to its economy, or (2) the general public having suffered an injury so that no one individual has legal standing to sue." *Commonwealth of Pennsylvania v. National Association of Flood Insurers,* 520 F.2d 11, 22 (3d Cir.1975) (citations omitted). In short, if a federal judgment will have no effect other than to implicate the state's general "governmental interest in the welfare of all its citizens ... and in securing compliance with all its laws," *Missouri, Kansas & Texas Ry. Co. v. Missouri R.R. & Warehouse Commissioners,* 183 U.S. 53, 60, 22 S.Ct. 18, 46 L.Ed. 78 (1901), then the state is not a real party in interest.

To make the determination of whether a state, such as West Virginia, is seeking relief for its general citizenry or private individuals, a court must examine the State's claims. There are two ways to undertake such an inquiry: either on a claim-by-claim basis, or as a single inquiry that encompasses all the claims, also known as the "whole-case" approach. Unfortunately, the Third Circuit has not had the occasion to endorse either method; however, the Fourth Circuit, which includes district courts in West Virginia, has explicitly adopted the "whole-case" approach. *See South Carolina v. AU Optronics Corp.,* 699 F.3d 385 (4th Cir.2012), *cert. denied,* No. 12–911, 2014 U.S. LEXIS 787 (U.S. Jan. 21, 2014). While Defendants argue that this Court should adopt the claim-by-claim approach set forth by the Fifth Circuit, *see Louisana ex rel. Cadwell v. Allstate Ins. Co.,* 536 F.3d 418, 430 (5th Cir.2008), I find that the "whole-case" approach is supported by the weight of the authorities around the country.

In reaching my conclusion in this regard, I start with the Third Circuit's general proposition that in deciding whether a state is a real party in interest, courts must look to the "essential nature and effect of the proceeding." *Ramada Inn,* 598 F.2d at 1307. In my view, that language comports with examining the nature of the pleadings as a whole, rather than analyzing one claim at a time. This broader approach is also consistent with the Supreme Court's caution that restraint is particularly important in the removal context in light of the longstanding policy of strictly construing the statutory procedures for removal, *see Syngenta Crop Protection, Inc. v. Henson,* 537 U.S. 28, 32, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002), as well as the sovereignty concerns raised by asserting federal jurisdiction over cases brought by states in their own courts. *See Franchise Tax. Bd. V. Constr. Laborers Vacation Trust,* 463 U.S. 1, 21 n. 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) ( "[C]onsiderations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it.").

West Virginia ex rel. McGraw v. Bristol-Myers Squibb Co., Slip Copy (2014)
2014 WL 793569

Case 3:14-cv-00591-MEM Document 143-3 Filed 03/23/16 Page 74 of 78

In fact, the claim-by-claim analysis has been questioned by a number of courts. *See Madigan,* 665 F.3d at 773–74 ("federal courts are [not] required to deviate from the traditional 'whole complaint' analysis when evaluating whether a State the real party in interest in a *parens patriae* case") (quotations and citations omitted); *In re TFT–LCD (Flat Panel) Antitrust Litig.,* MDL No. 1827, 2011 U.S. Dist. LEXIS 17793, 2011 WL 560593, *3 (N.D.Cal. Feb.15, 2011); *Missouri ex rel. Koster v. Portfolio Recovery Assocs., Inc.,* 686 F.Supp.2d 942, 945–46 (E.D.Mo.2010); *Illinois v. SDS West Corp.,* 640 F.Supp.2d 1047, 1050–53 (C.D.Ill.2009); *MyInfoGuard, LLC v. Sorrell,* No. 12–074, 2012 U.S. Dist. LEXIS 161070, at * (D.Vt. Nov. 9, 2012). As a result, the "whole-case" approach has emerged as the majority rule. *See Purdue Pharma L.P. v. Kentucky,* 704 F.3d 208, 219 (2d Cir.2013); *Nevada v. Bank of Am. Corp.,* 672 F.3d 661, 669–70 (9th Cir.2012); *Ohio v. GMAC Mortg., LLC,* 760 F.Supp.2d 741, 745 (N.D.Ohio 2011) ("[A] majority of jurisdictions ... have looked at a state's complaint as a whole to determine whether the state is the real-party-in-interest."). In light of the attendant reasoning of the above-cited cases, I adopt the whole-case approach.

