## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE SUESSENBACH FAMILY LIMITED PARTNERSHIP, JAMES S. SUESSENBACH, and GINA M. SUESSENBACH, on behalf of themselves and all others similar situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>ACCESS MIDSTREAM PARTNERS, L.P. and CHESAPEAKE ENERGY CORP.,<br><br>                              Defendants. | No. 3:14-cv-001197- MEM |
| JAMES L. BROWN and ALICE R. BROWN, on behalf of themselves and all others similar situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>ACCESS MIDSTREAM PARTNERS, L.P., CHESAPEAKE ENERGY CORP., and DOMENIC J. DELL'OSSO, JR.,<br><br>Defendants. | No. 3:14-cv-00591-MEM |

**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARILY CERTIFYING A CLASS FOR SETTLEMENT PURPOSES, APPROVING FORM AND MANNER OF CLASS NOTICE, AND SETTING DATE FOR FINAL APPROVAL HEARING ON FINAL <u>APPROVAL OF SETTLEMENT</u>**

These actions, *Brown v. Access Midstream Partners, L.P., et al*., Case No. 3:14-cv-00591-MEM, and *The Suessenbach Family Limited Partnership v. Access Midstream Partners, L.P*., Case No. 3:14-cv-01197-MEM, that are pending in United States District Court for the Middle District of Pennsylvania (together, the "Actions"), involve claims for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO), 18 U.S.C. §§ 1961-1968, and state law claims for unjust enrichment, conversion, and civil conspiracy.  The terms of the Settlement are set out in the Settlement Agreement fully executed as of August 9, 2018 (the "Settlement Agreement"), by counsel on behalf of the Plaintiffs and Defendant Chesapeake Energy Corporation ("Chesapeake").

Pursuant to the Plaintiffs' Motion for Preliminary Approval filed on August 9, 2018, the Court preliminarily considered the Settlement to determine, among other things, whether the Settlement is sufficient to warrant the issuance of notice to members of the proposed Settlement Class.  Upon reviewing the Settlement Agreement and the matter having come before the Court at the _____ __, 2018 hearing, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

1.      **Settlement Class Findings** – Solely for the purposes of the Settlement, the Court preliminarily finds that the requirements of the Federal Rules of Civil Procedure, the United States Constitution, the Rules of this Court and any other applicable law have been met as to the Settlement Class defined below, in that:

a)      The Court preliminarily finds, for purposes of settlement only, that, as required by FED. R. CIV. P. 23(a)(1), the Settlement Class is ascertainable from records maintained by Chesapeake and from other objective criteria, and the members of the Settlement Class are so numerous that their joinder before the Court would be impracticable.

1

b)      The Court preliminarily finds, for purposes of settlement only, that, as required by FED. R. CIV. P. 23(a)(2), there are one or more questions of fact and/or law common to the Settlement Class.

c)      The Court preliminarily finds, for purposes of settlement only, that, as required by FED. R. CIV. P. 23(a)(3), the claims of the Plaintiffs are typical of the claims of the Settlement Class.

d)      The Court preliminarily finds, for purposes of settlement only, that, as required by FED. R. CIV. P. 23(a)(4), the Plaintiffs will fairly and adequately protect the interests of the Settlement Class in that: (i) the interests of the Plaintiffs and the nature of their alleged claims are consistent with those of the members of the Settlement Class; and (ii) there appear to be no conflicts between or among the Plaintiffs and the Settlement Class.

e)      The Court preliminarily finds, for purposes of settlement only, that, as required by FED. R. CIV. P. 23(b)(1), the prosecution of separate actions by individual members of the Settlement Class would create a risk of: (i) inconsistent or varying adjudications as to individual Settlement Class members that would establish incompatible standards of conduct for the parties opposing the claims asserted in these Actions; and/or (ii) adjudications as to individual Settlement Class members that, as a practical matter, would be dispositive of the interest of the other members not parties to the individual adjudications, or substantially impair or impede the ability of such persons to protect their interests.

f)      The Court preliminarily finds, for purposes of settlement only, that, as required by FED. R. CIV. P. 23(g), Class Counsel is capable of fairly and adequately representing the interests of the Settlement Class, in that Class Counsel: (i) have done appropriate work

identifying or investigating potential claims in the Actions; (ii) are experienced in handling class actions; and (iii) have committed the necessary resources to represent the Settlement Class.

      2.    **Class Certification** – The Court, in conducting the settlement approval process required by FED. R. CIV. P. 23, preliminarily certifies solely for purposes of settlement the following class under FED. R. CIV. P. 23(b)(1) (the "Settlement Class"):

> All individuals and entities, including their predecessors and successors-in-interest, who are or have been lessor parties to one or more Pennsylvania Leases, to the extent of their interests in such Pennsylvania Leases.

> "Pennsylvania Leases" has been defined to mean each and every oil and gas lease that (a) covers a leasehold located in Pennsylvania except for the portions of Southwestern Pennsylvania covered by the Gas Gathering Contract Cost of Service – South Marcellus, (b) does not contain a Market Enhancement Clause, and (c) is or has been owned, in whole or in part, by Chesapeake Appalachia, L.L.C. as a lessee, according to the business records maintained by Chesapeake. Pennsylvania Leases does not include any lease Chesapeake Appalachia, L.L.C. owned in whole or in part as a lessee, but in which Chesapeake Appalachia, L.L.C. is not a lessee as of the date the Preliminary Approval Order and for which no Gas was produced during the time that Chesapeake Appalachia, L.L.C. was a lessee.

Preliminary certification of a preliminary Settlement Class pursuant to the terms of the Settlement Agreement shall not constitute and does not constitute, and shall not be construed or used as, an admission, concession, or declaration by or against Defendants that (except for the purposes of the Settlement) these Actions or any other action is appropriate for class treatment under FED. R. CIV. P. 23, or any similar federal or state class action statute or rule, for litigation purposes.

      3.    **Appointments** – The Court preliminarily appoints (a) James, L. Brown, Alice R. Brown, The Suessenbach Family Limited Partnership, James S. Suessenbach, and Gina M. Suessenbach ("Plaintiffs") as the representatives for the Settlement Class; and (b) Peter A. Muhic, Robert D. Schaub, Noah Axler, Michael D. Donovan, and Robert E. McCann, and their respective firms ("Class Counsel") as counsel for the Settlement Class.   The Court hereby approves the

retention of Epiq Class Action & Claims Solutions, Inc. to perform the duties of the Settlement Administrator set forth in the Settlement Agreement. The Settlement Administrator shall be exclusively responsible for overseeing the distribution of the Settlement Funds to the Settlement Class Members in accordance with the Plan of Administration and Distribution ("Plan of Administration") based on the calculations of the Settlement Administrator; and (2) shall be responsible for directing the Settlement Administrator to take reasonable steps to properly allocate the Settlement Funds to the Settlement Class Members.

4. **Preliminary Findings Regarding Proposed Settlement** – The Court preliminarily finds that (a) the proposed Settlement resulted from extensive arm's-length negotiations with the assistance of an experienced mediator, (b) the Settlement Agreement was executed only after Class Counsel had conducted appropriate investigation and discovery regarding the strengths and weaknesses of Plaintiffs' claims, (c) Class Counsel have concluded that the proposed Settlement is fair, reasonable, and adequate, and (d) the proposed Settlement is sufficiently fair, reasonable, and adequate to warrant sending notice of the proposed Settlement to the Settlement Class. Having considered the essential terms of the Settlement Agreement under the recommended standards for preliminary approval of settlements as set forth in relevant jurisprudence, the Court finds that those whose claims would be settled, compromised, dismissed, and/or released pursuant to the Settlement should be given notice and an opportunity to be heard regarding final approval of the Settlement and other matters.

