# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JAMES L. BROWN AND ALICE BROWN, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>ACCESS MIDSTREAM PARTNERS, L.P., *et al.*,<br><br>*Defendants*. | Case No. 3:14-cv-0591-MEM<br><br>Hon. Malachy E. Mannion |
| THE SUESSENBACH FAMILY LIMITED PARTNERSHIP, JAMES S. SUESSENBACH, and GINA M. SUESSENBACH, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>ACCESS MIDSTREAM PARTNERS, L.P., *et al.*,<br><br>*Defendants*. | Case No. 3:14-cv-01197-MEM<br><br>Hon. Malachy E. Mannion |

## DEFENDANT CHESAPEAKE ENERGY CORPORATION'S BRIEF IN OPPOSITION TO MOTION TO INTERVENE

# **TABLE OF CONTENTS**

I.   INTRODUCTION.................................................................................................1

II.  BACKGROUND .................................................................................................2

III. ARGUMENT.......................................................................................................4

   A. The Proposed Intervenors Do Not Satisfy the Standard for Intervention as of Right.................................................................................................................4

   B. The Proposed Intervenors' Substantive Attack on the Proposed Settlement Is Inapposite and Does Not Have Their Motion for Intervention as of Right ......10

   C. The Proposed Intervenors Do Not Satisfy the Standard for Permissive Intervention...................................................................................................16

IV.  CONCLUSION .................................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Choike v. Slippery Rock Univ. of Pennsylvania of the State Sys. of Higher Educ.*,
297 F. App'x 138 (3d Cir. 2008) ................................................................. 5, 6, 7

*Demchak Partners Ltd. P'ship v. Chesapeake Appalachia, LLC*, No. 3:13-2289,
2014 WL 4955259 (M.D. Pa. Sep. 30, 2014) ..................... 4, 7, 8, 16, 17, 18, 19

*Freeman v. MML Bay State Life Ins. Co.*, 445 F. App'x 577 (3d Cir. 2011) ........ 11

*In re Fine Paper Antitrust Litig.*, 695 F.2d 494 (3d Cir. 1982) ................................5

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216 (3d Cir. 2005) ................ 4, 8

*In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242
(2d Cir. 2011) ............................................................................................. 13

*Orange County v. Air Cal.*, 799 F.2d 535 (9th Cir. 1986) .................................... 6, 7

*Pa. Prison Soc'y v. Cortes*, 622 F.3d 215, 232 (3d Cir. 2010) ............................. 16

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355
(3d Cir. 2001) ........................................................................................ 11, 13

*Scott v. Bimbo Bakeries U.S., Inc.*, No. 10-3154, 2015 WL 8764491
(E.D. Pa. Dec. 15, 2015) ...................................................................... 10, 11, 13

*Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299 (6th Cir. 2016) ........... 15

*Westra Constr., Inc. v. U.S. Fid. & Guar. Co.*, 546 F. Supp. 2d 194
(M.D. Pa. 2008)..........................................................................................8

## STATUTES

Fed. R. Civ. P. 23 ................................................................. 7, 15, 16, 19

Fed. R. Civ. P. 23(e)............................................................................ 10

Fed. R. Civ. P. 24 ...............................................................................................2

Fed. R. Cvi. P. 24(a)(2) ........................................................................................7

Fed. R. Cvi. P. 24(b) ............................................................................ 16, 17, 18

L.R. 7.8(a) ..........................................................................................................4

John C. Coffee, Jr., *Class Action Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation*, 100 Colum. L. Rev. 370 (2000) ................ 15

Chesapeake Energy Corporation ("Chesapeake Energy") respectfully submits this Brief in Opposition to the Motion to Intervene filed by Scout Petroleum, LLC and Scout Petroleum II, LP (collectively, the "Proposed Intervenors"). ECF No. 190.

## I.    INTRODUCTION

After four years of litigation—involving significant discovery, in-depth analysis of highly complex legal and factual issues, consultations with and among experts, and arm's-length protracted negotiations among the parties with the assistance of third-party mediators—the parties reached a settlement agreement that they believe is "eminently fair, reasonable, and adequate, especially in light of the risks of continued litigation." *See* Mem. Supp. Pls.' Unopposed Mot. for Prelim. Approval of Class Action Settlement, *Brown v. Access Midstream Partners, L.P.*, No. 14-0591, at 2 (M.D. Pa. Aug. 9, 2018), ECF No. 185 [hereinafter Pls.'s Unopposed Mot. for Settlement]. The Proposed Intervenors have been aware of this publicized litigation for years, but waited until this very last minute before seeking to intervene. Their belated Motion to Intervene ("Motion"), in turn, does not attach a pleading, or its equivalent, or provide notice of the claims they intend to pursue if permitted to intervene. On this procedural defect alone, the Court should deny their Motion.

