UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES L. BROWN, et al.,<br><br>             Plaintiffs,<br><br>v.<br><br>ACCESS MIDSTREAM PARTNERS, L.P., et al.,<br><br>             Defendants, | CIVIL ACTION NO. 3:14-CV-00591<br><br>(MEHALCHICK, J.) |
| THE SUESSENBACH FAMILY LIMITED PARTNERSHIP, et al.,<br><br>             Plaintiffs,<br><br>v.<br><br>ACCESS MIDSTREAM PARTNERS, L.P., et al.,<br><br>             Defendants. | CIVIL ACTION NO. 3:14-CV-1197<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

The above captioned related cases were filed in 2014 against Defendants Access Midstream Partners, L.P. ("Access"), Chesapeake, and the Williams Companies, Inc. by James L. Brown on behalf of himself and all others similarly situated ("Brown Plaintiffs") and the Suessenbach Family Limited Partnership, James S. Suessenbach, and Gina M. Suessenbach individually and on behalf of all others similarly situated ("Suessenbach Plaintiffs") respectively. *See Brown v. Access Midstream Partners, L.P., et al.,* 3:14-cv-00591 and *The Suessenbach Family Limited Partnership et al v. Access Midstream Partners, L.P., et al.,* 3:14-cv-01197. In their operative amended complaint, Brown Plaintiffs also name Domenic J. Dell'Osso, Jr. ("Dell'Osso") as a defendant. (Doc. 57). Before the Court are two Motions to Clarify Notices of Partial Dismissal and to Enforce the Bankruptcy Court Orders by

Dismissing Chesapeake Energy Corporation and Domenic J. Dell'Osso, Jr. with Prejudice filed by Defendants Chesapeake Energy Corporation ("Chesapeake") and Dell'Osso (together, "Moving Defendants") in the related above captioned cases.[1] (Doc. 247). Therein,

---

[1] Because the above captioned cases are related and there are duplicate filings between them, for the purpose of the instant motions, the Court will cite to the *Brown v. Access Midstream Partners* docket when the filings are identical in both cases. This is because Dell'Osso, who is central to the instant motions, is not a named defendant in the Suessenbach case, but is a named defendant in the Brown action. Thus, the instant motions impact the *Brown* litigation moreso than the *Suessenbach* litigation. Except for the complaints in each action, all the referenced filings are identical on each docket. Identified below are the corresponding docket citations for the *The Suessenbach Family Limited Partnership et al v. Access Midstream Partners, L.P. et al* action.

| Document | *Brown v. Access Midstream Partners* | *The Suessenbach Family Limited Partnership et al v. Access Midstream Partners, L.P. et al* |
|---|---|---|
| Order directing parties to clarify remaining claims in this case | Doc. 229 | Doc. 180 |
| Motion for Partial Dismissal of Claims Pursuant to Federal Rule of Civil Procedure 41(a) | Doc. 230 | Doc. 182 |
| Notice of Voluntary Dismissal by James L. Brown of Certain Claims Against Chesapeake Energy Corp and Domenic J. Dell'Osso | Doc. 245 | Doc. 194 |
| Motion to Clarify Notices of Partial Dismissal and to Enforce the Bankruptcy Court Orders by Dismissing Chesapeake Energy Corporation and Domenic J. Dell'Osso, Jr. With Prejudice | Doc. 247 | Doc. 196 |
| Brief in Support of Motion to Clarify Notices of Partial Dismissal and to Enforce the Bankruptcy Court Orders by Dismissing Chesapeake Energy Corporation and Domenic J. Dell'Osso, Jr. With Prejudice | Doc. 248 | Doc. 197 |
| Brief in Opposition to Motion to Clarify Notices of Partial Dismissal and to Enforce the Bankruptcy Court Orders by Dismissing Chesapeake Energy Corporation and Domenic J. Dell'Osso, Jr. With Prejudice | Doc. 249 | Doc. 198 |
| Reply Brief to Motion to Clarify Notices of Partial Dismissal and to Enforce the Bankruptcy Court Orders by Dismissing Chesapeake Energy Corporation and Domenic J. Dell'Osso, Jr. With Prejudice | Doc. 250 | Doc. 199 |