**\*5** Applying that approach, I find that the State is the real party in interest in this enforcement action. I do not find convincing Defendants' argument that the Complaint "overwhelmingly" seeks to vindicate the specific interests of PEIA, not the State in general. The fact that the State, on behalf of PEIA, also seeks recovery of prescription drug costs expended by PEIA does not undermine the State's broader interest in its case. *Accord Hood v. AstraZeneca Pharmas., LP,* 744 F.Supp.2d 590, 596 (N.D.Miss.2010) ("The fact that another party may benefit from a favorable resolution of this case does not minimize or negate the State's substantial interest.").

To be clear, the State asserts causes of action, *inter alia,* for violations of the CCPA, and in that connection, the State seeks civil penalties, as well as a statewide injunction to enjoin Defendants from engaging in unfair or deceptive practices in violation of West Virginia law in the future. [2] As to the civil penalties, the State is seeking up to $5,000 for each willful violation of the CCPA by Defendants. It is important to note that these penalties sought by the State are distinct from any particular interests of private parties because monies received under § 46A–7–111(2) enure to the State alone. *CVS Pharmacy,* 748 F.Supp.2d at 590. And, it is "well accepted that a state is the real party in interest when it brings a claim for civil penalties because such awards add only to the state's coffers rather than any individual's bank

account." *West Virginia ex rel. McGraw v. Comcast Corp.,* 705 F.Supp.2d 441, 447 (E.D.Pa.2010); *Connecticut v. Levi Strauss & Co.,* 471 F.Supp. 363, 372 (D.Conn.1979).

[2] Contrary to Defendants' assertion, as I have fully explained during the hearing, I find that Plaintiff's request for injunctive relief is not moot, despite Defendants' representation that they have currently ceased promotion for Plavix. Tr., T50:3–T52:19. Indeed, for the purposes of this remand motion, I take Plaintiff's pleadings as true. And, because the Complaint alleges that "[a]t all times material herein BMS/Snofi engaged in illegal marketing practices in West Virginia to promote the use of Plavix by affirmatively representing Plavix was a superior drug to aspirin for certain indicated usages," Compl., ¶ 21, Plaintiff makes clear that the marketing of Plavix is allegedly still ongoing. Therefore, the allegations do not make the injunctive relief moot.

Moreover, the Attorney General of West Virginia is expressly charged with enforcing certain provisions of the CCPA. *See* W. Va.Code § 46A–7–101, *et seq.* And, based on that authority, as a general matter, the Attorney General advances a quasi-sovereign interest when the State seeks relief under the CCPA for the protection and promotion of consumer welfare in the process. *See West Virginia ex rel. McGraw v. CVS Pharm., Inc.,* 748 F.Supp.2d 580, 595 (S.D.W.Va.2010), *aff'd* 646 F.3d 169 (4th Cir.2011); *West Virginia ex rel. McGraw v. Fast Auto Loans, Inc.,* No. 12–64, 2013 WL 142868 (N.D.W.Va. Jan.11, 2013); *West Virginia ex rel. McGraw v. JPMorgan Chase & Co.,* 842 F.Supp.2d (S.D.W.Va.2012).

Taken the pleadings as a whole, I am satisfied that the State has concrete interests and a substantial stake in the litigation; put simply, the benefits of the remedies that the State has sought flow to the State as a whole. *Accord Connecticut v. Moody's Corp.,* No. 10–CV–546, 2011 U.S. Dist. LEXIS 780, 2011 WL 63905 at *3–4 (D.Conn.Jan.5, 2011); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cavicchia,* 311 F.Supp. 149, 155 (S.D.N.Y.1970) (quoting *Missouri, K. & T. Ry. Co. of Kansas v. Missouri R. & Warehouse Comm'rs,* 183 U.S. 53, 59, 22 S.Ct. 18, 46 L.Ed. 78 (1901) ("It may be fairly held that the State is such [a] real party [in interest] when the relief sought is that which enure to it alone, and in its favor the judgment or decree, if for the plaintiff, will effectively operate.")); *In re TFT–LCD,* 2011 WL560593; *Arizona ex rel. Horne v. Countrywide Fin. Corp.,* No. 11–131, 2011 WL 9955963 (D.Ariz. Mar. 21, 2011) (holding that Arizona had an interest in the enforcement of its own states' consumer fraud laws); *Nevada,* 672 F.3d at 670 (finding that Nevada is

Case 3:14-cv-00591-MEM Document 143-3 Filed 03/23/16 Page 75 of 78

West Virginia ex rel. McGraw v. Bristol-Myers Squibb Co., Slip Copy (2014)
2014 WL 793569

the real party in interest because it had an interest in protecting the integrity of the mortgage loan service industry through enforcement of its deceptive trade practices statutes).