5. **Final Approval Hearing** – A hearing is scheduled for _____ __, 2018 at _:__ _.m. (the "Final Approval Hearing") to determine, among other things:

- Whether the Settlement merits final approval as fair, reasonable, and adequate;

- Whether the Actions should be dismissed with prejudice pursuant to the terms of the Settlement;

- Whether the notice plan proposed by the Parties and preliminarily approved herein, (a) constitutes the best practicable notice, (b) constitutes notice reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the litigation, their right to object to the Settlement, and their right to appear at the Final Approval Hearing, (c) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to notice, and (d) meets all applicable requirements of the Federal Rules of Civil Procedure and any other applicable law;

- Whether Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Settlement;

- Whether the proposed Plan of Administration should be approved; and

- Whether the application for Attorneys' Fees and reimbursement of Litigation Expenses and Incentive Award Payments to the Plaintiffs are fair and reasonable and should be approved.

6.    **Class Notice** – Plaintiffs have presented to the Court a proposed form of Class Notice, appended to the Settlement Agreement as Exhibit A.  The Court finds that such form fairly and adequately: (a) describes the terms and effects of the Settlement Agreement, the Settlement, and the Plan of Administration; (b) notifies the Settlement Class that Class Counsel will seek Attorneys' Fees and reimbursement of Litigation Expenses from the Settlement Funds, and for an Incentive Award Payment of up to $10,000 for each of the Plaintiffs for their services in such capacity; (c) gives notice to the Settlement Class of the time and place of the Final Approval

Hearing; (d) describes how the recipients of the Class Notice may object to any of the relief requested; (e) describes how a Settlement Class Member may file a request for exclusion from the Settlement. The Plaintiffs have proposed the following manner of communicating the notice to members of the Settlement Class, and the Court finds that such proposed manner is the best notice practicable under the circumstances. Accordingly, the Court directs that Class Counsel shall:

- By no later than _____ __, 2018, cause the Class Notice, with such non-substantive modifications thereto as may be agreed upon by the Parties, to be provided by first-class mail, postage prepaid, to the last known address of each member of the Settlement Class who can be identified by reasonable effort.

- By no later than _____ __, 2018, cause the Class Notice to be published on the website identified in the Class Notice, www.XXXXXXXX.com, which will also host and make available copies of all Settlement-related documents, including the Settlement Agreement.

7.    **CAFA Notice** – The form of notice ("CAFA Notice") and notice procedures proposed by Defendants pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711, et seq. ("CAFA") comply with the requirements of CAFA and are hereby approved. Defendants shall mail the CAFA Notice no later than _____ __, 2018.

8.    **Petition for Attorneys' Fees, Reimbursement of Litigation Expenses and Incentive Award Payments to the Plaintiffs** – Any petition by Class Counsel for Attorneys' Fees, Litigation Expenses and Incentive Award Payments to the Plaintiffs, and all briefs in support thereof, shall be filed no later than _____ __, 2018.

9.      **Briefs in Support of Final Approval of the Settlement** – Briefs and other documents in support of final approval of the Settlement shall be filed no later than _____ __, 2018.

10.     **Objections to Settlement** – Any member of the Settlement Class or authorized recipient of the CAFA Notice may file an Objection to the fairness, reasonableness, or adequacy of the Settlement, to any term of the Settlement Agreement, to the Plan of Administration, to the proposed award of Attorneys' Fees and reimbursement of Litigation Expenses, or to the request for an Incentive Award Payments for the Plaintiffs. An objector must file with the Court a statement of his, her, or its Objection(s), specifying the reason(s), for each such Objection made, including any legal support and/or evidence that the objector wishes to bring to the Court's attention or introduce in support of the Objection(s). Any objector who files an Objection to the Settlement must also mail copies of the Objection and any supporting law and/or evidence to Class Counsel and to counsel for the Defendants. The address for filing Objections with the Court and serving objections on counsel are as follows:

> **For Filing:**
>
> Clerk of the Court
> United States District Court, Middle District of Pennsylvania
> United States Courthouse
> 235 N. Washington Ave.
> Scranton, PA 18503
>
> Re:  *Brown v. Access Midstream Partners, L.P., et al.*, Case No. 3:14-cv-00591-MEM; and
>
> *The Suessenbach Family Limited Partnership v. Access Midstream Partners, L.P.*, Case No. 3:14-cv-01197-MEM

**To Class Counsel:**

Peter A. Muhic
Kessler Topaz Meltzer & Check LLP
280 King of Prussia Road
Radnor, PA 19087

Michael D. Donovan
Donovan Litigation Group, LLC
15 Saint Asaphs Rd.
Bala Cynwyd, PA 19004

**To Defendants' Counsel:**

Seamus C. Duffy
Akin Gump Straus Hauer & Feld LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia PA 19103

Any objector or his, her, or its counsel (if any and retained at the objector's expense) must file the Objection and supporting materials with the Court no later than _____ __, 2018, and any objector must serve copies of the Objection (together with any supporting materials) on counsel listed above so that such Objection is postmarked no later than _____ __, 2018. Service on counsel may be effected by email, but service on the Court must be by first class mail. If an objector hires an attorney to represent him, her, or it for the purposes of making an objection pursuant to this paragraph, the attorney must file the notice of appearance with the Court postmarked no later than _____ __, 2018 and also serve the notice of appearance on counsel listed above so that it is postmarked no later than _____ __, 2018. Any objector who does not timely submit a written Objection complying with the terms of this paragraph shall be deemed to have waived, and shall be foreclosed from raising, any objection to the Settlement, and any untimely Objection shall be barred. Any responses to Objections shall be filed with Court and served on opposing counsel no later than _____. There shall be no reply briefs.

11.    Any additional briefs the Parties may wish to file in support of the Settlement shall be filed no later than _____.

12.    **Appearance at Final Approval Hearing** – Any objector who files and serves a timely, written Objection in accordance with paragraph 10 above may also appear at the Fairness Hearing either in person or through qualified counsel retained at the objector's expense.  Objectors or their attorneys intending to appear at the Final Approval Hearing must file a notice of intention to appear (and, if applicable, the name, address, and telephone number of the objector's attorney) with the Court by no later than _____ __, 2018.  Any objector who does not timely submit a notice of intention to appear in accordance with this paragraph shall not be permitted to appear at the Final Approval Hearing, except for good cause shown.

13.    **Administrative Costs** – Chesapeake shall be obligated to pay Administrative Costs up to $50,000 (Fifty Thousand U.S. Dollars ).  Administrative Costs in excess of $50,000, if any, shall be paid from the Settlement Funds.

14.    **Service of Papers** – Defendants' counsel and Class Counsel shall promptly furnish each other with copies of any and all Objections to the Settlement that come into their possession.

15.    **Termination of Settlement** – If the Settlement Terminates in accordance with the terms of the Settlement Agreement, this Order shall become null and void, ab initio, and shall be without prejudice to the rights of the Parties, all of whom shall revert to their positions as of the day immediately before the Settlement Agreement execution date.