Even if the Court considers the Motion on its merits, however, it fares no

better.  The Proposed Intervenors have not raised a single legitimate basis for their untimely Motion, and allowing them to intervene at this late hour would derail years of effort and unduly prejudice the parties.  For these key reasons, the Proposed Intervenors cannot satisfy the Rule 24 requirements for intervention as of right or for permissive intervention.  Their Motion should be denied.

## II.   BACKGROUND

On March 12, 2014, the Proposed Intervenors filed a putative class arbitration demand with the American Arbitration Association, alleging breach of contract claims against Chesapeake Appalachia, L.L.C. ("Chesapeake Appalachia"), a wholly-owned subsidiary of Chesapeake Energy.  *See* Mem. Supp. Mot. to Intervene, *Brown v. Access Midstream Partners, L.P.*, No. 14-0591, Ex. 2 (M.D. Pa. Sept. 27, 2018), ECF No. 191-2 [hereinafter PI's Arb. Demand].  In the demand, the Proposed Intervenors alleged that Chesapeake Appalachia had breached its leases with them and with similarly situated lessors by purportedly underpaying the royalties due pursuant to the leases.  *See id.* ¶ 2.  Subsequent proceedings in federal court made clear that the Proposed Intervenors could not pursue their arbitration claims on a classwide basis.  *See* Mem. Supp. Mot. to Intervene, *Brown v. Access Midstream Partners, L.P.*, No. 14-0591, at 6 (M.D. Pa. Sept. 27, 2018), ECF No. 191 [hereinafter PI's Mem.].

On March 28, 2014, and June 20, 2014, each of the named plaintiffs in these actions filed their own complaints in the United States District Court for the Middle District of Pennsylvania. *See Brown v. Access Midstream Partners, L.P.*, No. 14-0591 (M.D. Pa. Mar. 28, 2014), ECF No. 1; *Suessenbach Family Ltd. P'ship v. Access Midstream Partners, L.P.*, No. 14-1197 (M.D. Pa. June 20, 2014), ECF No. 1. Like the Proposed Intervenors' arbitration claims, these plaintiffs' claims were based on alleged underpayments of royalties by Chesapeake Appalachia to its lessors. According to the Proposed Intervenors, the *Brown* and *Suessenbach* plaintiffs "chose to sue [Chesapeake Energy] and its alleged co-conspirator, and not Chesapeake Appalachia (which is the actual lease owner and operator), because Brown/Suessenbach wanted to avoid what ultimately happened to [the Proposed Intervenors] when [they] tried to pursue class arbitration," *see* PI's Mem. at 6.

Since 2014, the *Brown* and *Suessenbach* plaintiffs have "vigorously litigated" their claims. *See* Pls.' Unopposed Mot. for Settlement at 3. That litigation has involved significant fact and expert discovery, as well as "arm's-length protracted mediations and negotiations with [the] [d]efendants with the assistance of third-party mediators, including Judge Edward N. Cahn (ret.) and renowned oil and gas mediator John W. Perry, Jr." *See id.* at 2. As a result of years of effort by the parties, on August 9, 2018, the named *Brown* and *Suessenbach* plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement, which

they describe as "an outstanding result for members of the Settlement Class." *See id.*

Nearly two months after this proposed settlement agreement was filed with the Court, the Proposed Intervenors filed their Motion to Intervene, which does not satisfy the standard for either intervention as of right or for permissive intervention.