Moving Defendants "seek to enforce the Chapter 11 Plan as confirmed in the Bankruptcy Court's February 3, 2025 Order by dismissing Chesapeake Energy Corporation, n/k/a Expand Energy Corporation, and Domenic J. Dell'Osso from these actions with prejudice." (Doc. 247, at 11). For the following reasons, this Court will **DISMISS with prejudice** Chesapeake from both the *Brown* and *Suessenbach* cases and Dell'Osso in his capacity as a representative of Chesapeake in the *Brown* case, as he is not a named defendant in the *Suessenbach* litigation. (Doc. 247). However, to the extent that the Brown Plaintiffs' claims against him stem from his role working solely on behalf of Access or himself, Dell'Osso will not be dismissed, and Moving Defendants motions will be **DENIED**. (Doc. 247).

I. **PROCEDURAL AND FACTUAL BACKGROUND**

The above captioned related cases were filed in 2014. *See Brown v. Access Midstream Partners, L.P., et al.,* 3:14-cv-00591 and *The Suessenbach Family Limited Partnership et al v. Access Midstream Partners, L.P., et al..,* 3:14-cv-01197. Both the Brown Plaintiffs and the Suessenbach Plaintiffs bring their claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (Doc. 57). On June 28, 2020, while the Brown and Suessenbach matters remained pending, Chesapeake filed for relief under Chapter 11 of the Bankruptcy Code. *See In re Chesapeake Energy Corporation*, No. 20-33233 (Bankr. S. D. Tex.). On January 12, 2021, Chesapeake filed the Fifth Amended Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and Its Debtor Affiliates. *See In re Chesapeake Energy Corporation*, No. 20-33233, (Bankr. S. D. Tex. Jan. 12, 2021).

On February 23, 2024, about ten years into this litigation, both above captioned matters were reassigned to the undersigned District Judge. On March 14, 2024, this Court held a telephonic status conference. The Court then issued an Order directing Plaintiffs to

3

clarify which claims remain in each case. (Doc. 229). On April 18, 2024, the Brown Plaintiffs and Suessenbach Plaintiffs filed identical Motions for Partial Dismissal of Claims Pursuant to Federal Rule of Civil Procedure 41(a) against Chesapeake. (Doc. 230). There, Plaintiffs asserted "that Chesapeake's bankruptcy does not affect claims that arose after the Effective Date of its Chapter 11 Plan or Reorganization and in no way affects the Brown Plaintiffs' claims against Dell'Osso." (Doc. 248, at 7). On May 16, 2024, Chesapeake and Dell'Osso also filed a Motion for Entry of an Order Enforcing the Confirmation Order and Plan in Bankruptcy Court. (Doc. 248, at 7). Therein, Moving Defendants argued that the Brown and Suessenbach Plaintiffs' claims against Chesapeake were discharged and released in their entirety by the Chapter 11 Plan, and that the Brown Plaintiffs' claims against Dell'Osso were similarly released in their entirety by the Chapter 11 Plan. (Doc. 248, at 8). The Bankruptcy Court agreed and on February 3, 2025, granted Moving Defendants' motion. (Doc. 248, at 8). Regarding the claims against Dell'Osso, the Bankruptcy Court concluded that Plaintiffs are "barred from litigating claims alleged against Dell'Osso in his capacity as a Chesapeake officer for pre-Effective Date acts, which includes the RICO based claims." (Doc. 248, at 8).

On February 10, 2025, the Brown Plaintiffs and Suessenbach Plaintiffs filed Notices of Partial Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2) to dismiss with prejudice all claims against Chesapeake Energy Corporation and all claims against Dell'Osso "to the extent they are alleged against Dell'Osso in his capacity as a Chesapeake officer for pre-Effective Date acts." (Doc. 245). On February 28, 2025, Moving Defendants filed the instant motions for clarification, arguing that these notices are "procedurally and substantively improper." (Doc. 248, at 9). On March 14, 2025, Moving Defendants filed briefs in support of their motions in each case. (Doc. 248). On March 28, 2025, the Brown and

4

Suessenbach Plaintiffs filed identical briefs in opposition. (Doc. 249). Moving Defendants filed a reply brief in each case on April 11, 2025. (Doc. 250). On April 30, 2025, the Court held a status conference to discuss this issue. (Doc. 251; Doc. 252). Accordingly, the motion is ripe and ready for discussion.