**\*6** Also, I underscore the fact that in this suit, the State is seeking the remedy of injunctive relief. This alone supports the position that the State is the only real party in interest. *See La. ex rel. Caldwell v. Allstate Ins. Co.,* 536 F.3d 418, 430 (5th Cir.2008); *Jim Hood ex rel. Miss. v. JP Morgan Chase & Co.,* 737 F.3d 78, 88 n. 8 (5th Cir.2013); *Comcast,* 705 F.Supp.2d at 447 ("Courts have universally accepted the notion that a state is the real party in interest when it brings a claim for injunctive relief because such a remedy protects both current and prospective consumers ...."); *Hood ex rel. Miss. v. Bristol–Myers Squibb Co.,* 2013 U.S. Dist. LEXIS 90540, at \*13–14 (N.D.Miss. Jun. 27, 2013).

Next, I address Defendants' contention that a duo of West Virginia Supreme Court of Appeals cases, *White v. Wyeth,* 227 W.Va. 131, 705 S.E.2d 828 (W.Va.2010) and *West Virginia ex rel. McGraw v. Bear, Stearns & Co.,* 217 W.Va. 573, 618 S.E.2d 582 (W.Va.2005), precludes the State from bringing CCPA claims because the state consumer fraud statute should not apply to the marketing of prescription drugs. The West Virginia Supreme Court held in *White* that the CCPA does not apply to **private** causes of action involving prescription drugs because doctors, rather than consumers, select which drugs to prescribe to an individual, and consumers are thereby protected by the doctor's medical judgment—which is known as the learned intermediary doctrine. *White,* 705 S.E.2d at 837. I do not find *White* helpful under the circumstances of this case because, in my view, *White* 's decision is limited to private causes of action.

The distinguishing fact here is that the sole plaintiff is the State of West Virginia, and that the State brought this suit to vindicate its quasi-sovereign interests under the CCPA. In that regard, I find another decision of the West Virginia Supreme Court instructive. In *West Virginia ex rel. McGraw v. Johnson & Johnson,* the State sued Johnson & Johnson for violations of the CCPA for its allegedly deceptive and misleading promotion of two of its prescription drugs. 226 W.Va. 677, 704 S.E.2d 677, 683–84 (W.Va.2010). Identical to the instant matter, the Attorney General, there, sought civil penalties and injunctive relief pursuant to the CCPA. While there is no explicit discussion regarding the learned intermediary doctrine, the Court, nevertheless, permitted the State to pursue CCPA claims against the drug company.[3] *Id.* Moreover, there is no provision in W. Va.Code §§ 46A–7–

101, *et seq.,* which exempts pharmaceutical companies from liability. Rather, based on the statutory language, the purpose of the CCPA is to "protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action." *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516, 523 (W.Va.1995). Indeed, Defendants have not cited to any authority, West Virginia or otherwise, that support their contention in this regard.

3        I need not engage in a lengthy discussion why the learned intermediary doctrine does not apply in *parens partiae* cases in West Virginia, because my conclusion here is supported by the West Virginia Supreme Court's decision in *Johnson & Johnson.* However, I note that when the State brings consumer fraud claims involving prescription drugs pursuant to W. Va.Code §§ 46A–7–111(2), the State does not need to establish reliance or causation, which is a required element in private causes of actions brought by individuals under the CCPA. In the latter scenario, because individuals must prove damages "as a result of" a defendant's deceptive act, the application of the learned intermediary doctrine is more appropriate. As such, I do not find that *White* is dispositive of the issues in this case.

**\*7** Furthermore, Defendants claim that the *Bear, Stearns* decision also precludes the State from bringing CCPA claims concerning an industry—prescription drugs—that is highly regulated by the federal government. I find that argument unconvincing. In that case, the West Virginia Supreme Court disallowed the State from bringing CCPA claims involving conduct that is ancillary to the buying and selling of securities, a highly specialized and complex industry. *Bear, Stearns,* 618 S.E.2d at 587. Importantly, the Court specifically stated that "[t]he consumer protection act is essentially designed to protect consumers in the relatively common cash and credit transactions in which they engage on a regular basis ." *Id.* There is no doubt that the purchase of prescription drugs is more akin to consumer goods than the types of complex regulated **conduct** involved in *Bear, Stearns.* As such, I do not find *Bear, Stearns* dispositive or relevant.