16.    **Use of Order** – This Order is not admissible as evidence for any purpose against Defendants in any pending or future litigation.  This Order shall not be construed or used as an admission, concession, or declaration by or against Defendants of any finding of fiduciary status, fault, wrongdoing, breach, or liability.  This Order shall not be construed or used as an admission,

concession, or declaration by or against Plaintiffs or the Settlement Class that their claims lack merit, or that the relief requested in the Actions is inappropriate, improper, or unavailable. This Order shall not be construed or used as an admission, concession, declaration, or waiver by any Party of any arguments, defenses, or claims he, she, or it may have, including, but not limited to, any objections by Defendants to class certification, in the event that the Settlement Agreement Terminates. Moreover, the Settlement Agreement and any proceedings taken pursuant to the Settlement Agreement are for settlement purposes only. Neither the fact of, nor any provision contained in, the Settlement Agreement or its exhibits, nor any actions taken thereunder shall be construed as, offered into evidence as, received in evidence as, and/or deemed to be evidence of a presumption, concession, or admission of any kind as to the truth of any fact alleged or validity of any defense that has been, could have been, or in the future might be asserted.

17.    **Jurisdiction** – The Court hereby retains jurisdiction for purposes of implementing the Settlement, and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the Settlement as may from time to time be appropriate, and to resolve any and all disputes arising thereunder.

18.    **Continuance of Final Approval Hearing** – The Court reserves the right to continue the Final Approval Hearing without further written notice.

SO ORDERED this _____ day of _____, 2018.


_____
HON. MALACHY E. MANNION
UNITED STATES DISTRICT JUDGE

10

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JAMES L. BROWN and ALICE BROWN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACCESS MIDSTREAM PARTNERS, L.P., *et al.*,<br><br>Defendants. | No. 3:14-cv-0591-MEM |
| THE SUESSENBACH FAMILY LIMITED PARTNERSHIP, JAMES S. SUESSENBACH, and GINA M. SUESSENBACH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACCESS MIDSTREAM PARTNERS, L.P., *et al.*,<br><br>Defendants. | No. 3:14-cv-01197-MEM |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs The Suessenbach Family Limited Partnership, James S. Suessenbach, and Gina M. Suessenbach (the "Suessenbach Plaintiffs"), and James Brown, and Alice Brown (the "Brown Plaintiffs") (collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class, and with consent of Defendant Chesapeake Energy Corporation ("Chesapeake" or "Defendant"), respectfully request entry of an order (1) granting preliminary approval of the proposed Settlement; (2) preliminarily certifying, for settlement purposes only, the proposed Settlement Class; (3) approving the form and content of, and directing the distribution of, the proposed Settlement Notice, annexed to the Settlement Agreement as Exhibit A; and (4) scheduling a Final Approval Hearing.

For the reasons set forth in the accompanying memorandum of law, Plaintiffs submit that the proposed Settlement is fair, reasonable, and adequate. Moreover, the Notice Plan satisfies the requirements of due process and the form and manner of notice is consistent with that used in analogous actions. Accordingly, preliminary approval should be granted, the Settlement Class should be conditionally certified, the Notice Plan should be approved, and a Final Approval Hearing should be scheduled. A form of [Proposed] Order is attached hereto.

Dated:  August 9, 2018                    Respectfully submitted,

**KESSLER TOPAZ
MELTZER & CHECK, LLP**

/s/ Peter A. Muhic
Joseph H. Meltzer (PA 80136)
Peter A. Muhic (PA 73501)
Tyler S. Graden (PA 205844)
Natalie Lesser (PA 309334)
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
Email:  jmeltzer@ktmc.com
            pmuhic@ktmc.com
            tgraden@ktmc.com
            nlesser@ktmc.com

**ROSENN JENKINS &
GREENWALD LLP**
Robert D. Schaub (PA 42466)
15 South Franklin Street
Wilkes-Barre, PA 18711
Tel: (570) 826-5652
Fax: (570) 706-3424
Email:  rschaub@rjglaw.com

*Attorneys for Suessenbach Plaintiffs and the
Class*

**DONOVAN LITIGATION GROUP,
LLC**

/s/ Michael D. Donovan
Michael D. Donovan
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Tel:  (610) 647-6067
Fax:  (610) 647-7215
mdonovan@donovanlitigationgroup.com

2

**AXLER GOLDICH, LLC**
Noah Axler
1520 Locust Street, Suite 301
Philadelphia, Pennsylvania 19102
Tel:  (267) 534-7400
Fax:  (267) 534-7407
naxler@axgolaw.com

**MCCANN & WALL, LLC**
Robert E. McCann
Two Penn Center Plaza
Philadelphia, PA 19102
Tel:  (215) 569-8488
Fax:  (215) 569-8288
rmccann@mccannwallinjurylaw.com

*Counsel for Brown Plaintiffs and the Class*

## <u>CERTIFICATE OF CONCURRENCE</u>

The undersigned hereby certifies that, pursuant to M.D. Pa. Local Rule 7.1, the concurrence of Defendants' counsel was sought in connection with the foregoing motion, and Defendants concur with the relief sought in this motion for settlement purposes only.

<u>/s/ Peter A. Muhic</u>
Peter A. Muhic

<u>/s/ Michael D. Donovan</u>
Michael D. Donovan

4

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2018, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court, is available for viewing and downloading from the ECF system, and will be served by operation of the Court's electronic filing system (CM/ECF) upon all counsel of record.

/s/ Peter A. Muhic
Peter A. Muhic

/s/ Michael D. Donovan
Michael D. Donovan

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JAMES L. BROWN and ALICE BROWN, individually and on behalf of all others similarly situated, | ) ) ) ) No. 3:14-cv-0591-MEM |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ACCESS MIDSTREAM PARTNERS, L.P., *et al.*, | ) ) ) |
| Defendants. | ) ) |

|  |  |
|---|---|
| THE SUESSENBACH FAMILY LIMITED PARTNERSHIP, JAMES S. SUESSENBACH, and GINA M. SUESSENBACH, individually and on behalf of all others similarly situated, | ) ) ) ) No. 3:14-cv-01197-MEM ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ACCESS MIDSTREAM PARTNERS, L.P., *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................................... 3

III.    THE SETTLEMENT AGREEMENT AND TERMS ........................................ 5

        A.      THE PROPOSED SETTLEMENT CLASS ........................................ 5

        B.      THE RELIEF AND SETTLEMENT CONSIDERATION .................. 6

        C.      RELEASE OF CLAIMS ..................................................................... 7

        D.      SETTLEMENT NOTICE AND RIGHT TO OPT OUT ..................... 8

        E.      CLASS COUNSEL FEES AND EXPENSES AND NAMED PLAINTIFF
                SERVICE AWARDS .......................................................................... 9

        F.      PROPOSED SCHEDULE FOLLOWING PRELIMINARY APPROVAL ........ 10

IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............. 11

        A.      THE STANDARD AND PROCEDURES FOR GRANTING PRELIMINARY
                APPROVAL ..................................................................................... 11

        B.      THERE IS A STRONG BASIS TO CONCLUDE THAT THE
                SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ...... 12

                1.      Plaintiffs' Claims Were Thoroughly Investigated Through Discovery .... 12

                2.      The Settlement Negotiations Occurred at Arm's-Length ........ 13

                3.      The Settlement is Fair and Reasonable ................................. 14

V.      THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR SETTLEMENT
        PURPOSES ...................................................................................................... 15

        A.      RULE 23(a) REQUIREMENTS ARE SATISFIED ........................ 16

                1.      Rule 23(a)(1) – "Numerosity" .............................................. 17

                2.      Rule 23(a)(2) – "Commonality" ........................................... 17

                3.      Rule 23(a)(3) – "Typicality" ................................................ 18

                4.      Rule 23(a)(4) – "Adequacy" ................................................. 19

        B.      THE PROPOSED SETTLEMENT CLASS MAY BE CERTIFIED UNDER
                RULE 23(b)(3) .................................................................................. 20