### III.   ARGUMENT

**A.   The Proposed Intervenors Do Not Satisfy the Standard for Intervention as of Right.**

A party seeking to intervene as of right must satisfy four factors: (1) a timely application; (2) a sufficient interest in the underlying litigation; (3) a threat that the interest will be impaired or affected by disposition of the underlying action; and (4) a showing that the existing parties to the action do not adequately represent the prospective intervenor's interests. *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005).   "The movant's failure to establish any factor is fatal." *Demchak Partners Ltd. P'ship v. Chesapeake Appalachia, LLC*, No. 3:13-2289, 2014 WL 4955259, at *3 (M.D. Pa. Sep. 30, 2014) (Mannion, J.)[1] (citing *Liberty Mut. Ins. Co.*, 419 F.3d at 220).   Thus, the Proposed Intervenors' Motion to Intervene as of right fails for three independent and distinct reasons: (1) the Motion is

---

[1] Pursuant to Middle District Local Rule 7.8(a), copies of the unpublished opinions are reproduced in the attached Appendix.

untimely; (2) the Proposed Intervenors' interests will not be impaired by disposition of the underlying action; and (3) the named plaintiffs in *Brown* and *Suessenbach* adequately represent the Proposed Intervenors' interests.

***First***, the Proposed Intervenors have not filed a timely application. Courts consider three factors in making a timeliness determination: "(1) How far the proceedings have gone when the movant seeks to intervene, (2) [the] prejudice which resultant delay might cause to other parties, and (3) the reason for the delay." *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982) (alterations in original) (citations omitted). In considering these factors, the Third Circuit denied intervention in very similar circumstances in *Choike v. Slippery Rock Univ. of Pennsylvania of the State Sys. of Higher Educ.*, 297 F. App'x 138, 141 (3d Cir. 2008). In *Choike*, a third party sought to intervene ***after*** the parties to the litigation had reached a settlement and ***after*** that settlement was submitted to the district court for approval. *Id.* The district court denied the intervention as untimely, finding it "[o]f . . . significance [that] the parties [had] reached a [class action] settlement . . . *before* [the prospective intervenor] sought to intervene." *Id.* (quoting district court) (internal quotation marks omitted). The district court reasoned that intervention would derail the settlement and therefore prejudice the parties to the litigation, and the Third Circuit affirmed. *Id.* at 141–42 (finding it significant that "the parties had reached a tentative settlement, which had been submitted to the

District Court for preliminary approval at the time [the prospective intervenors] sought intervention" (citing *Orange County v. Air Cal.*, 799 F.2d 535, 538 (9th Cir. 1986))).

In upholding the district court's denial of intervention in *Choike*, the Third Circuit cited with approval the Ninth Circuit's reasoning in *Orange County*. There, the City of Irvine, California sought to intervene after the parties had reached a settlement agreement five years after the highly publicized litigation began. *See Orange County*, 799 F.2d at 538. As the Ninth Circuit explained, "The district court felt that to allow Irvine to intervene 'at this late date' would be the undoing of five years of protracted litigation finally resolved by [a] Stipulated Judgment." *Id.* Agreeing with the district court, the Ninth Circuit concluded that "[c]learly, this would prejudice the parties involved." *Id.* The court further explained that, under these circumstances, the only way for the city "to prevail" would be to "convincingly explain its delay in filing its motion to intervene," which it had not done. *Id.* According to the court, the city waited to intervene until "the first time that [it] realized that the end result of the protracted litigation would not be entirely to its liking." *Id.* The court found this reason for the delay insufficient, explaining that "to protect itself against this eventuality, Irvine should have intervened sooner." *Id.* (footnote omitted).

The same result should follow here.  Allowing the Proposed Intervenors to intervene at this time would threaten to derail the class action settlement that the parties have spent years working towards.  Having waited to seek intervention only *after* four years of protracted litigation, and well *after* they first learned of the settlement agreement, the Proposed Intervenors' attempt at late intervention should be denied, just as intervention was denied in *Demchak*, *Choike*, and *Orange County*.

*Second*, even if their Motion were timely, which it is not, the Proposed Intervenors have offered no evidence that their interest in the underlying litigation will be impaired or affected by disposition of the underlying action.  As this Court has previously explained, with respect to "this third factor in the Rule 24(a)(2) analysis, the inquiry is whether, absent intervention, the suit will foreclose the ability of the proposed intervenors to protect their interests."  *See Demchak Partners Ltd. P'ship*, 2014 WL 4955295, at *3.  "In deciding this factor, courts look to, among other things, whether there are other proceedings and fora in which the proposed intervenors can protect their interests." *Id.*