II.    **DISCUSSION**

The parties concur in the dismissal of Chesapeake from each action. (Doc. 248, at 2; Doc. 249, at 5). However, they disagree about whether Dell'Osso should be dismissed from the *Brown v. Access* matter in his capacity as a director of Access.[2] While Moving Defendants have filed a "motion to clarify," this Court agrees with Plaintiffs' reading of the motion that, in effect, Moving Defendants are "actually inappropriately seeking dismissal of potentially viable claims under the guise of a Motion for Clarification." (Doc. 249, at 6). In support of their position that Dell'Osso should be wholly dismissed from this action, Moving Defendants assert that the Bankruptcy Court made clear that there is "no viable claim [] asserted in the Brown action against Mr. Dell'Osso."[3] (Doc. 248, at 10). Moving Defendants continue:

> While the Brown and Suessenbach Plaintiffs correctly concede that all claims against Chesapeake must be dismissed with prejudice (and concur in this

---

[2] As made clear in their notice of voluntary dismissal, Plaintiffs agree to the dismissal of Dell'Osso in his capacity as an officer of Chesapeake, as was directed by the Bankruptcy Court. (Doc. 245; Doc. 245-1).

[3] The Suessenbach complaint does not name Dell'Osso as a Defendant. (Doc. 1). Accordingly, while Moving Defendants filed their motion to clarify separately in both cases and responses were filed in both cases, nothing in this Memorandum or accompanying Order shall be construed as adding Dell'Osso to a Defendant to the Suessenbach Plaintiffs' complaint. The Court considers this Memorandum and Order relevant to the Suessenbach case only to extent that the relevant filings were filed in that case.

> Motion in that regard), the Plaintiffs nevertheless fail to explain how any claim against Mr. Dell'Osso survives the Chapter 11 Plan and February 3, 2025 Bankruptcy Court Order. Nor can they.
>
> (Doc. 248, at 10).

Plaintiffs respond that the Bankruptcy Court more accurately concluded "this Court should determine whether there are any viable claims based on actions taken by Dell'Osso in his capacity as an officer or director of Access." (Doc. 249, at 5). In doing so, Plaintiffs point to the Bankruptcy's statement that "[i]f there are any viable claims alleged based on acts taken solely in Dell'Osso's capacity as an Access officer or director, those claims would not be released under the Plan." (Doc. 249, at 5). Plaintiffs argue:

> To the extent Dell'Osso believes the claims against him in that role should be dismissed, he is within his rights to move for summary judgment after the close of discovery. However, Dell'Osso is not entitled to use Chesapeake's bankruptcy to absolve himself of liability for his role as a director of Access which is a separate, non-discharged company, nor does Chesapeake's bankruptcy release exclude Dell'Osso as a proper defendant in this action in such capacity.
>
> (Doc. 249, at 4).

Addressing the issued posed by Dell'Osso, the Bankruptcy Court's Order Regarding the Confirmation Order and Plan Against the Brown-Suessenbach Plaintiffs reads as follows:

> Plaintiffs say that claims against Dell'Osso in his capacity as an officer and director of Access were not released under the Plan. There are no specific allegations that Dell'Osso took actions solely as an officer or director of Access. It appears that claims in the Brown Plaintiffs' Complaint against Dell'Osso are linked to claims involving his role as a Chesapeake officer and to claims that this Order confirms were discharged or released under the Plan. *This Court leaves it to the Pennsylvania Court, with the benefit of the entire record before it, to determine whether any claims still exist against Dell'Osso based solely on his role as an officer or director of Access.* If there are any viable claims alleged based on acts taken solely in Dell'Osso's capacity as an Access officer or director, those claims would not be released under the Plan.
>
> (Doc. 245-1, at 10) (emphasis added).