Rather, as the West Virginia Supreme Court has explained, prescription drug cases brought under the CCPA provide an instance in which the federal regulation and the state law consumer protection statutes "serve complementary, though somewhat overlapping, roles." *Johnson & Johnson,* 704 S.E.2d at 687, n. 6. In that regard, the "degree of federal regulation" in the pharmaceutical industry does not bar the

West Virginia ex rel. McGraw v. Bristol-Myers Squibb Co., Slip Copy (2014)
Case 3:14-cv-00591-MEM Document 143-3 Filed 03/23/16 Page 76 of 78
2014 WL 793569

State's claims in the present case because the CCPA claims asserted against Defendants are complementary to any federal regulations. *Id.*

Accordingly, based on the foregoing, I find that the State of West Virginia is a real party in interest, [4] and therefore, diversity jurisdiction is lacking.

[4]   Because I find that the State is a real party in interest, I do not address the ancillary issue whether PEIA is an arm of the State.

### IV. Federal Question Jurisdiction

Finally, the State maintains that remand is appropriate because the state law claims asserted here do not explicitly arise under federal law, nor do they raise a federal issue that is actually disputed and substantial. As explained below, the Court agrees with Plaintiff that federal question jurisdiction is lacking and that remand is appropriate.

In order to determine whether there is federal question subject matter jurisdiction, the Court must look to Plaintiff's complaint and cannot consider potential federal defenses. *See Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Indeed, the majority of cases that come within federal question jurisdiction are those in which federal law creates the cause of action. *See Id.* However, "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005) (citation omitted). The Supreme Court has recently reaffirmed that the " 'special and small category' of cases" in which federal question jurisdiction will predominate over state-law claims that implicate significant federal issues is "slim." *Gunn v. Minton,* —— U.S. ——, 133 S.Ct. 1059, 185 L.Ed.2d 72 (Feb. 20, 2013) (quoting *Empire Healthchoice Assurance v. McVeigh,* 547 U.S. 677, 699, 701, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006)).

**\*8** To that end, the Supreme Court has addressed the circumstances in which federal question jurisdiction can predominate over a state law claim that implicates a federal issue:

> [F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually

disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met ... jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.

*Gunn,* 133 S.Ct. at 1065.

Importantly, it is not sufficient that the federal issue be significant to the particular parties in the immediate suit; indeed, that will always be true when the state claim "necessarily raise[s]" a disputed federal issue, as *Grable* separately requires. "The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Id.* at 1066.

Here, Defendant argues that Plaintiff's state law consumer fraud related claims necessarily raise a stated and disputed federal issue, because resolution of those claims requires the application of the Food, Drug, and Cosmetic Act ("FDCA"). Specifically, Defendant argues that the FDCA must be applied to determine the accuracy and sufficiency of Plavix's labeling and marketing, and in doing so, significant federal issues are implicated. The Court assumes for the purposes of this motion, without deciding, that there are stated federal issues in this case that are actually disputed; however, that does not end the Court's inquiry.

Defendant has not shown that the federal issues in this case are substantial. A substantial federal issue is "a serious federal interest in claiming the advantages thought to be inherent in a federal forum," one that "justif[ies] resort to the experience, solicitude, and hope of uniformity that a federal forum offers." *Grable,* 545 U.S. at 312–13. As one court—addressing an identical issue—cogently reasoned:

> the application of the FDCA regulatory regime is not a federal interest that requires the experience, solicitude, or uniformity provided by federal courts. To the contrary, the Supreme Court has recognized that state courts have traditionally handled

Case 3:14-cv-00591-MEM Document 143-3 Filed 03/23/16 Page 77 of 78

West Virginia ex rel. McGraw v. Bristol Myers Squibb Co., Slip Copy (2014)
2014 WL 793569

state claims with embedded FDCA standards. Indeed, the Supreme Court [in *Merrell Dow* ] noted that even a novel FDCA issue raised as part of a state cause of action would not typically justify the exercise of federal jurisdiction.