C.     PROPOSED SETTLEMENT CLASS COUNSEL SATISFY RULE 23(g) ........ 21

VI.     THE FORM AND MANNER OF NOTICE ARE PROPER ........................................... 23

VII.     CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Amchem Prods, Inc. v. Windsor*,
   521 U.S. 591 (1997)..............................................................................16, 21, 22

*Brown v. Access Midstream Partners, L.P.*,
   141 F. Supp. 3d 323 (M.D. Pa. 2015)...................................................................4

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) ...............................................................................11

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) .................................................................................12

*Harry M. v. PA Dept. of Public Welfare*,
   No. 10-cv-922, 2013 WL 1386286 (M.D. Pa. Apr. 4, 2013) .............................12

*In re Ikon Office Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)..........................................................................13

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) ...............................................................................14

*Martinez-Santiago v. Public Storage*,
   312 FRD 380 (D.N.J. 2015)................................................................................17

*In re Nat'l Football League Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016) ...............................................................................24

*Petruzzi's, Inc. v. Darling-Delaware Co.*,
   880 F. Supp. 292 (M.D. Pa. 1995)......................................................................16

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) .................................................................18, 19, 21

*Rivera v. Lebanon Sch. Dist.*,
   No. 11-cv-147, 2013 WL 877161 (M.D. Pa. Mar. 8, 2013)...............................23

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009) .........................................................................19, 20

*Sheinberg v. Sorensen*,
   606 F.3d 130 (3d Cir. 2010) ...............................................................20

*In re Shop-Vac Mktg. & Sales Practices Litig.*,
   No. 2380, 2016 WL 7178421 (M.D. Pa. Dec. 9, 2016) ....................................12

*Suessenbach Family Ltd. P'ship v. Access Midstream Partners, L.P.*,
   No. 14-cv-1197, 2015 WL 1470863 (M.D. Pa. Mar. 31, 2015)..........................4

*Sullivan v. DB Invs., Inc*,
   667 F. 3d 273 (3d Cir. 2011) ...............................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011).......................................................................18

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ...............................................................18

**Federal Statutes**

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 .....4

**Rules**

FED. R. CIV. P. 23 .....................................................................*passim*

FED. R. CIV. P. 23(a)..........................................................16, 17, 19, 21

FED. R. CIV. P. 23(a)(1)...................................................................17

FED. R. CIV. P. 23(a)(2)...............................................................17, 18

FED. R. CIV. P. 23(a)(3)...................................................................19

FED. R. CIV. P. 23(a)(4)...............................................................19, 22

FED. R. CIV. P. 23(b) ......................................................................16

FED. R. CIV. P. 23(b)(3)...................................................................21

FED. R. CIV. P. 23(c)(2)...............................................................23, 24

FED. R. CIV. P. 23(e)...................................................................11, 24

FED. R. CIV. P. 23(e)(1)...................................................................23

FED. R. CIV. P. 23(e)(2) ............................................................................11

FED. R. CIV. P. 23(g) .....................................................................20, 22, 23

FED. R. CIV. P. 23(g)(1)(A) ...................................................................22, 23

FED. R. CIV. P. 23(h) ...............................................................................25

## I.    INTRODUCTION

Plaintiffs[1] on behalf of themselves and all others similarly situated, by and through their counsel, respectfully move the Court for preliminary approval of the proposed Settlement set forth in the Settlement Agreement.[2]

Plaintiffs, with the consent of Defendants Chesapeake Energy Corporation ("Chesapeake"), Domenic J. Dell'Osso, Williams Partners, L.P. (f/k/a Access Midstream Partners, L.P. ("Access")) ((collectively "Defendants"),[3] request that the Court enter an Order:  (1) granting preliminary approval of the proposed Settlement; (2) preliminarily certifying, for settlement purposes only, the proposed Settlement Class[4]; (3) approving the form and content of, and directing the distribution of, the proposed Settlement Notice, annexed to the Settlement Agreement as Exhibit D; and (4) scheduling a Final Approval Hearing.

---

[1] The Suessenbach Family Limited Partnership, James S. Suessenbach, and Gina M. Suessenbach (the "Suessenbach Plaintiffs"), James Brown, and Alice Brown (the "Brown Plaintiffs") (collectively, "Plaintiffs").  All capitalized terms used throughout this brief shall have the meanings ascribed to them in the Settlement Agreement.

[2] The Settlement Agreement is attached to the Declaration of Peter A. Muhic in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Muhic Decl."), as Exhibit 1, filed contemporaneously herewith this brief.

[3] Plaintiffs and Defendants are collectively referred to as the "Parties."

[4] As set forth in Exhibit 1, the Settlement Class is defined as "all individuals and entities, including their predecessors and successors-in-interest, who are or have been lessor parties to one or more Pennsylvania Leases, to the extent of their interests in such Pennsylvania Leases." Ex. 1 at § 1.32.

This litigation has been vigorously contested for nearly four years.  Class Counsel[5] have significant experience litigating numerous complex class actions. After extensive investigation, exchange of discovery, in-depth analysis of the issues presented, consultations with experts, and arm's-length protracted mediations and negotiations with Defendants with the assistance of third-party mediators, including Judge Edward N. Cahn (ret.) and renowned oil and gas mediator John W. Perry, Jr., Plaintiffs are pleased to present this Settlement for approval.  Class Counsel have reached the conclusion that the substantial benefits the Settlement Class will receive as a result of this Settlement are eminently fair, reasonable, and adequate, especially in light of the risks of continued litigation.

Pursuant to the Settlement Agreement, Chesapeake will create a fund that will be used to compensate Settlement Class Members for what Plaintiffs asserted were inflated Post-Production Costs taken by Chesapeake under each Settlement Class Member's Pennsylvania lease.  Significantly, Chesapeake also will provide Settlement Class Members with an alternative basis for how Chesapeake calculates and pays Gas Royalties, which each Settlement Class Member may elect for his or her royalty payments after the Effective Date.  This is an outstanding result for members of the Settlement Class.

---

[5] "Class Counsel" shall refer to Peter Muhic, Robert D. Schaub, Noah Axler, Michael D. Donovan, and Robert E. McCann, and their respective firms.

The Settlement is a fair, reasonable, and adequate resolution of the Actions[6] and satisfies all the prerequisites for preliminary approval, including both the Third Circuit's standards for preliminary approval of the Settlement and the requirements of FED. R. CIV. P. 23. For these reasons, Plaintiffs respectfully request that the Court preliminarily approve the Settlement and enter the proposed Preliminary Approval Order filed contemporaneously herewith.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs have vigorously litigated *Brown* and *Suessenbach* since 2014. The Brown Plaintiffs filed their original complaint on March 28, 2014 in the Middle District of Pennsylvania and on June 20, 2014 the Suessenbach Plaintiffs commenced their action in the same venue. Plaintiffs are lessors to oil and gas leases with Chesapeake Appalachia, L.L.C., governing leaseholds in Pennsylvania. Plaintiffs allege in their complaints that Chesapeake and Access engaged in a scheme to deduct artificially inflated and supra-competitive rates for certain Post-Production Costs from Royalties owed to Plaintiffs and other lessors. *Suessenbach* ECF No. 1 (Class Action Complaint) at ¶¶1, 27.

The Suessenbach Plaintiffs brought five separate causes of action: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"),

---

[6] "Actions" refers to *Brown v. Access Midstream Partners, L.P., et al.*, Case No. 3:14-cv-00591-MEM, and *The Suessenbach Family Limited Partnership v. Access Midstream Partners, L.P.*, Case No. 3:14-cv-01197-MEM.