As members of the class, the Proposed Intervenors' interests are, in fact, protected through multiple mechanisms: (1) they can accept the benefits of the settlement; (2) they can object according to the orderly process envisioned by Rule 23 of the Federal Rules of Civil Procedure; or (3) they can opt-out and continue to pursue an alternative remedy through the arbitration proceeding that they have

already initiated. Thus, as was the case in *Demchak*, the fact that the Proposed Intervenors here "can opt out of the settlement class and reserve all of their rights to proceed with arbitration" "*is fatal to their motion to intervene.*" *See id.* at *4 (emphasis added). Accordingly, their Motion should be denied. *See id.* at *4 ("Because the court finds that the proposed intervenors can protect their interests by means other than intervention, the proposed intervenors have not established the third factor for intervention as a matter of right. As the proposed intervenors' failure on [this] factor is fatal to their motion to intervene as a matter of right, *the court need not consider the final factor.*" (emphasis added)).[2]

**Third**, there is no evidence that "the existing parties to the action do not adequately represent the prospective intervenor's interests." *Liberty Mut. Ins. Co.*, 419 F.3d at 220. As the Proposed Intervenors expressly recognize, "when a party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented." *Westra Constr., Inc. v. U.S. Fid. & Guar. Co.*, 546 F. Supp. 2d 194, 202 (M.D. Pa. 2008) (citation omitted); *see also* PI's Mem. at 15 (acknowledging presumption of adequate representation).

---

[2] The Proposed Intervenors are well aware that they can fully protect the interests they set forth in their Motion by opting out of the settlement agreement. *See* Motion at 8 n.7 (recognizing that only those "Settlement Class Members *who do not opt out* will be" releasing certain claims (emphasis added)).

Here, the Proposed Intervenors and the plaintiffs have the same ultimate objective—both seek to recover royalties that they allege Chesapeake Appalachia underpaid to them. *See* PI's Mem. at 15–16 (discussing claims to recover allegedly underpaid royalties). The Proposed Intervenors seek to avoid this fact by suggesting, in conclusory fashion, that their interests are "starkly divergent" from those of the named plaintiffs simply because they have chosen to pursue a different legal theory to arrive at the same ultimate goal. *See id.* at 15–16. However, as the Proposed Intervenors explain, both they and the named plaintiffs "sought to represent other similarly situated royalty owners" in an action to recover allegedly unpaid royalties. *See id.* at 6. Indeed, according to the Proposed Intervenors, the plaintiffs here employed a different legal strategy to seek the same objective that had evaded the Proposed Intervenors in their own attempt to assert classwide arbitration.

Thus, far from presenting evidence to overcome the presumption of adequate representation, the Proposed Intervenors have, in fact, demonstrated that the named plaintiffs share the Proposed Intervenors' ultimate objective and have simply chosen to pursue a different legal theory and procedural path to achieve that objective. In other words, the Proposed Intervenors have presented evidence that their interests are aligned with and well protected by the named plaintiffs. It follows that their Motion should be denied.

**B.    The Proposed Intervenors' Substantive Attack on the Proposed Settlement is Inapposite and Does Not Save Their Motion for Intervention as of Right.**

In the section of their brief devoted to arguing that they are entitled to intervention as of right, the Proposed Intervernors cursorily address their purported right to intervention and instead devote the bulk of their argument to attacking the fairness of the proposed settlement agreement.   As class members, the Proposed Intervenors are entitled to opt out or to raise objections to the settlement agreement, but such objections are properly raised pursuant to the process set forth in Rule 23(e) of the Federal Rules of Civil Procedure and have no bearing on the present Motion to Intervene.   Moreover, even if it were appropriate to consider these objections at this juncture, they are wholly without merit.

*First*, the Proposed Intervenors argue that the settlement agreement's "release is overly broad and violates the 'identical factual predicate' doctrine applied to class action settlements in this circuit." *See* PI's Mem. at 16.   In support of their position, the Proposed Intervenors rely on *Scott v. Bimbo Bakeries U.S., Inc.*, No. 10-3154, 2015 WL 8764491 (E.D. Pa. Dec. 15, 2015).   *Scott*, however, is inapposite to the issue of intervention.