Plaintiffs filed their notices of voluntary dismissal of Chesapeake and Dell'Osso in his capacity as an officer of Chesapeake in response to this wording. (Doc. 245).

The Brown Plaintiffs' operative amended complaint contains the following description of Dell'Osso:

> Domenic J. Dell'Osso, Jr. ("Dell'Osso") is and has been, at all pertinent times, the Executive Vice President and Chief Financial Officer of Chesapeake, as well as a member of the board of directors of Access Midstream. He was formerly the Executive Vice President and Chief Financial Officer of Chesapeake Appalachia. Mr. Dell'Osso was also Executive Vice President and Chief Financial Officer of the following Chesapeake affiliates: Chesapeake Midstream Development, LLC; Chesapeake Energy Marketing, Inc.; Chesapeake Exploration LLC and Chesapeake Operating, Inc. On information and belief, Mr. Dell'Osso is a resident of Oklahoma.
>
> (Doc. 57, ¶ 15).

The amended complaint further provides:

> As late as December 20, 2012, Mr. Dell'Osso, Jr. had been the Executive Vice President and Chief Financial Officer of Chesapeake Appalachia. At the same time, Mr. Dell'Osso was also a member of the board of directors of Access Midstream and the Executive Vice President and Chief Financial Officer of the following Chesapeake affiliates: Chesapeake Midstream Development, LLC; Chesapeake Energy Marketing, Inc.; Chesapeake Exploration LLC and Chesapeake Operating, Inc. Most importantly, Mr. Dell'Osso is and has been, at all pertinent times, the Executive Vice President and Chief Financial Officer of Chesapeake. [] Thus, both Mr. Stice and Mr. Dell'Osso were formerly officers of a wholly-owned subsidiary of Chesapeake, responsible for its midstream assets – assets which are now owned by Access Midstream. Currently, Mr. Dell'Osso is both a director of Access Midstream and an officer of Chesapeake, while Mr. Stice is the Chief Executive Officer of Access Midstream.
>
> (Doc. 57, ¶¶ 48, 49).

The Brown Plaintiffs then specifically include Dell'Osso in the following allegations:

> 63. Access Midstream and the association-in-fact enterprise of Access Midstream, Dell'Osso, Chesapeake Appalachia, and Chesapeake, are each a "enterprise" as that term is used in 18 U.S.C. § 1961(4).

64. Since 2012, the association-in-fact enterprise of Access Midstream, Dell'Osso, Chesapeake Appalachia, and Chesapeake had the purposes of entering into non-arm's length agreements to: (1) aid Chesapeake with its liquidity problems by transferring to it a payment of more than $2 billion; (2) guaranteeing Access Midstream supra-competitive fees and a high rate of return on its multi- billion dollar payment to Chesapeake; (3) rebating to Chesapeake and its subsidiaries and affiliates some of the inflated fees paid to Access Midstream; and (4) passing on the inflated fees charged by Access Midstream and paid by Chesapeake and/or its subsidiaries, through reduced royalty payments to oil and gas lessors, including lessors in Pennsylvania

65. The association-in-fact enterprise of Access Midstream, Dell'Osso, Chesapeake Appalachia, and Chesapeake were related by the non-arm's length agreements entered into between Access Midstream and Chesapeake Appalachia, including the Marcellus Gas Gathering Agreement, as well as other agreements between Access Midstream and Chesapeake Appalachia's parent, Chesapeake, and Chesapeake's other subsidiaries and affiliates. Dell'Osso was related to Access Midstream as a member of its board of directors and to Chesapeake Appalachia as its former CFO and as the current CFO of its parent, Chesapeake.

67. Chesapeake Appalachia, Access Midstream, Chesapeake and Dell'Osso are each "persons" as that term is used in 18 U.S.C. § 1961(3) ("the RICO Conspirators").