*Or. ex rel. Kroger v. Johnson & Johnson,* 832 F.Supp.2d 1250, 1257 (D.Or., 2011).

Indeed, regarding the FDCA regime in particular, the Supreme Court has stressed Congress' intent (1) not to create a federal remedy for violations of the FDCA, while (2) selectively declining to pre-empt most state causes of action based on FDCA standards. *Merrell Dow,* 478 U.S. at 814;*see Wyeth v. Levine,* 555 U.S. 555, 574–75, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009); *see also Grable,* 545 U.S. at 318. To that end, "Congress has affirmatively decided to keep such actions out of federal courts while allowing overlapping regulation and litigation in state forums."*Marcus v. Medical Initiatives, Inc.,* No. 12–2864, 2013 U.S. Dist. LEXIS 26759, at * 14 (Md.Fla. Feb. 27, 2013). Based on these Supreme Court precedents, there is a strong suggestion that there is no real need in drug-related consumer protection cases for the experience, solicitude, and hope of uniformity that a federal forum offers. More compelling, within the context of the FDCA regime in particular, the Supreme Court [in *Merrell Dow* ] has concluded "that the presence of a claimed violation of the [FDCA] statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Merrell Dow,* 478 U.S. at 814.

**\*9** Here, the disputed factual issue centers on whether Defendants acted in an unfair and deceptive manner in their marketing and labeling of Plavix. Other than the fact that Plaintiff's claims may implicate the FDCA—that is, the FDCA may be consulted or analyzed in establishing certain elements of the state law claims—that in and of itself is not substantial under *Garble* to support federal question jurisdiction. For one, this case represents the very type of action the Supreme Court in *Merrell Dow* has cautioned against in finding federal question jurisdiction. Furthermore, the lack of a federal cause of action under the FDCA weighs heavily in favor of the conclusion that the federal issues in this case are not substantial.

Lastly, Defendants also have not shown that recognizing federal question jurisdiction in this case would not disrupt the balance struck by Congress between state and federal judicial

responsibilities. The substantiality and federalism prongs of *Grable* are closely intertwined. *Gunn,* 133 S.Ct. at 1065. For the same reasons that an embedded FDCA standard does not generally constitute a "substantial" federal issue, the Supreme Court has concluded that Congress did not intend to preclude state courts from hearing FDCA-related actions. *See Wyeth,* 555 U.S. at 574. Thus, if I were to find federal jurisdiction here, I could potentially open the federal courthouse door to a tremendous number of cases, and could therefore upset the congressionally intended division between state and federal courts. *See Grable,* 545 U.S. at 318. *See, e.g., Caldwell ex rel. La. v. Bristol Myers Squibb,* No. 12–443, 2012 U.S. Dist. LEXIS 126042, at * (W.D.La. Jun. 12, 2012) ("were this Court to find that there is federal-question jurisdiction over this action because the FDCA ... is implicated, that finding would be inconsistent with Congress's judgment regarding the sound division of labor between state and federal courts.") (quotations and citations omitted); *Marcus,* 2013 U.S. Dist. LEXIS 26759 at * 16; *County of Santa Clara ex rel. Marquez v. Bristol Myers,* No. 12–3256, 2012 U.S. Dist. LEXIS 133405, at * (N.D.Cal. Sep. 17, 2012) ("State courts 'frequently handle state-law consumer protection suits' that refer to federal issues.") (quoting *Nevada,* 672 F.3d at 675).

In sum, I do not find that this case falls within the narrow exception carved out by *Garble* to justify federal question jurisdiction.

## CONCLUSION

As the removal party, Defendants have the burden of establishing the existence of subject matter jurisdiction; Defendants have failed to do so. Because Plaintiff has only asserted state-law claims, Defendants have failed to demonstrate that substantial federal law issues are implicated in this case for the Court to exercise federal question jurisdiction. Moreover, Defendants also have failed to establish jurisdiction under CAFA. Finally, because the State is the real party in interest, the parties are not diverse in citizenship; this action does not fall within this Court's diversity jurisdiction. Consequently, Plaintiffs' motion for remand is **GRANTED**, and this matter is transferred to the United States District Court for the Northern District of West Virginia for the purpose of remanding this case to the Circuit Court of Marshall County, West Virginia.

**\*10** An appropriate Order shall follow.

**All Citations**

Slip Copy, 2014 WL 793569

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.