18 U.S.C. §§ 1961-1968; (2) conspiracy to violate RICO, 18 U.S.C. § 1962(d); (3) unjust enrichment; (4) conversion; and (5) civil conspiracy. *See Suessenbach* ECF No. 1 (Class Action Complaint). On March 31, 2015, the Court denied Defendants' motions to dismiss in *Suessenbach*, upholding the Suessenbach Plaintiffs' federal RICO claims against Defendants, as well as the state law claims. *Suessenbach Family Ltd. P'ship v. Access Midstream Partners, L.P*., No. 14-cv-1197, 2015 WL 1470863 (M.D. Pa. Mar. 31, 2015).

In their Amended Complaint, the Brown Plaintiffs also brought claims for violations of RICO and unjust enrichment. On September 30, 2015, this Court denied Defendants' motions to dismiss the Brown Plaintiffs' claims. *Brown v. Access Midstream Partners, L.P.*, 141 F. Supp. 3d 323 (M.D. Pa. 2015).

On October 2, 2014, the Court consolidated discovery in *Brown* and *Suessenbach*. ECF No. 40. After the Court denied Defendants' motions to dismiss, the Parties conferred regarding ESI custodians, search terms and discovery protocols and then engaged in meaningful discovery, including written discovery, significant productions of data and documents, and the deposition of a Chesapeake employee. The Parties also briefed various discovery related motions. Defendants' production of responsive ESI began in August 2015.

In November 2015, the Parties preliminarily discussed the potential for mediating these Actions. Thereafter, the Parties engaged in arm's length negotiations, including mediating this dispute with the assistance of third-party

mediators, including Judge Cahn and Mr. Perry. In particular, the Parties scheduled a mediation with Judge Cahn (ret.) for December 10, 2015, and participated in an in-person pre-mediation session during which data was examined and the Parties debated issues concerning liability and damages. Unfortunately, the December 2015 mediation was cancelled after the Pennsylvania Attorney General filed a suit against Chesapeake and objected to a proposed settlement in a related action. Subsequently, the Parties continued settlement discussions and then participated in mediation sessions with Judge Cahn and/or Mr. Perry in August 2016, October 2016, November 2016 and March 2017. The Parties continued negotiating between and after the formal mediation sessions, with the assistance of the mediators, until agreeing upon the terms of the Settlement now presented for approval.

## III.  THE SETTLEMENT AGREEMENT AND TERMS

### A.  THE PROPOSED SETTLEMENT CLASS

Plaintiffs seek to certify the following Settlement Class for Settlement purposes only:

> all individuals and entities, including their predecessors and successors-in-interest, who are or have been lessor parties to one or more Pennsylvania Leases, to the extent of their interests in such Pennsylvania Leases.

*See* Ex. 1 (Settlement Agreement) at § 1.32. "Pennsylvania Leases" is defined to mean:

each and every oil and gas lease that (a) covers a leasehold located in Pennsylvania except for the portions of Southwestern Pennsylvania not covered by the Gas Gathering Contract Cost of Service – South Marcellus; (b) does not contain a Market Enhancement Clause; and (c) is or has been owned, in whole or in part, by Chesapeake Appalachia, L.L.C. as a lessee, according to the business records maintained by Chesapeake. Pennsylvania Leases does not include any lease Chesapeake Appalachia, L.L.C. owned in whole or in part as a lessee, but in which Chesapeake Appalachia, L.L.C. is not a lessee as of the date the Preliminary Approval Order and for which no Gas was produced during the time that Chesapeake Appalachia, L.L.C. was a lessee.

*Id.* at § 1.21.

## B.    THE RELIEF AND SETTLEMENT CONSIDERATION

The Settlement provides relief in two parts: compensation for what Plaintiffs alleged were inflated deductions of Post-Production Costs, and the option for Class Members to elect an alternative method for royalty calculations in the future.

First, to address past deductions for Post-Production Costs, Chesapeake is creating a fund with Settlement Funds in the amount of $7,750,000.00. This fund will be used to proportionately compensate Settlement Class Members for royalty deductions of Post-Production Costs by Chesapeake. Ex. 1 (Settlement Agreement) at §§ 1.34, 5.

Each Settlement Class Member's allocated share of the Settlement Funds will be calculated in a two-step process. Settlement Agreement, Ex. D (Plan of Administration) at § 1(b). First, after deducting any court approved fees and payments from the Settlement Funds (including funds for a group of lessors

6

identified as the McNamara and McDonald Lessors in the Settlement Agreement), the total amount of Distribution Funds will be divided by the total amount of Royalty deductions for Post-Production Costs that Chesapeake has taken from Settlement Class Members up to the Effective Date of the Settlement. *Id.* Second, that percentage will then be applied to each Settlement Class Member's total amount of royalty deductions for Post-Production Costs taken by Chesapeake under the Settlement Class Member's Pennsylvania Lease(s), during that Settlement Class Member's term as lessor, up to the Effective Date of the Settlement to determine each Settling Class Member's allocated share of the Distribution Funds. *Id.*

The second form of relief involves the calculation of royalty payments and treatment of Post-Production Costs going forward. Specifically, Chesapeake will provide all Settlement Class Members with two options for the future calculation and payment of Gas Royalties. Option 1 provides that Royalties will continue to be calculated based on Chesapeake's current methodology – as they have been prior to the Effective Date of the Settlement. Ex. 1 (Settlement Agreement) at § 6.1. Option 2 provides that Royalties will be calculated by using a published in-basin index price with no costs deducted from the Royalties. *Id*. at § 6.2.

### C.    RELEASE OF CLAIMS

In exchange for the above relief, Plaintiffs and the Settlement Class release all Settled Claims for the Defendant Releasees. Settled Claims are defined as:

7

any and all claims and causes of action related to Chesapeake's interest in the Pennsylvania Leases of Settlement Class Members that were alleged or could have been alleged in Brown or in Suessenbach, including, but not limited to: (a) any and all claims related to the calculation, amount, payment, and/or reporting of Royalty or Bonus payments made by Chesapeake, either on its own working interest share or on behalf of other working interests, on Gas produced pursuant to a Pennsylvania Lease; (b) any and all claims and causes of action, related to the calculation, amount, payment, and/or reporting of such Royalty or Bonus payments; (c) claims for breach of contract, fraud, conspiracy, breach of implied duties and covenants, unjust enrichment, accounting, declaratory or injunctive relief, unfair or deceptive trade practices under federal or state law, and/or anticompetitive conduct under federal or state antitrust law; (d) challenges to the manner in which sales are made to an affiliated entity, if any; (e) claims that formation, sale, or disposition of assets or equity interests by Chesapeake impacted Royalty payments; and (f) any other challenges to Chesapeake's pricing, sales, or Royalty payment practices. The Settled Claims do not include any claims or causes of action that Plaintiffs and the Settlement Class Members have or may have against persons and entities other than Chesapeake, except that the Settled Claims do include any claims or causes of action that Plaintiffs and the Settlement Class Members have or may have or that could have been asserted against the Defendant Releasees.

Ex. 1 (Settlement Agreement) at §§ 1.28, 12.

## D.    SETTLEMENT NOTICE AND RIGHT TO OPT OUT

The Settlement Administrator[7] will deliver via first-class mail, postage pre-paid, a detailed Settlement Notice, as approved by the Court, to all Settlement Class Members. *See* Ex. 1 (Settlement Agreement) at § 4. The Settlement Notice will explain the terms and conditions of Settlement and will direct recipients to the

---

[7] The Parties have selected Epiq Class Action & Claims Solutions, Inc., a highly skilled and experienced claim administrator, to serve as Settlement Administrator here.

settlement website, where additional information and copies of pertinent pleadings will be available. A toll-free number for obtaining additional information concerning the Settlement will also be provided. *See* Settlement Agreement, Ex. A (Settlement Notice) at 12.