In *Scott*, the court did not entertain a motion to intervene; rather, the question before the court was whether the *Scott* defendant could rely on the release in an approved class action settlement to bar a later-filed breach of contract claim brought

by an individual who had opted into the class. *See id.* at *3. As the court explained,

"It is settled law within this Circuit that 'a judgment pursuant to a class settlement

can bar later claims based on the allegations underlying the claims in the settled class

action.'" *Id.* at *3 (quoting *In re Prudential Ins. Co. of Am. Sales Practice Litig.*,

261 F.3d 355, 366 (3d Cir. 2001)). "[T]he Third Circuit has stated that, in

determining whether an individual class plaintiff's subsequent claims are barred, the

'key inquiry is whether the factual predicate for future claims is identical to the

factual predicate underlying the settlement agreement.'" *Id.* at *3 (quoting *Freeman*

*v. MML Bay State Life Ins. Co.*, 445 F. App'x 577, 579 (3d Cir. 2011)) (additional

citation omitted).

Applying this "identical factual predicate" doctrine, the court determined that

the subsequent breach of contract claim was not barred by the settlement release

because "[t]he events giving rise to the allegations in *Scott* were completely separate

and distinct from those in [the later-filed breach of contract case]." *Id.* at *5. More

specifically, the settlement agreement stemmed from a case involving allegations

that the defendant "exerted the type of control typically found in an employer-

employee relationship, while neglecting to compensate Class Plaintiffs accordingly

under the FLSA." *Id.* at *5. By contrast, the later-filed breach of contract claim

alleged that the "[d]efendants acted in bad faith when they forced [the plaintiff] to

lower his sale price for his distribution route, and then improperly exercised their

right of first refusal to obtain the rights to the route at a significantly discounted price." *Id.* Because "[n]one of [the plaintiff's] factual allegations [had] anything to do with his status as an employee, the number of hours he worked for [the defendant], his rate of pay, his ability to sell competing products, or his adherence to certain unwritten policies imposed by [the defendant's] management," his claims did not have the identical factual predicate of the claims in the settlement agreement and were, therefore, not barred by the release. *See id.* at *5.

By contrast, in the present case, the claims raised by the named plaintiffs have the identical factual predicate as the Proposed Intervenors' breach of contract claim, namely that Chesapeake Appalachia allegedly underpaid royalties to lessors. It is irrelevant that the named plaintiffs and the Proposed Intervenors have chosen to pursue different legal theories to recover these allegedly underpaid royalties. The events giving rise to their claims—i.e., the alleged underpayment of royalties by Chesapeake Appalachia—are identical.

***Second***, the Proposed Intervenors argue that Chesapeake Energy Corporation "should not be permitted to achieve a class settlement including the release of Form Lease royalty owners' claims against Chesapeake Appalachia, when Chesapeake Appalachia has consistently maintained, and prevailed, that those very claims cannot be adjudicated on a class basis." *See* PI's Mem. at 19–20. That argument is meritless on its face. Indeed, the very decision upon which the Proposed Intervenors rely so

heavily in their Motion—*Scott*—shows that this argument contradicts established law in the Third Circuit.

In *Scott*, after noting that "[i]t is settled law within this Circuit that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action," the court went on to explain that "[t]his is true even though the precluded claim was not presented, ***and could not have been presented***, in the class action itself." 2015 WL 8764491, at *3 (emphasis added) (quoting *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d at 366) (internal quotation marks omitted).  Indeed, "Parties often reach broad settlement agreements encompassing claims not presented in the complaint in order to achieve comprehensive settlement of class actions, particularly when a defendant's ability to limit [its] future liability is an important factor in [its] willingness to settle." *Id.* (quoting *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 247–48 (2d Cir. 2011)) (alterations in original).  Thus, contrary to the Proposed Intervenors' assertion that releasing claims that could not be presented in the class action is somehow unreasonable or "abuses the judicial process and warrants judicial estoppel," *see* PI's Mem. at 20, such a release is entirely consistent with established Third Circuit law and an important function of the settlement process.

***Third***, the Proposed Intervenors make conclusory allegations that the named plaintiffs have made "patently incorrect" statements and have "disregard[ed]" the

Proposed Intervenors' "breach of contract and related equitable claims." *See* PI's Mem. at 17–19. The Proposed Intervenors' own Motion squarely contradicts these assertions. For example, according to the Proposed Intervenors, it is a "patently incorrect" "statement that '[w]ith respect to past deductions, it is undisputed that Chesapeake is entitled under the Class Members' leases to deduct Post-Production Costs.'" *See* PI's Mem. at 17–18 (quoting ECF No. 136 at 21). In the same brief, however, the Proposed Intervenors state that "the Form Leases' plain language only allows deductions for four types of [Post-Production] costs." *See id.* at 5. Thus, despite their later suggestions that they dispute the assertion, the Proposed Intervenors, in fact, agree that Chesapeake is entitled to deduct certain Post-Production Costs.