68. Starting in 2012, with the creation, financing and acquisition of the gas gathering operations of Chesapeake Midstream Operating, L.L.C., and continuing to the present time, the RICO Conspirators have participated in the conduct of the affairs of each of the enterprises identified above through a "pattern of racketeering activity" as that phrase is defined in 18 U.S.C. §§ 1961(1) and (5). The RICO Conspirators have shared common management and direction, including Dell'Osso and Chesapeake, and have entered into non-arm's length agreements for the purpose of passing on inflated oil and gas gathering and transportation costs, through fraudulent royalty statements and payments to lessors, delivered by the mails and wires.

76. The unlawful conduct by the RICO Conspirators alleged above, through Access Midstream and the association-in-fact enterprise of Access Midstream Dell'Osso, Chesapeake Appalachia, and Chesapeake, injured tens of thousands of victims by depriving them of their rightful royalty payments, was continuous and open ended and was intended to continue, and indeed, it continues today.

81. Specifically, Chesapeake benefited from the royalty amounts wrongfully withheld by its subsidiary, Chesapeake Appalachia, whose financial results are

>included in Chesapeake's and whose costs were substantially reduced by not paying the proper royalty amounts. Access Midstream benefited from the royalty amounts wrongfully withheld by Chesapeake Appalachia because some of the monies which should have been paid to oil and gas lessors were, instead, paid to Access Midstream. Defendant Dell'Osso, as a board member of Access Midstream and the CFO of Chesapeake, also benefited from the wrongfully withheld royalty amounts.

>(Doc. 57, ¶¶ 63-65, 67-68, 76, 81).

Looking at these allegations, the Bankruptcy Court appears to be correct that every allegation against Dell'Osso implicates Chesapeake. (Doc. 57, ¶¶ 63-65, 67-68, 76, 81). However, every allegation against Dell'Osso also implicates Access. (Doc. 57, ¶¶ 63-65, 67-68, 76, 81). Thus, it is not readily apparent to the Court that there are no claims left in the *Brown* matter related to Dell'Osso's actions ***solely*** as a director of Access. Instead, the Brown Plaintiffs allege that given his position in both companies, Dell'Osso was acting in both positions to benefit from wrongfully withheld royalty amounts. It follows that one of these companies' bankruptcy should not absolve him of wrongdoing connected to both. Further, while this Court acknowledges the Bankruptcy Court designated this Court to ferret out allegations against Dell'Osso based solely on his role as an officer or director of Access, given the nature of the claims in this case, the Court finds it difficult to parse out whether Dell'Osso was acting solely for Chesapeake, Access, or even his own benefit in the allegations contained in the amended complaint. (Doc. 57; Doc. 245-1). Nor does it have to do so at this pre-discovery stage of the litigation, as this Court found, in 2015, that the Brown Plaintiffs' claims were sufficiently pled. (Doc. 119, at 24-29). Without the benefit of discovery and the record contemplated by the Bankruptcy Court, this Court cannot conclude that Dell'Osso never acted solely in his capacity as a director of Access. Nonetheless, this Court finds it premature to dismiss

Dell'Osso entirely from this action, and therefore will **DENY** Moving Defendants' motion to the extent that it seeks dismissal of potentially viable claims against Dell'Osso. (Doc. 247).

III. <u>CONCLUSION</u>

Based on the foregoing and in consideration of the Plaintiffs' notices of voluntary dismissal, Chesapeake and Dell'Osso in his capacity as an officer of Chesapeake are **DISMISSED with prejudice**. (Doc. 245). Moving Defendants' motion for clarification is **GRANTED** to the extent it seeks clarification from this Court as to the status of Dell'Osso as a Defendant in the Brown matter. (Doc. 247). The motions are **DENIED** to the extent that they seek Dell'Osso's dismissal from the Brown matter in his capacity as a director of Access. (Doc. 247). This denial is without prejudice to the Court revisiting this issue on summary judgment following a period of discovery. The outstanding motions to dismiss are also **DENIED** as **MOOT**. (Doc. 230).

It does not appear from the docket that Defendant Dell'Osso has filed an answer to the operative amended complaint (Doc. 57). He is directed to do so within 21 days from the filing of this Memorandum, or on or before **Friday, June 6, 2025**.

**Dated:** May 16, 2025

**BY THE COURT:**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**