The Settlement Notice will prominently notify Settlement Class Members that they must opt out in order to pursue separately any Settled Claims. *Id.* at 8-9. To successfully opt out, Settlement Class Members may send a letter personally signed by the Settlement Class Member to the Settlement Administrator at the address designated in the Settlement Notice, postmarked on or before the opt out deadline with the information requested in the Notice. *Id.*

Settlement Class Members who choose to remain in the Settlement Class have the opportunity to object or comment on the Settlement. *Id.* at 10-11. Settlement Class Members may send written comments or objections to the Clerk of the Court of the United States District Court, Middle District of Pennsylvania, at the address designated in the Settlement Notice, provided they are received on or before the objection deadline. *Id.*

### E.  CLASS COUNSEL FEES AND EXPENSES AND NAMED PLAINTIFF SERVICE AWARDS

Plaintiffs will ask the Court to award $10,000 to each of the Named Plaintiffs for their service as class representatives and their contributions to the case. With respect to attorneys' fees, Plaintiffs' counsel will move for attorneys'

fees in conjunction with final approval of the Settlement and expect to request up to a maximum of one-third of the Settlement Fund, along with reimbursement of their reasonable litigation expenses.

### F.    PROPOSED SCHEDULE FOLLOWING PRELIMINARY APPROVAL

Plaintiffs, with the consent of Defendants, propose that along with granting preliminary approval of the Settlement Agreement, the Court adopt the schedule set forth below in its Preliminary Approval Order, to allow the Settling Parties to effectuate the various steps in the settlement approval process under the Settlement Agreement.

| Event | Time for Compliance |
|---|---|
| Deadline for mailing of Settlement Notice to Settlement Class Members. | Not more than thirty (30) days after entry of the Preliminary Approval Order |
| Deadline for posting Settlement Notice on the dedicated Settlement website. | Not more than thirty (30) days after entry of the Preliminary Approval Order |
| Deadline for filing of Motion for Final Approval of Settlement and for Attorneys' Fees, Expenses, and Case Contribution Awards | Thirty (30) days prior to the Final Approval Hearing |
| Deadline for filing Objections and Requests to Opt Out of Settlement | Twenty-one (21) days prior to the Final Approval Hearing |
| Deadline for Class Counsel to file with the Court a response to any Objections | Ten (10) days prior to the Final Approval Hearing |
| Deadline for depositing Settlement Funds | Not more than ten (10) business days after entry of the Final Approval Order |

## IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   THE STANDARD AND PROCEDURES FOR GRANTING PRELIMINARY APPROVAL

Plaintiffs present this Settlement to the Court for its review under FED. R. CIV. P. 23(e) which provides in pertinent part that the Court must direct Settlement Notice regarding the Settlement in a reasonable manner and may approve a class action settlement after a hearing and upon finding that the settlement is "fair, reasonable and adequate." FED. R. CIV. P. 23(e)(2).

The Third Circuit explicitly recognizes a strong presumption in favor of voluntary settlements. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). "This presumption [in favor of settlement] is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Id.* (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)); *see In re Shop-Vac Mktg. & Sales Practices Litig.*, No. 2380, 2016 WL 7178421, at *8 (M.D. Pa. Dec. 9, 2016) (noting that settlement agreements should be encouraged).

"Review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing." *Harry M. v. PA Dept. of Public Welfare*, No. 10-cv-922, 2013 WL 1386286, at *1 (M.D. Pa. Apr. 4, 2013). The Third Circuit has adopted the following four-factor test to determine the fairness of a class action settlement at preliminary approval: "(1) the negotiations

occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."[8]  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d at 785.  All of the indicia of fairness are present here.

## B.    THERE IS A STRONG BASIS TO CONCLUDE THAT THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The Settlement was the result of extensive arm's-length negotiations conducted by experienced counsel for all Parties, following meaningful discovery efforts and hard fought litigation.

### 1.    Plaintiffs' Claims Were Thoroughly Investigated

In addition to the pre-suit investigations conducted by Plaintiffs, the discovery conducted here more than satisfies the relatively low threshold necessary for preliminary approval of the Settlement.  *See, e.g.*, *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 181 (E.D. Pa. 2000) (finding that sufficient discovery weighs in favor of settlement because it suggests counsel "are well-informed on the merits of the settlement versus continued litigation.").  Over the course of the Actions, the Parties exchanged formal, comprehensive discovery requests and responses.  In addition to over 130,000 pages of documents, Chesapeake produced

---

[8] Although the Plaintiffs, who are Settlement Class Members, approve the Settlement, whether a fraction of the class objected cannot be fully analyzed until Settlement Notice has been sent.  Accordingly, if the Court preliminarily approves the Settlement and authorizes Settlement Notice, this factor will be addressed in the final approval papers.

substantial data that Plaintiffs and Plaintiffs' consultants reviewed and analyzed pertinent to liability theories as well as damages. Plaintiffs also deposed a representative of Chesapeake. In addition, in the course of the mediations, Defendants produced additional information to Plaintiffs and the Parties engaged in spirited debate about their respective claims and defenses. As a result, the Parties are sufficiently well-informed as to the factual and legal issues relevant to these Actions.

### 2. The Settlement Negotiations Occurred at Arm's-Length

It is Class Counsels' experienced opinion that, given the alternative of long and complex litigation, the risks and uncertainties involved in such litigation, a trial on the merits, and the possibility of later appellate litigation, the availability of prompt relief under the Settlement is meaningful and highly beneficial to the Settlement Class Members. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 259 (3d Cir. 2009) (noting that a settlement that would eliminate delay and expenses and provides immediate benefit to the settlement class strongly militates in favor of settlement approval).

Class Counsel negotiated the Settlement to meet all the requirements of Rule 23, and specifically to provide an administrative process that would assure equal and sufficient due process for Class Members. The Settlement was the result of extensive arm's-length negotiations and settlement discussions between sophisticated counsel, who consulted with highly qualified experts regarding the

claims at issue. Several years of litigation, multiple and lengthy in-person mediation sessions, telephonic negotiations, and the exchange of numerous iterations of draft agreements were necessary for the Parties to come to an agreement regarding the terms and conditions of Settlement.

### 3.    The Settlement is Fair, Reasonable, and Adequate

In these Actions, there were substantial risks and costs if the litigation continued. While Class Counsel believes that Plaintiffs would ultimately prevail at trial, counsel recognizes that ultimate success is not assured and believes that this Settlement, when viewed in light of the risks of proving liability and recoverable damages, is unquestionably fair, adequate, and reasonable.

The Settlement provides relief that encompasses past deductions to royalties and future calculations of royalties. With respect to past deductions, it is undisputed that Chesapeake is entitled under the Class Members' leases to deduct Post-Production Costs. Plaintiffs challenged the amount of the deductions and alleged that they were inflated. The Settlement seeks to return to Settlement Class Members approximately 8% of their prior royalty deductions for Post-Production Costs. Further, the prospective relief gives Settlement Class Members an option as to how their royalties will be calculated going forward.