Additionally, the Proposed Intervenors claim that Chesapeake "attempt[s] to ignore [the Proposed Intervenors'] contract claims" and that their "disregard" of these claims "raises the question of whether [the named plaintiffs] considered the value of these claims when arriving at the $7.75 million settlement amount." *See* PI's Mem. at 18–19. Once again, the Proposed Intervenors' own brief plainly contradicts these assertions. Indeed, the Proposed Intervenors explain that the named plaintiffs specifically "chose to sue [Chesapeake Energy Corporation] and its alleged co-conspirator . . . because [they] wanted to avoid what ultimately happened to [the Proposed Intervenors] when [they] tried to pursue class arbitration." *See* PI's

Mem. at 6.   Thus, according to the Proposed Intervenors' own brief, far from ignoring the Proposed Intervenors' claims, the named plaintiffs were so acutely aware of the claims that they allegedly devised their entire litigation strategy around them.

*Finally*, the Proposed Intervenors seem to suggest that "class members cannot make an informed decision as to whether to stay in or opt-out of the class" unless the proposed settlement agreement explicitly states that "a successful arbitration with respect to a Form Lease would yield recovery of 100%, plus interest, of the wrongful 'gathering' and 'compression' deductions, while the proposed settlement yields recovery of only 8% of such deductions." *See* PI's Mem. at 18 (citation omitted).   Nothing in Rule 23 would require this specific language, and neither the law review article, nor the Sixth Circuit case cited by the Proposed Intervenors for this proposition suggests otherwise. *See generally* Fed. R. Civ. P. 23; *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 302 (6th Cir. 2016); John C. Coffee, Jr., *Class Action Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation*, 100 Colum. L. Rev. 370 (2000).   Indeed, the Settlement Notice will ensure class members can make an informed decision by, among other things, "prominently notify[ing] Settlement Class Members that they must opt out in order to pursue separately any Settled Claims." *See* Pls.'s Unopposed Mot. for Settlement at 9.   Such notice is consistent with the requirements of Rule 23, which

is satisfied where notice of the settlement is provided "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23. By contrast, what the Proposed Intervenors seem to demand—that the Settlement Notice predict and describe every potential claim and every potential outcome that class members may forego by accepting the terms of the settlement agreement—would be impossible, let alone unreasonable.

In sum, none of the red-herring arguments raised by the Proposed Intervenors saves its Motion to Intervene as of right. Furthermore, for all of the foregoing reasons, even if these challenges were raised through the appropriate Rule 23 process, each of them is without merit.

## C.   The Proposed Intervenors Do Not Satisfy the Standard for Permissive Intervention.

The Proposed Intervenors have also failed to meet the standard for permissive intervention. "[P]ursuant to Fed. R. Civ. P. 24(b), a person or an entity, who is not a named party in an action, may seek to intervene in the interested litigation." *Demchak Partners Ltd. P'ship*, 2014 WL 4955259, at *4 (citing *Pa. Prison Soc'y v. Cortes*, 622 F.3d 215, 232 (3d Cir. 2010)). "[F]or permissive intervention, a proposed intervenor must show that: (1) its motion is timely; (2) it has questions of law or fact in common with the pending action; and (3) intervention will not cause undue delay or prejudice for the original parties." *Id.* "If a third party can satisfy *all* of these requirements, *the court may, in its discretion*, grant that third party

permissive intervention." *Id.* (emphasis added).   However, "[e]ven where the requirements of Rule 24(b) are met . . . , the court is given the ultimate discretion as to whether to allow permissive intervention." *Id.*

In the present actions, the Proposed Intervenors have failed to satisfy the three requirements of Rule 24(b), such that the Court need not even reach the discretionary question.   Specifically, as discussed at length above, the Proposed Intervenors' Motion is untimely, and intervention would cause undue delay and prejudice for the original parties.[3]   Accordingly, the Motion should be denied.