The Settlement in these Actions comes at an opportune time given that, if litigation continues, there will be substantial additional expense to the Parties associated with necessary factual and expert discovery and assorted motion

14

practice.  Even if Plaintiffs prevailed at trial, it could be years from now before any putative Settlement Class Members received any benefit in light of the likely appeals to follow.  Here, the immediate, guaranteed benefit to the Settlement Class provided by this Settlement outweighs the uncertainty of continuing, costly and time-consuming litigation.

Through the course of negotiations, Class Members were represented by a team of attorneys who have considerable experience (and success) in prosecuting (and settling) class actions, have been vigorously prosecuting these Actions for several years, and are well-versed in the issues and how to evaluate the claims. Settlement Class Counsel's approval of the Settlement should weigh in favor of the Settlement's fairness.  *See Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292, 301 (M.D. Pa. 1995) (finding that "[t]he opinions and recommendation of such experienced counsel are indeed entitled to considerable weight.").

Accordingly, Plaintiffs have satisfied this Circuit's standards for preliminary approval of the Settlement.  This Court should grant preliminary approval so the proposed class may be certified for settlement purposes, Class Counsel may be appointed, and Settlement Notices may be mailed.

## V.    THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR SETTLEMENT PURPOSES

Plaintiffs request that the Court preliminarily certify a Settlement Class and direct dissemination of notice concerning the Actions and the Settlement.

Defendants do not object to certification of the Settlement Class for purposes of settlement only and the Supreme Court has acknowledged the propriety of certifying a class solely for settlement purposes. *See, e.g.*, *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 618 (1997). In conducting this task, a court's "dominant concern" is "whether a proposed class has sufficient unity so that the absent members can fairly be bound by the decisions of class representatives." *Id.* at 621. To be certified under Rule 23, a putative class must satisfy, by a preponderance of the evidence, each of the four requirements of Rule 23(a) as well as the requirements of one of the three provisions of Rule 23(b). *See* FED. R. CIV. P. 23.

## A.    RULE 23(a) REQUIREMENTS ARE SATISFIED

For a class to be certified under Rule 23, a named plaintiff must establish that the class meets each of the four requirements of subsection (a) of the Rule which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R CIV. P. 23(a). Here, as set forth below, all four elements are satisfied in regard to the proposed Settlement Class.

### 1.    Rule 23(a)(1) – "Numerosity"

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  FED. R CIV. P. 23(a)(1).  "[G]enerally, where the potential number of plaintiffs is likely to exceed forty members, the Rule 23(a) numerosity requirement will be met."  *Martinez-Santiago v. Public Storage*, 312 FRD 380, 388 (D.N.J. 2015) (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012)).  Here, there are nearly 10,000 members of the Settlement Class.  The numerosity requirement is therefore readily satisfied.

### 2.    Rule 23(a)(2) – "Commonality"

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011) (citation omitted).  The commonality inquiry focuses on the defendant's conduct.  *Sullivan v. DB Invs., Inc*, 667 F. 3d 273, 297 (3d Cir. 2011) ("commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members").  A finding of commonality does not require that all class members share identical claims as long as there are common questions at the heart of the case.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 530 (3d Cir. 2004) (quotation omitted); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 310 (3d Cir. 1998) ("*Prudential II*").  "For purposes

of Rule 23(a)(2), even a single [common] question will do." *Wal-Mart Stores, Inc.*, 131 S.Ct. at 2551 (brackets in original) (citation omitted).

Here, the claims of the Settlement Class raise common questions of law and fact. Plaintiffs allege that Defendants engaged in a common practice by artificially inflating the Post-Production Costs passed on to oil and gas lessors. The claims of the Settlement Class thus involve common issues surrounding the deduction of gas gathering costs from royalties owed to Class Members.

### 3.    Rule 23(a)(3) – "Typicality"

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. FED. R CIV. P. 23. As the Third Circuit has stated, "the named plaintiffs' claims must merely be 'typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.'" *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009) (citation omitted). Allegations that the defendant engaged in a common scheme are sufficient to support a finding of typicality. *Prudential II*, 148 F.3d at 312 ("Since all members of the class would need to demonstrate the existence of this scheme, their interests are sufficiently aligned that the class representatives can be expected to adequately pursue the interests of the absentee class members.").

Here, Plaintiffs' claims, and those of the Settlement Class, arose from a common course of conduct by Defendants of allegedly deducting artificially

inflated and supra-competitive rates for certain Post-Production Costs from royalties owed to Plaintiffs and the Settlement Class.

### 4.    Rule 23(a)(4) – "Adequacy"

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R CIV. P. 23. In the Third Circuit, this requirement is met when two prongs are satisfied: the plaintiffs have no interests antagonistic to those of the class, and plaintiffs' counsel is qualified, experienced, and generally able to conduct the proposed litigation. *In re Schering Plough Corp.*, 589 F.3d at 602. The core analysis for the first prong is whether Plaintiffs have interests antagonistic to those of the Settlement Class. The second prong analyzes the capabilities and performance of Class Counsel based upon factors set forth in Rule 23(g). *See Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010). Here, Plaintiffs satisfy both prongs.

First, Plaintiffs have no interests adverse or "antagonistic" to absent Class Members. Plaintiffs seek to hold Defendants accountable for, among other things, improperly deducting artificially inflated Post-Product Costs owed to Plaintiffs and the Settlement Class. Further, Plaintiffs have demonstrated their allegiance and commitment to this litigation by consulting with Plaintiffs' counsel, collecting documents for litigation, reviewing the pleadings, responding to discovery propounded by Defendants and keeping informed of the progress of the litigation

19

and settlement discussions. Their interests are aligned with the interests of absent Class Members.

Second, as discussed within, Class Counsel are qualified, experienced, and competent in complex class litigation and have an established, successful track record with consumer class cases.[9] Accordingly, the adequacy requirement is satisfied.

### B.    THE PROPOSED SETTLEMENT CLASS MAY BE CERTIFIED UNDER RULE 23(b)(3)

Having demonstrated that each of the mandatory requirements of Rule 23(a) are met for settlement purposes only, Plaintiffs now turn to consideration of the Rule 23(b)(3) factors – predominance and superiority. Under Rule 23(b)(3), a class action should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods, Inc.*, 521 U.S. at 623. Superiority requires the court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods' of adjudication." *Prudential II*, 148 F.3d at 316 (citation omitted). Here, the Settlement Class readily meets both requirements.

---

[9] *See* Muhic Decl., at Exhibits 2-6.

First, common questions of law or fact predominate.  Class Members' claims arise out of an allegedly common scheme to impose artificially inflated Post-Production Costs on oil and gas lessors through a collusive pricing structure. These claims thus present common operative facts as well as common questions of law that predominate over any individual variations.

Second, certification of the Settlement Class under Rule 23 is "superior to other available methods for the fair and efficient adjudication of the controversy." FED. R CIV. P. 23(b)(3).  The Settlement affords benefits to numerous putative Settlement Class Members who, absent a class settlement, may not have been aware of their legal rights or may not have had the desire or resources to pursue an individual suit involving the matters at issue.  The class settlement also serves the interest of judicial economy by avoiding multiple similar lawsuits.  Thus, resolving the Settlement Class Members' claims in a single, consolidated settlement proceeding is far superior to individual adjudication of their claims.  And, inasmuch as this is a class settlement, the court need not address manageability issues that may otherwise exist in a contested class action.  *Amchem Prods, Inc*., 521 U.S. at 620.