Indeed, this Court has previously denied permissive intervention under similar circumstances.  *See id.* at *4-5.  In *Demchak*, the proposed intervenors sought permissive intervention approximately one year after the named plaintiffs "began discussing claims related to their leases with Chesapeake" and approximately two weeks after the parties had reached a settlement agreement. *See id.* at *4. The Court found it significant that, if it granted the proposed intervenors' motion, "the named plaintiffs would be subject to a delay of an unknown period of time when they [had] determined that they [were] ready to resolve their claims now." *Id.* at *4. The Court

---

[3] Notably, in seeking intervention as of right, the Proposed Intervenors argue at length that their claims are "materially different" and are not based on the same underlying facts or questions or law. *See* Motion at 16–17. Yet, they also argue that they are entitled to permissive intervention, which requires showing that their claims have common questions of law or fact as those of the named parties. These positions are contradictory and cannot be reconciled—the Proposed Intervenors cannot have it both ways. On this basis alone, their Motion should be denied.

further explained that "[a]llowing the proposed intervenors to enter the action at this stage would add unnecessary complexities that would cause undue delay in the resolution of this case." *Id.* Additionally, the Court noted that "[a]ny substantive challenges raised by the intervenors [could] be addressed . . . as objections to the settlement," and that "the proposed intervenors [were] free to opt-out of the class settlement and continue and/or proceed with arbitration." *Id.* (citation omitted). Accordingly, the Court denied the motion, concluding that granting it "would certainly prejudice the adjudication of the rights of the original parties." *Id.* at *4 ("[B]ecause any attempt by the [proposed intervenors] to intervene would only cause delay in the instant proceedings and prejudice the original parties, their motion for permissive intervention pursuant to Rule 24(b) will be denied.").

The same result is even more appropriate here. Unlike the motion at issue in *Demchak*, which the parties agreed was timely, the Motion here is untimely. For that reason alone, the Motion should be denied. And, even if the Motion were timely, it would still warrant denial for all of the reasons that denial was appropriate in *Demchak*. Here, the Proposed Intervenors filed their Motion almost two months— rather than mere weeks—after the parties filed a settlement agreement. Furthermore, that settlement agreement followed four years of protracted litigation in which each party was represented by highly experienced counsel. As was the case in *Demchak*, "[a]llowing the [P]roposed [I]ntervenors to enter the action at this stage would add

unnecessary complexities that would cause undue delay in the resolution of this case" and "would certainly prejudice the adjudication of the rights of the original parties." *See id.* at *4. Moreover, just as in *Demchak*, the Proposed Intervenors here may raise any objections to the settlement through the process anticipated by Rule 23, or they may opt out of the class and pursue an alternative remedy through arbitration, which they have already begun. In short, their Motion should be denied.

## IV.   CONCLUSION

For all of the foregoing reasons, Chesapeake Energy respectfully requests that this Court deny the Proposed Intervenors' Motion in its entirety.

Dated: October 11, 2018

Respectfully submitted,

/s/ Daniel T. Brier
Daniel T. Brier
Myers, Brier & Kelly LLP
425 Spruce St. Suite 200
Scranton, PA 18501
Tel: (570) 342-6100
Fax: (570) 342-6147

Seamus C. Duffy (*pro hac vice*)
Kathryn E. Deal (*pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
Two Commerce Square
2001 Market St., Suite 4100
Philadelphia, PA 19103
Tel: (215) 965-1200
Fax: (215) 965-1210
sduffy@akingump.com
kdeal@akingump.com

Daniel Donovan (*pro hac vice*)
Peter A. Farrell (*pro hac vice*)
Ragan Naresh (*pro hac vice*)
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Washington, DC 20005
Tel: (202) 879-5000
Fax: (202) 879-5200

*Attorneys for Defendant*
*Chesapeake Energy Corporation*

## CERTIFICATE OF COMPLIANCE
## WITH MIDDLE DISTRICT LOCAL RULE 7.8(b)(3)

I, Daniel T. Brier, hereby certify that the foregoing Response in Opposition to Motion to Intervene is in compliance with Middle District Local Rule 7.8(b)(3). The brief contains 4448 words as computed by Microsoft Office Word.

/s/ Daniel T. Brier

Date:  October 11, 2018

# CERTIFICATE OF SERVICE

I, Daniel T. Brier, hereby certify that on this day I caused a true and correct copy of the foregoing Brief in Opposition to Motion to Intervene to be served upon counsel of record by the Court's ECF system.

Dated: October 11, 2018                     /s/ Daniel T. Brier_____
                                            Daniel T. Brier