### C.    PROPOSED SETTLEMENT CLASS COUNSEL SATISFY RULE 23(g)

Pursuant to Rule 23(g), Plaintiffs also move to appoint the law firms of Kessler Topaz Meltzer & Check, LLP; Donovan Litigation Group, LLC; Axler

Goldich, LLC; Rosenn, Jenkins & Greenwald, LLP; and McCann & Wall, LLC as "Class Counsel." Rule 23(g) focuses on the qualifications of class counsel, complementing the requirement of Rule 23(a)(4) that the representative parties adequately represent the interests of the class members. FED. R. CIV. P. 23. While a court may consider any factor concerning the proposed class counsel's ability to "fairly and adequately represent the interest of the class," Rule 23(g)(1)(A) specifically instructs a court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

*Id.* Here, each of the Rule 23(g)(1)(A)'s considerations weigh strongly in favor of finding Class Counsel adequate. Class Counsel did substantial work identifying and investigating potential claims and properly supporting the allegations in the Complaints, as shown by the fact that this Court in large part denied the Defendants' motions to dismiss. As part of their investigation and work, Class Counsel retained and consulted with multiple experts in different fields, and carefully reviewed public materials along with all documents and information produced by Defendants in discovery.

As reflected in their firm resumes, Class Counsel have substantial experience, individually and collectively, successfully prosecuting class actions

and other complex litigation, including claims of the type asserted in these Actions. *See* Muhic Decl. Exhibits 2-6. Hence, Class Counsel's extensive efforts in prosecuting this case, combined with their in-depth knowledge of the subject area, satisfy Rule 23(g).

## VI.    THE FORM AND MANNER OF NOTICE ARE PROPER

The manner in which Settlement Notice is disseminated, as well as its content, must satisfy Rule 23(c)(2) (governing class certification notice), Rule 23(e)(1) (governing settlement notice), and due process. *See Rivera v. Lebanon Sch. Dist.*, No. 11-cv-147, 2013 WL 877161, at *2 (M.D. Pa. Mar. 8, 2013) ("Adequate notice is essential to securing due process of law for the class members, whom are bound by the judgment entered in the action."). Plaintiffs adequately satisfy these requirements.

Rule 23(e) requires that notice of a proposed settlement be provided to class members. FED. R. CIV. P. 23. "Due process requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 446 (3d Cir. 2016) (citation omitted). Additionally, Rule 23(c)(2) requires "the best notice practicable under the circumstances" and that such notice "contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including

objecting to the settlement or, when relevant, opting out of the class." *Id.* at 435 (quotation omitted). Further, "[i]t is well settled that in the usual situation first-class mail and publication fully satisfy the notice requirements of both FED. R. CIV. P. 23 and the due process clause." *Id.* (quoting *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985)).

Here, the content of the Settlement Notice satisfies all requirements. The language of the Settlement Notice was drafted and agreed to by the Parties. The proposed Settlement Notice is written in plain, simple language, and includes: (1) a description of the Settlement Class; (2) a description of the claims asserted in the Actions; (3) a description of the Settlement and release of claims; (4) the deadlines for exercising the right to opt-out; (5) the identity of counsel for the Settlement Class; (6) the Final Approval Hearing date; (7) an explanation of eligibility for appearing at the Final Approval Hearing; and (8) the deadline and procedure for objecting to the Settlement. The Settlement Notice provides Settlement Class Members with clear and accurate information as to the nature and principal terms of the Settlement Agreement to make an informed and intelligent decision whether to object to the Settlement.[10] In addition, pursuant to Rule 23(h), the proposed Settlement Notice sets forth the maximum amount of Attorneys' Fees and

---

[10] The Settlement Notice is similar to a notice previously approved by this Court in *Demchak Partners Limited Partnership v. Chesapeake Appalachia, LLC*. *See* ECF No. 91, No. 13-cv-02289 (M.D. Pa. Sept. 30, 2015).

Expenses and Case Contribution Awards that may be sought pursuant to the Settlement Agreement.

The dissemination of the Settlement Notice likewise satisfies all requirements. Under the Settlement Agreement, the Settlement Administrator will send individualized Settlement Notices to Settlement Class Members via first class mail. Settlement Notice will be sent to the last known address reflected in the business records of Chesapeake for each Class Member. For any Settlement Notices that are returned as undeliverable, the Settlement Administrator shall take reasonable steps to obtain a valid address and re-mail the Settlement Notice. In addition, a website will be created so that Class Members can readily have questions answered and obtain additional copies of materials sent by the Settlement Administrator.

Accordingly, the proposed Settlement Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court.

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion for Preliminary Approval, and enter the Proposed Order: (1) granting preliminary approval of the proposed Settlement; (2) preliminarily certifying, for settlement purposes only, the proposed Settlement Class; (3) approving the form and content of, and directing the distribution of, the proposed Settlement Notice,

annexed to the Settlement Agreement as Exhibit D; and (4) scheduling a Final

Approval Hearing.

Dated:  August 9, 2018                    Respectfully submitted,

**KESSLER TOPAZ**                          **DONOVAN LITIGATION GROUP,**
**MELTZER & CHECK, LLP**                   **LLC**

/s/ Peter A. Muhic_____                   /s/ Michael D. Donovan
Joseph H. Meltzer (PA 80136)               Michael D. Donovan (PA 51895)
Peter A. Muhic (PA 73501)                  15 St. Asaphs Road
Tyler S. Graden (PA 205844)                Bala Cynwyd, PA 19004
Natalie Lesser (PA 309334)                 Tel:  (610) 647-6067
280 King of Prussia Road                   Fax:  (610) 647-7215
Radnor, PA 19087                           mdonovan@donovanlitigationgroup.com
Tel: (610) 667-7706
Fax: (610) 667-7056                        **AXLER GOLDICH, LLC**
Email:  jmeltzer@ktmc.com                  Noah Axler
        pmuhic@ktmc.com                    1520 Locust Street, Suite 301
        tgraden@ktmc.com                   Philadelphia, PA 19102
        nlesser@ktmc.com                   Tel:  (267) 534-7400
                                           Fax:  (267) 534-7407
**ROSENN JENKINS &**                       naxler@axgolaw.com
**GREENWALD LLP**
Robert D. Schaub (PA 42466)                **MCCANN & WALL, LLC**
15 South Franklin Street                   Robert E. McCann
Wilkes-Barre, PA 18711                     Two Penn Center Plaza
Tel: (570) 826-5652                        Philadelphia, PA 19102
Fax: (570) 706-3424                        Tel:  (215) 569-8488
Email:  rschaub@rjglaw.com                 Fax:  (215) 569-8288
                                           rmccann@mccannwallinjurylaw.com

*Attorneys for Suessenbach Plaintiffs*
*and the Class*                            *Attorneys for James L. Brown and Alice*
                                           *Brown Plaintiffs and the Class*

## CERTIFICATE OF CONCURRENCE

The undersigned hereby certifies that, pursuant to M.D. Pa. Local Rule 7.1, the concurrence of Defendants' counsel was sought in connection with the foregoing motion, and Defendants concur with the relief sought in this motion for settlement purposes only.

/s/ Peter A. Muhic
Peter A. Muhic

/s/ Michael D. Donovan
Michael D. Donovan

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify pursuant to L.R. 7.8(b)(2) that the text of this filing contains 5,867 words, excluding the caption, Table of Contents, Table of Authorities, and signature blocks, which is within the limit of 8,000 words as permitted by the Court.

/s/ Peter A. Muhic
Peter A. Muhic

/s/ Michael D. Donovan
Michael D. Donovan

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2018, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court, is available for viewing and downloading from the ECF system, and will be served by operation of the Court's electronic filing system (CM/ECF) upon all counsel of record.


/s/ Peter A. Muhic
Peter A. Muhic

/s/ Michael D. Donovan
Michael D. Donovan